David P Jacob, Esq (SBN 256374)
Law Office of David P. Jacob, P. C
5950 Canoga Avenue Suite 400
Woodland Hills, California 91367
Telephone: (213) 293-5931
Facsimile: (424) 217-1074
Email: david@dpjacob.com

Attorney for Defendants

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA- LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>GENNADY MOSHKOVICH,<br><br>Debtor and Debtor in Possession. | Chapter 11<br><br>Case No. 2:20-bk-11547-BB |
| GENNADY MOSHKOVICH,<br><br>Plaintiff,<br><br>vs.<br><br>BOBS, LLC, a Limited Liability Corporation, ROMMY SHY, an individual, and BARRY SHY, an individual<br><br>Defendants. | Adv. No.: 2:20-ap-01623-BB<br><br>**MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULE OF PROCEDURE 12(b)(1) and 12(b)(6) WITH MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT**<br><br>**[Fed. R. Civ. P. 12(b)(1) & (6); Fed. R. Bankr. P. 7012]**<br><br>**Date: November 17, 2020**<br>**Time: 2:00 p.m.**<br>**Courtroom: 1539**<br>**255 East Temple Street**<br>**Los Angeles California 90012** |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 5

II. LEGAL STANDARD ..... 6

A. The Bankruptcy Court and District Court lack jurisdiction to adjudicate state law causes of actions between non-diverse non-debtors over non-estate property ..... 6

B. If there is Federal jurisdiction, Mr. Moshkovich cannot litigate in front of the Bankruptcy Court on the claims for damages and the claims against the Individuals without the Defendants' consent. ..... 8

C. The Complaint must have facts. ..... 8

III. ARGUMENT ..... 9

A. Typos do not result in free homes ..... 9

(i) The Lender can introduce parol evidence around a integration clause in California Court. ..... 9

(ii) California Courts will reform typos notwithstanding an integration clause. ..... 10

B. According to Mr. Moshkovich, there are no mortgage backed securities. ..... 11

C. An alter ego claim requires facts. ..... 12

D. The elder abuse statute does not exempt senior citizens from foreclosures. ..... 12

E. A usury allegation requires more than an interest rate above 10%. ..... 15

F. Mr. Moshkovich received reasonably equivalent value in exchange for a Loan given the risks involved. ..... 16

G. Mr. Moshkovich requests an injunction to enforce another injunction ..... 16

H. A declaratory judgment is a remedy not a cause of action ..... 17

IV. CONCLUSION ..... 17

# TABLE OF CONTENTS

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 9, 13

*Assoc of Am Med. Coll. V. United States*
217 F3d 770 (9th Cir 2000). .......... 7

Bock v. California Capital Loans, Inc.,
216 Cal. App. 4th 264 (2013) .......... 12

*Cent W. Va Energy Co. v. Mountain State Carbon, LLC*
636 F.3d 101 (4th Cir 2011). .......... 7

*Chapman v. Farr*
132 Cal App 1021 (1982) .......... 15

*First Am Title & Trust Co. v. Cook*
60 Cal Rept 645 (1970) .......... 10

*In re Houghton*
164 B.R. 146 (Bankr. W.D. Wash 1994) .......... 6

*In re Johnson*
433 B.R. 626 (Bankr S.D. TX 2010) .......... 6

*In re Trans-Action Commer. Investors, Ltd*
2002 Bankr. LEXIS 2139 (Bankr. N.D. Cal. June 28, 2002) .......... 11

*Kokkonen v. Guardian Life Ins. Co.*,
511 U.S. 375 (1994) .......... 7

*Lemoge Electric v. County of San Mateo*
46 Cal. 2d 659 (1956) .......... 11

*Martinez v. Wells Fargo Bank*,
946 F. Supp. 2d 1010 (N.D. Cal. 2013) .......... 7

*Richards v. Select Ins. Co.*,
40 F. Supp. 2d 163, (S.D.N.Y. 1999). .......... 16

*Sierra Switchboard Co. v. Westinghouse Elec. Corp.*,
789 F.2d 705 (9th Cir 1986). .......... 6

*Stebley v. Litton Loan Servicing, LLP*
202 Cal.App.4th 522 (2011) .......... 13, 14

*Stern v. Marshall*,
564 U.S. 462, (2011). .......... 8

*Suter v. Goedert*
396, B.R. 535 (D. Nev 2008). .......... 6

*Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230 (2013). .......... 10

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163 (C.D. Cal 2009). .......... 10

*Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015). .......... 8

Statutes

11 U.S.C. § 548 .......... 15

28 U.S.C. § 1331 .......... 7

28 U.S.C. § 1332 .......... 7

28 U.S.C. § 1334 .......... 8

28 U.S.C. § 1367 .......... 6, 7

28 U.S.C. § 157 .......... 8

28 USCS § 2201 .......... 16

Cal Bus & Prof Code § 17200 .......... 7

Cal Const, Art. XV, Sec. 1 .......... 15

Cal Welf & Inst Code § 15610.70(a) .......... 14

Cal Welf & Inst. Code § 15610 .......... 12

Cal Welf and Inst. Code § 15610.30 .......... 13

Other Authorities

Hugo Martin "Putin gives blessing to Russian theme park designed by North Hollywood firm" *Los Angeles Times* , June 14, 2016. https://www.latimes.com/business/la-fi-russian-theme-park-20160614-snap-story.html. .......... 15

Restatement (Second) of Contracts § 152. .......... 11

Rules

Fed R. Bankr. P. 7012 .......... 5

Fed R. Civ. P. 12(b)(6). .......... 5, 8

Fed. R. Civ. P. 12(b)(1). .......... 5, 6

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; PLAINTIFF AND PLAINTIFF'S ATTORNEY OF RECORD AND ALL OTHER PARTIES IN INTEREST:**

Defendant Rommy Shy, an individual, and Barry Shy, an individual (together referred to as the "**Individuals**") and BOBS, a Nevada limited liability corporation ("**Lender**"), together referred to as ("**Defendants**"), jointly move ("**Motion**") through their undersigned counsel to dismiss the complaint ("**Complaint**") in the above titled adversary ("**Adversary**") filed by Gennady Moshkovich ("**Mr. Moshkovich**"), the debtor and debtor in possession, on behalf of the Debtor's estate ("**Estate**") in the above titled bankruptcy case (the "**Main Case**") pursuant to Federal Rule of Civil Procedure ("**FRCP**") 12(b)(1) and 12(b)(6), made applicable to this Adversary Proceeding by the Federal Rule of Bankruptcy Procedure ("**FRBP**") 7012 for the following reasons:

## I. INTRODUCTION

In his Complaint, Mr. Moshkovich not only disputes the validity and extent of the Lender's interest in the real estate located at 911/917 Loma Vista Dr Beverly Hills, California 90210 ("**Property**") but also asks this Court for penalties and damages resulting from torts allegedly committed by the Lender and the Individuals. To support Mr. Moshkovich's challenge, Mr. Moshkovich presents allegations of defects in the origination, assignments, terms, modification and bookkeeping of Mr. Moshkovich's account with the Lender and the Lender's predecessors in interest.

As a result of these alleged defects in Mr. Moshkovich's account, with his age and physical condition, Mr. Moshkovich claims to be entitled to:

the Property free and clear of the Lender's interest or a reduction;

penalties and damages for elder abuse and usury and

hold Individuals liable for the acts of the Lender.

Mr. Moshkovich seeks to vastly expand the jurisdiction of this Court and over-estimates the legal significance of these allegations under California law. Mr. Moshkovich claims cannot carry the weight of the remedies requested.

## II. LEGAL STANDARD

### A. The Bankruptcy Court and District Court lack jurisdiction to adjudicate state law causes of actions between non-diverse non-debtors over non-estate property

This Court should abstain because of the Individuals' right to a jury, the complex state law issues, and the personal nature of the claim against the Individuals. The Complaint contains a total of ten claims for relief. All ten are against the Lender. Of the ten claims for relief only one is against both the Individuals and the Lender and that is the seventh claim for elder abuse ("**Seventh Claim**"). The Seventh Claim is a California cause of action that is personal to Mr. Moshkovich and not property of Mr. Moshkovich's estate. The Ninth Circuit left open the possibility, that there might be some claims that are "so personal to the debtor that it would be undesirable, on public policy grounds, to transfer the property interest to the bankruptcy trustee" *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 n.3 (9th Cir 1986). Because the Seventh Claim is personal to Mr. Moshkovich and could not be assigned to a hypothetical bankruptcy trustee, Mr. Moshkovich in his role as a fiduciary and debtor in possession cannot pursue the Seventh Claim. Compensation from the Seventh Claim is intended to make a plaintiff whole, not merely to pay off a debt to the plaintiff See *Suter v. Goedert* 396, B.R. 535, 546 (D. Nev 2008). It is analogous to Mr. Moshkovich using estate funds to defend against a non-dischargability adversary, See *In re Johnson* 433 B.R. 626, 638 (Bankr S.D. TX 2010) (although the employment of a family lawyer to modify a divorce decree would benefit the debtor personally, the court rejected the employment because it would not benefit the estate as a whole).

While it may seem more efficient for Mr. Moshkovich to establish non-creditor liability in the same action, judicial economy alone does not justify extension of the federal subject-matter jurisdiction to nonfederal causes of action Eg, *Wilcox v. Houghton (in re Houghton),* 164 B.R. 146 (Bankr. W.D. Wash 1994) (debtor's non-debtor co-conspirators could not be brought into bankruptcy court by creditor using 28 U.S.C. §1367 ).

A lawsuit must be dismissed if a court does not have subject matter jurisdiction over matters in issue. Fed. R. Civ. P. 12(b)(1). An FRCP 12(b)(1) motion should be granted if the plaintiff cannot state a plausible set of facts establishing subject matter jurisdiction, *Ashcroft v. Iqbal*, 556 U.S. 662, 684, 129 S.Ct. 1937 (2009). All allegations in a motion under 12(b)(1) are presumed to be true. Evidence outside the pleadings to resolve 12(b)(1) issues may be considered, See *Assoc of Am Med. Coll. V. United States* 217 F3d 770,778 (9th Cir 2000). The declaration attached is the introduction of such jurisdictional evidence. The plaintiff has the burden of establishing jurisdiction. See *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377 (1994).

The federal district court derives its jurisdiction from 28 U.S.C. § 1331 ("**1331**") and 28 U.S.C. § 1332 ("**1332**"). Federal court has jurisdiction over federal questions under 1331. All the causes of action are firmly rooted in state law. Given the novel state property law issues, this Court should decline to exercise supplemental jurisdiction under 28 U.S.C. §1367(c)(1).

Federal courts have jurisdiction under 1332 when the lawsuit pleads the minimum amount in controversy and that there are citizens of different states on both sides. In other words, 1332 requires complete diversity among parties, "meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant" C*ent W. Va Energy Co. v. Mountain State Carbon, LLC* 636 F.3d 101, 103 (4th Cir 2011). The Lender and Mr. Moshkovich lack diversity on two grounds. Although the Lender is incorporated in Nevada, the Lender's primary place of business is in California, See, Declaration attached. Alternatively, the Complaint instructs the Court to disregard the Lender's corporate structure. 28 U.S.C. §1331(c)(2) See *Martinez v. Wells Fargo Bank*, 946 F. Supp. 2d 1010 (N.D. Cal. 2013) (Plaintiff had Cal Bus & Prof Code §17200 claim in federal court but court lacked diversity jurisdiction because Wells Fargo principal place of business was California).

//

//

B. **If there is Federal jurisdiction, Mr. Moshkovich cannot litigate in front of the Bankruptcy Court on the claims for damages and the claims against the Individuals without the Defendants' consent.**

The bankruptcy source of federal court jurisdiction is under 28 U.S.C. § 1334 where Congress has divided bankruptcy proceedings into three categories, (1) those that arise under title 11, (2) in title 11 and (3) related to a case under title 11.' *Stern v. Marshall*, 564 U.S. 462, 473, 131 S. Ct. 2594, 2603 (2011). Then once the case fits into one of those three categories it is then a question whether a bankruptcy court not an Article III court could issue a final and binding judgment without the need for consent of the parties. The statutory source is 28 U.S.C. § 157. Related to a case matters are non-core proceedings. See *Stern* at 477. A bankruptcy court cannot adjudicate a state lawsuit brought by a debtor against a party that had not filed a claim against the bankruptcy estate *Id* at 488. Here, this Court cannot issue a final judgment on Mr. Moshkovich's claims against the Individuals who have not filed a proof of claim, nor consented expressly or implicitly to bankruptcy court jurisdiction.

If Mr. Moshkovich is interested the Bankruptcy Court issuing more than a report and recommendation, the Debtor must dismiss both the claims against the Individuals and those for damages against the Lender. These claims seek only to augment the bankruptcy estate. *Id* at 492. Consent to adjudication by a bankruptcy court whether express or implied must be knowing and voluntary. See *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015). Alter ego claims against a debtor corporation required consent from the principal in *Wellness*. Alter ego claims by the debtor in this case most certainly requires consent. *Wellness* at 1940.

C. **The Complaint must have facts.**

If the Bankruptcy Court has the jurisdiction to enter a final judgment, then the Bankruptcy Court should dismiss the Complaint, because a Complaint must have facts. A party must assert a defense based on a "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss a complaint must contain

sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Iqbal* at 678. A court should assess whether a pleading adequately states a claim for relief by

(1) taking notes of the elements of the claims for relief;

(2) disregarding conclusory allegations;

(3) assume the veracity of well pleaded allegations and

(4) determine whether claim contains plausible allegations supporting each element of the claim.

See *Id* at 675-79

The standard requires that the Court make reasonable inferences in favor of the plaintiff *Id* at 778, not inferences that do not logically follow from a particular set of facts, *Id.* at 779 (judges should use their judicial experience and common sense). Here, Mr. Moshkovich expects the pleaded facts to lift more than they are capable of lifting while overestimating their legal significance.

## III. ARGUMENT

### A. Typos do not result in free homes

#### (i) The Lender can introduce parol evidence around an integration clause in California Court.

Mr. Moshkovich at all times understood that the Lender had a secured interest in the Property. This was true when Mr. Moshkovich signed the agreement in 2011 and when he signed all subsequent loan documents. Ultimately both parties believed that the Lender always had a secured interest in the Property, otherwise why would Mr. Moshkovich try and convince the Lender and the Individuals that he intended on selling the Property. If Mr. Moshkovich truly believed that the Lender did not have a secured interest, Mr. Moshkovich would have contested the foreclosure in state court. He puts too much faith in the power of the integration clause referenced in the Complaint ¶55 pg 9.

According to Mr. Moshkovich, the integration clause destroys the Parol Evidence Rule and prevents all courts from correcting all mistakes including scrivener's errors. Mr.

Moshkovich believes that the integration clause bars any reference to "prior agreements to set the interest, default interest and late fee rates" Complaint ¶¶ 55,76 pg 9, even though the both loan modifications ("**Loan Mods**") reference the notes in the recital. Loan Mods attached hereto as **Exhibit** "**1**" (Complaint "Exhibit "8", "9" and "10").

Mr. Moshkovich concludes that because the 2011 deed of trust no longer existed at the time of the signing of the Loan Mods, this must mean that the Lender's interest is no longer secured See Complaint ¶76. This reading of California law is incorrect.

Integration clauses in California do not change the Parol Evidence Rule. See, *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1176, (C.D. Cal 2009). (integration clauses have been disregarded by California Courts) See *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th 1230, 1243 (2013). ("In determining whether [there has been] a mutual mistake … , [the] court may consider parol evidence," and such evidence may be introduced in the face of an integration clause"). A mutual mistake is a mistake on a basic assumption of the contract where both parties had the same intention at the time the contract was signed, See, RESTATEMENT (SECOND) OF CONTRACT § 152. Other than the amount borrowed, the lender name and the early repayment terms, the 2014 deed of trust and note are identical to the 2011 deed of trust and note. **Exhibit** "**2**" attached (2014 deed of trust)(Complaint Exhibit "2"), **Exhibit** "**3**" (Main Case Dkt No 104, Exhibit "C")(2011 Deed of Trust). If the 2014 deed of trust had been referenced in the Loan Mod and not the 2011 deed of trust, there would have been no difference in any of the repayment terms and therefore a California Court would reform the Loan Mod. This is a simple typo ("**Typo**"), not a drastic change in terms.

(ii) California Courts will reform typos notwithstanding an integration clause.

The Debtor argues that the Loan Mod cannot be reformed to correct the Typo because of the integration clause. A California court after bypassing the integration clause would reform the Loan Mod, because only "gross negligence or irrational conduct will preclude a reformation or correction" *First Am Title & Trust Co. v. Cook* 60 Cal Rept 645 (1970); *In re Trans-Action Commer. Investors, Ltd.* 2002 Bankr. LEXIS 2139 (Bankr. N.D.

Cal. June 28, 2002)(a creditor could present extrinsic evidence to establish that a lease mistakenly omitted the statement that the rent obligation was to be nonrecourse, even if the agreement had an integration clause). Even the fact that the Typo had been repeated in previous modifications, does not show gross negligence or irrational conduct. Because the Typo would not yield any change in the payment terms and in the parties understanding at the time of the Loan Mod, the Court would reform. See, *Lemoge Electric v. County of San Mateo* 46 Cal. 2d 659, 663-664, (1956) (Court declined to reform, even though the bid contained a clerical error, because party accepting the bid terms did not agree to pay more than the sum on the contract). Unlike *Lemoge*, the party accepting the Loan Mod, Mr. Moshkovich, did not expect to give a wholly unsecured claim to the Lender.

Yet now, while Mr. Moshkovich claims that the integration clause prevents the Lender from reforming the agreement, he claims that the integration clause does not prevent him from reforming the agreement to change the Lender's interest from secured to unsecured. While the integration clause would have no effect over the Lender introducing Parol Evidence to correct the Typo, the integration clause would stop Mr. Moshkovich from changing the agreement from giving the Lender a larger security interest to giving the Lender an unsecured interest. The reason Mr. Moshkovich could not reform the agreements in such a manner, is because the change would, unlike the Lender's mistake, drastically change the terms agreed to at the time of the signing of the Loan Mods and a California Court would reject such a reformation attempt See, *Lemoge*.

B. **According to Mr. Moshkovich, there are no mortgage backed securities.**

Whether or not an assignment between an assignor and assignee is properly executed does not determine whether the obligor is obligated. An assignment does not need to be recorded to be valid there would be no mortgage backed securities. Based on such an invalid argument, Mortgage Electronic Recording Service (MERS) would not exist. Because the assignment is not recorded before the obligor signs the obligation that changes the nature of the obligation, Complaint ¶ 33. Mr. Moshkovich subsequently ratified

the agreement notwithstanding the date of the assignment or the recording of the assignment.]

C**. An alter ego claim requires facts.**

Mr. Moshkovich presents actual dates with events, exhibits containing loan modification agreements, notes, deeds of trust with specifics regarding the secured nature of the Lender's claim. Mr. Moshkovich also presents specifics regarding his age and physical condition for the elder abuse claim. After presenting these specifics, he presents no specifics, no information, and no details but nevertheless concludes that he is entitled to pierce the Lender's corporate veil to collect on the Individuals', Complaint ¶¶ 9 11. The allegations are mere recitations of elements. Mr. Moshkovich and his counsel have no basis in law or fact to substantiate these allegations. Mr. Moshkovich cannot both conclude that the Lender is undercapitalized, while at the same time accept and request loan proceeds on demand. See Fed R. Bankr. P. 9011(c). Mr. Moshkovich's 2004 motion which yielded the production of the documents which form the basis of the Complaint, did not include a request for corporate formation documents, exhibit A from that 2004 motion is attached hereto as **Exhibit** "**4**" (Main Case Dkt 70). Merely being a single member LLC does not entitle a plaintiff to pierce the corporate veil. *Bock v. California Capital Loans, Inc.,* 216 Cal. App. 4th 264 (2013)(recognizing the existence of the single member LLC and covering that LLC under the usury exemption for real estate brokers).

D. **The elder abuse statute does not exempt senior citizens from foreclosures.**

According to Mr. Moshkovich, to show elder abuse under Cal Welf & Inst. Code § 15610 et seq, all that needs to be shown in the Complaint in the following referenced paragraphs are the following

(1) age ¶¶ 5 and 112,

(2) health issues ¶¶ 59 and 112,

(3) the Typo ¶¶ 114 and 112,

(4) legal conclusion that an interest rate is usurious ¶ 114 and

(5) a conclusion that there was wrongful use and fraudulent intent without any specifics supporting those conclusions ¶ 115.

However, the elder abuse claim fails to state a viable cause of action because the elder abuse statute does not exempt senior citizens from foreclosure of their deeds of trust when they default on their real estate secured loans *Stebley v. Litton Loan Servicing, LLP* 202 Cal.App.4th 522, 528 (2011). Mr. Moshkovich fails to plead plausible allegations to support each element of the cause of action for elder abuse. Merely copy pasting the language from the statute without any facts does not meet the requirements to survive a motion to dismiss under *Iqbal*. Cal Welf & Inst. Code § 15610.30 sets forth the requirements:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult **for a wrongful use or with intent to defraud, or both.**
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.
> (b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, **or retained property for a wrongful use** if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.
> (c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.
> (d) For purposes of this section, "representative" means a person or entity that is either of the following:
> (1) A conservator, trustee, or other representative of the estate of an elder or dependent adult.
> (2) An attorney-in-fact of an elder or dependent adult who acts within the authority of the power of attorney. (emphasis added)

Although Mr. Moshkovich does not need to prove bad faith or intent to defraud in elder or dependent adult abuse cases, he still needs facts to support the element of "wrongful use". Wrongful use does not include the intent to lend money, take collateral or foreclose on collateral when a debt is not paid. *Stebley at* 527-528 (2011). "Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity." See, Cal Welf & Inst Code § 15610.70(a) If "undue influence" existed, then Mr. Moshkovich would have sold the Property at the advice of the Individuals in December 2019. Mr. Moshkovich, has plenty of free will, regardless of the reasonable advice of real estate professionals provided to him over the years.

While no one is contesting the seriousness of the medical issues described in ¶ 58 of the Complaint, there are no facts alleged that these issues adversely affected Mr. Moshkovich's cognitive functions and that these Individuals with knowledge, took advantage of these disabilities. The allegation in ¶58 implies that the debilitating health issues over many years included spinal stenosis, whereas Mr. Moshkovich's declaration in the early stages of the case described the instability in his spinal structure as beginning two years ago at Main Case Dkt No 47 ¶ 9 A true and correct copy of Main Case Dkt 47 is attached as **Exhibit "5"**. Mr. Moshkovich needs to show in the Main Case that he is capable as a debtor in possession on the one hand and in this Adversary he is attempting to show he lacks capability to the point he is a victim. If Mr. Moshkovich is as he describes in the Adversary, he is incapable of being a debtor in possession and a chapter 11 trustee should be appointed.

Further, despite having these medical issues for "many years", Mr. Moshkovich was still able to obtain the approval from a world leader for a multi-billion project, not twenty years ago, but in 2016 when Mr. Moshkovich was 72 years young. See, Hugo Martin "Putin gives blessing to Russian theme park designed by North Hollywood firm" *Los Angeles Times* June 14, 2016, https://www.latimes.com/business/la-fi-russian-theme-park-20160614-snap-story.html. See Exhibit "5" ¶ 10. Far from being an unwitting victim,

Mr. Moshkovich negotiated several loan modifications with the Lender and was fully aware of the terms and conditions of the loan agreements. Applying the logic set forth in the Complaint, if the Defendants are guilty of elder abuse then the post-petition financer JWR Law LLC is also guilty of elder abuse having notice of Mr. Moshkovich's condition from the declaration supporting the motion for post-petition financing (Exhibit "5") and able to take advantage of Mr. Moshkovich's vulnerable position as a debtor in bankruptcy to get more favorable terms.

**E. A usury allegation requires more than an interest rate above 10%.**

Mr. Moshkovich alleges a usurious interest rate by displaying an interest rate percentage above 10%. The California Constitution prohibits the charging of an interest rate above 10% unless the situation fits into one of the numerous exceptions. <u>See</u> Cal Const, Art. XV, Sec. 1. The applicable exceptions are relevant in this case. One is if the loan is not used primarily for personal, family or household purposes. Both the 2011 and the 2014 loan application evidence that both parties knew that the loan proceeds were to be used for business purposes. Mr Moshkovich acknowledged this fact in his own handwriting. Exhibit "<u>3</u>" (Exhibit "A") stated that the funds were to be used for business purposes.

Another exemption is for "any loans made or arranged by any person licensed as a real estate broker by the State of California" See, *Chapman v. Farr* 132 Cal App 1021 (1982). Here, the 2014 loan was originated by a licensed real estate broker. Exhibit "<u>3</u>" (Exhibit "B" (broker signature on 2014 loan) pg 3). The subsequent advances and the loan modifications were also handled by licensed real estate broker Rommy Shy, <u>See</u> Complaint generally.

Mr. Moshkovich acknowledged the terms of the loan in his own handwriting while verifying that the Property was not his primary residence at the time of the Loan, and that the proceeds were to be used for business purposes. These terms exempted the Loan from usury laws, and he was aware of this fact at the time the Loan was originated back in 2011.

**F. Mr. Moshkovich received reasonably equivalent value in exchange for a Loan given the risks involved.**

A fraudulent transfer under 11 U.S.C. §548 requires that the debtor make the transfer with actual intent to hinder or delay or defraud or if the debtor "(i) received less than a reasonably equivalent value in exchange for such transfer or obligation;" To get the loan, Mr. Moskhovich needed to give an exit fee. It is less than reasonably equivalent value if Mr. Moskhovich could have received a loan from another lender without an exit fee. It is not as if the Lender gave no loan proceeds in exchange for the exit fee.

Entities like the Lender exist because conventional financiers are not designed to measure unique and tailored borrower intangibles, because such intangibles are difficult to explain to institutional shareholders. The decision to lend to such a pool of unconventional borrowers requires a leap of faith grounded in an interest rate to compensate with the risk inherent in taking such a leap. Mr. Moshkovich needed an unconventional lender to take such a leap, one willing to take factors that a conventional lender could not take into account, such as the belief in Mr. Moshkovich promises to sell the Property, his speculative business plans, and Russian connections. Barry Shy was even able to witness Mr. Moshkovich's abilities in a trip to Russia. See Exhibit "5" ¶ 10. A conventional financier would merely see that Mr. Moshkovich has no regular income and a first mortgage, and refuse to underwrite such an unconventional borrower. This is exactly why in 2011, Mr. Moshkovich looked for a financer willing to make the leap. If Mr. Moshkovich, like any borrower would prefer to obtain a loan at a lower interest rate, but for nine years, Mr. Moshkovich could not find a loan at a lower rate.

**G. Mr. Moshkovich requests an injunction to enforce another injunction**

In the tenth cause of action, Mr. Moshkovich requests injunctive relief should the stay be lifted. This is a remedy in search of a problem. There would be no reason to lift the stay if the Court granted the injunction. There would be no reason for the injunction if the stay were still in effect.

//

### H. A declaratory judgment is a remedy not a cause of action

Under 28 USCS § 2201, declaratory judgment is remedy, not an expansion of district court jurisdiction or a cause of action. *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, (S.D.N.Y. 1999).

## IV. CONCLUSION

WHEREFORE, the Defendants respectfully requests that the Court enter an order:

1. Either abstaining from deciding the above titled adversary ("**Adversary**") or;

2. Dismissing the Adversary with prejudice; and

3. Granting such other and further relief as this Court may deem just and proper.

DATED: October 15, 2020

Respectfully submitted,

Law Offices of David P. Jacob, P.C.

David Jacob, Esq.
Attorney for Defendants

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; PLAINTIFF AND PLAINTIFF'S ATTORNEY OF RECORD AND ALL OTHER PARTIES IN INTEREST:**

Pursuant to the Fed R. of Evid 201, the above named Defendants, through their undersigned counsel, hereby request that the Court take judicial notice of the following documents the existence of which are not the subject of any reasonable dispute. Unless otherwise stated, the capitalized terms in the motion to dismiss the above complaint ("**Motion**") shall have the same meanings as they do in the Motion.

1. The Complaint filed in this Adversary
2. True and correct copies of the Complaint exhibit numbers "8", "9" and "10" are attached as **Exhibit** "**1**". Adversary Dkt No. 1
3. A true and correct copy of the Complaint's exhibit "2" is attached hereto as **Exhibit** "**2**".
4. True and correct copies of the exhibits "A", "B" and "C" attached to Main Case Dkt No. 104 which was the Lender's reply in the relief from stay motion are attached hereto as **Exhibit** "**3**"
5. A true and correct copy of exhibit "A" attached to Main Case Dkt No. 70, Mr. Moshkovich's motion for 2004 exam is attached hereto as **Exhibit** "**4**"
6. A true and correct copy of Main Case Dkt No. 47, Mr. Moshkovich's declaration in support of the motion for post petition financing is attached hereto as **Exhibit** "**5**"

DATED: October 15, 2020

Respectfully submitted,

Law Offices of David P. Jacob, P.C.

David Jacob, Esq.
Attorney for Defendants

## DECLARATION OF ROMMY SHY

I, Rommy Shy, hereby declare as follows:

1. I have personal knowledge of the facts set forth herein and, if called to testify I could and could competently testify thereto.

2. I am employed by the BOBS LLC ("**Lender**").

3. I submit this declaration in support of our motion to dismiss ("**Motion**") the adversary complaint of Gennady Moshkovich. Unless otherwise stated all capitalized terms herein shall have the same meaning as in the Motion.

4. I live in the State of California.

5. My residence is in California

6. The Lender's primary place of business is in California.

7. My father, Barry Shy lives in California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: 10/15/20

Rommy Shy
On behalf of myself and BOBS, LLC

# EXHIBIT "1"

EXHIBIT "1"

# EXHIBIT "8"

***Borrower: Gennady Moshkovich***

**LOAN MODIFICATION AGREEMENT**

THIS AGREEMENT ("Agreement") is made **12/05/2017**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

**I) Note for $6,000,000.00 dated 07/22/2014 (originally to Spring7 Loft, LLC and later assigned to Lender.**

**II) Note for $1,000,000.00 dated 04/06/2016**

**III) Note for $1,000,000.00 dated 08/11/2016**

**IV) Note for $1,500,000.00 dated 04/10/2017**

These 4 Notes represent Borrower's total indebtedness of **$9,500,000.00** to Lender and this debt is secured by a Second Deed of Trust on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

Borrower currently wishes to borrow $1,500,000.00 ("Increase") from Lender which will bring Borrower's total principal balance(s) to $11,000,000.00. Borrower will sign a new Note consolidating existing balance and new increase. This Note shall be in the amount of $11,000,000.00 and bear a 12.25% interest rate with interest payments of $114,843.75 due monthly.

**Interest will accrue at the rate of 12.25% from 12/05/2017 until maturity on 12/05/2019, at which time all sums shall become due and payable.**

1. **Maturity and Balloon Payment** - The loan is hereby extended to **12/05/2019** at which time all amounts of unpaid principal and interest become all due and payable ("Loan Maturity").

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable.

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has notoccurred.

4. **Lender Origination Fee**

Borrower agrees to pay to Lender an amount equal to 1.00% of the new loan increase amount ($15,000) which will be taken from Borrower's net funded amount upon funding. Borrower acknowledges that Lender will fund $1,485,000.00 upon mutual execution of this Loan Modification Agreement and new Note secured by Deed of Trust dated 12/04/17.

**5. No Further Commitments**.

Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

a. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

b. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

**7.** **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:



INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER**:

**GENNADY MOSHKOVICH**

______________________________
**Signature**

GENNADY MOSHKOVICH
**Print Name**

Dated: 12/5/2017

**LENDER**:

**BOBS LLC**

______________________________
**Signature**

Ronny Shy
**Print Name**

Dated: 12/5/2017

# EXHIBIT "9"

**This page is part of your document - DO NOT DISCARD**

**20180665817**

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/03/18 AT 12:49PM

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |

LEADSHEET

201807032260006

**00015444055**

009192126

**SEQ:
01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E503341

RECORDING REQUESTED BY

**WHEN RECORDED MAIL TO**

**NAME** BOBS LLC

**MAILING** 600 S. Spring St. #106

**CITY, STATE ZIP CODE**

Los Angeles, CA 90014

07/03/2018

*20180665817*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE(S)**

Loan Modification Agreement

*Borrower: Gennady Moshkovich*

## LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **06/27/2018**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

- **I) Note for $6,000,000.00 dated 07/22/2014 and recorded as Instrument #20140770548 for the benefit of Spring 7 Loft LLC which has since assigned loan to Lender**
- **II) Note for $1,000,000.00 dated 04/06/2016**
- **III) Note for $1,000,000.00 dated 08/11/2016**
- **IV) Note for $1,500,000.00 dated 04/10/2017**
- **V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**

These 4 Notes and 1 Loan Modification represent Borrower's total indebtedness of **$11,000,000.00** to Lender and this debt is secured by a **Second Deed of Trust** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

On 12/5/2017, Borrower signed a Loan Modification consolidating the first four notes and the $1,500,000 principal increase into a New Note for $11,000,000 and bearing an interest rate of 12.25%. Now, Borrower currently wishes to borrow $2,000,000.00 ("Increase") from Lender and amend Note dated 12/5/2017 which will bring Borrower's total principal balance(s) to **$13,000,000.00**. At funding of the additional $2,000,000 as evidenced herein, Lender shall net fund $1,938,750.00 retaining 90 (ninety) days prepaid interest on this new $2,000,000 installment. Per diem interest calculated on the basis of a 360 day year.

Until 10/1/2018, Borrower will not make interest payments for the period of 7/1/2018 – 9/30/2018 as the total interest owed for these 3 months ($398,125.00) will be taken out of Lender proceeds on this $2,000,000 advance. Lender will net fund $1,601,875.00 plus $6,000 early payment credit.

Net funding to Borrower to be $1,607,875.00.

Initial

1. **Maturity and Balloon Payment** –

Interest will accrue at the rate of 12.25% until maturity on 12/05/2020, at which time all sums (including but not limited to principal, interest, default interest, late fees and any other ancillary fees shall become due and payable).

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable. Borrower warrants that the outstanding debt of $13,000,000 is secured in entirety by a **Second Position Deed of Trust**.

Initial

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows: .

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:

INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER:**

**GENNADY MOSHKOVICH**

________________________
**Signature**

GENNADY MOSHKOVICH
**Print Name**

Dated: 7/3/18

**LENDER:**

**BOBS LLC**

________________________
**Signature**

Rommy Shy / Manager
**Print Name**

Dated: 7/3/18

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On July 3 2018 before me, Michael Boh, Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared Gennady Moshkovich
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL BOH
Commission # 2091314
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2018

Signature [signature]
*Signature of Notary Public*

*Place Notary Seal Above*

**OPTIONAL**

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: LOAN Modification Agreement Document Date: ______
Number of Pages: 6 Signer(s) Other Than Named Above: ______

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: ______
☐ Corporate Officer — Title(s): ______
☐ Partner — ☐ Limited ☐ General
☑ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ______
Signer Is Representing: ______

Signer's Name: ______
☐ Corporate Officer — Title(s): ______
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: ______
Signer Is Representing: ______

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

Case 2:20-ap-01567-BB Doc 2 Filed 09/16/20 Entered 09/16/20 22:59:36 Desc
Main Document Page 38 of 69

# EXHIBIT "10"

*Borrower: Gennady Moshkovich*

# LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made 09/04/2019, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

- **I) Note for $6,000,000.00 dated 07/22/2014 (originally to Spring7 Loft, LLC and later assigned to Lender.**
- **II) Note for $1,000,000.00 dated 04/06/2016**
- **III) Note for $1,000,000.00 dated 08/11/2016**
- **IV) Note for $1,500,000.00 dated 04/10/2017**
- **V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**
- **VI) Loan Modification and Principal Balance Increase of $2,000,000 dated 6/27/2018 and recorded on 7/3/2018 at the Los Angeles Recorder's Office as Instrument #20180665817**

These 4 Notes and 2 Loan Modifications represent Borrower's total indebtedness of **$13,000,000.00** to Lender and this debt is secured by a **Second Deed of Trust** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011.**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

As of September 4, 2019, Borrower is delinquent 6 months in his monthly interest payments of $132,708 for a total of $796,248 owed in simple interest, and not including late fees or default interest which Lender is entitled to collect per the Note terms. Borrower has expressed to Lender that they are currently marketing the collateralized property for sale and have expressed that a recorded Notice of Default will hurt their prospects of selling the property. Lender hereby agrees not to file a Notice of Default in consideration of the following:

- Borrower will pay at least 3 months of interest payments ($398,124) on or before October 15, 2019. If this payment is not made, Lender shall have the option to file the Notice of Default without further delay.
- Should Borrower make the above mentioned payment by the specified date, Lender will refrain from filing a Notice of Default until 2/4/2020. If all delinquent interest shall be paid by 2/4/2020 then Lender shall not charge Borrower default interest or late fees as is Lender's

right by the terms of the Loan Documents. If all delinquent interest accrued will not be paid by 2/4/2020, Lender shall have the right to file a Notice of Default and Borrower shall be responsible for all default interest and late fees that have accrued up until that point and going forward from then.

- Further, in consideration of Lender agreeing to this agreement, Borrower shall pay a $500,000 loan exit fee to Lender when this loan is paid off in addition to any accrued interest or fees owed at that time under the terms of the Note and Loan Documents.

E.M.
Initial

1. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire

understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed

inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

| | |
|---|---|
| **BORROWER:** | **LENDER:** |
| **GENNADY MOSHKOVICH** | **BOBS LLC** |
| [signature] | ______________________ |
| **Signature** | **Signature** |
| GENNADY MOSHKOVICH | ______________________ |
| **Print Name** | **Print Name** |
| Dated: 9/6/2019 | Dated: ______________ |

Certificate Attached for
California Notary Wording

## CALIFORNIA ALL-PURPOSE
## CERTIFICATE OF ACKNOWLEDGMENT
(CALIFORNIA CIVIL CODE § 1189)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
COUNTY OF Los Angeles )

On 09/06/2019 before me, Pernetha Julien, Notary Public
(*Date*) (*Here Insert Name and Title of the Officer*)

personally appeared Gennady Moshkovich,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PERNETHA JULIEN
Notary Public - California
Los Angeles County
Commission # 2271005
My Comm. Expires Dec 15, 2022

Pernetha Julien
*Signature of Notary Public* (Notary Seal)

**ADDITIONAL OPTIONAL INFORMATION**

**Description of Attached Document**

Title or Type of Document: ____________ Document Date: ____________

Number of Pages: ______ Signer(s) Other Than Named Above: ____________

Additional Information: ____________

# EXHIBIT "2"

EXHIBIT "2"

# EXHIBIT "2"

This page is part of your document - DO NOT DISCARD

**20140770548**

Pages:
0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/25/14 AT 08:00AM

| | |
|---|---|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |

LEADSHEET

201407250250001

**00009438959**

006310951

**SEQ:**
**10**

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

E145707

t60

FATCOLA
Recording Requested By

When Recorded Mail To
Spring7 Loft LLC
600 S Spring St, Unit Office
Los Angeles, CA 90014

Title Order No. 4676174

07/25/2014
*20140770548*

Space above this line for recorder's use

# DEED OF TRUST

Loan No. **ODL-072214**

This Deed of Trust, made this **22nd** day of **July 2014**, among the Trustor, **Gennady Moshkovich, an unmarried man** (herein "Borrower"), **Spring7 Loft LLC** (herein "Trustee"), and the Beneficiary, **Spring7 Loft, LLC, as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: **TRACT NUMBER 23782, LOT 2, IN THE CITY OF BEVERLY HILLS, AS PER MAP RECORDED IN BOOK 621, PAGE(S) 33, OF MAPS OF THE OFFICIAL RECORDS OF THE LOS ANGELES COUNTY RECORDER'S OFFICE,** which has the address of **911 Loma Vista Dr Beverly Hills CA 90210** (herein "Property Address"); APN: 4391-036-020

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust, and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **07/22/2014**, in the principal sum of U S. **$6,000,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of

yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

4. **Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall. (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the

Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

11. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

12. **Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

13. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

14. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Spring7 Loft LLC, 600 S Spring St, Unit Office Los Angeles CA 90014** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

15. **This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

16. **Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

17. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property

5

including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

[signature] 7/22/14

Borrower Gennady Moshkovich Date Borrower Date

6

State of California
County of Los Angeles

On 7/22/2014 before me, Scott Hacker, Notary Public,
personally appeared Gennady Moshkovich

who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SCOTT HACKER
Commission # 1921408
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2015

Signature

(Seal)

7

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

| | | | |
|---|---|---|---|
| Signature of Beneficiary (the "LENDER") | Date | Signature of Beneficiary (the "LENDER") | Date |

When recorded, mail to

Att: ______________________

# EXHIBIT "3"

EXHIBIT "3"

# EXHIBIT "A"

EXHIBIT "A"

**California Private Lenders**
**29800 Agoura Rd. - Suite 208 Agoura Hills CA 91301**

Date: **7/26/2011**
Borrower: **Gennady Moshkovich**
Loan No.: **CPL-1154**

**Please provide the purpose of your loan as well as how you intend to pay off the loan.**

The purpose of the purchase or refinance is:

This loan is not for personal use but for business related purposes

I intend to pay off the loan by:

Either sell the property or pay off from expected proceeds from the business.

[signature] 7/27/11

Borrower *Gennady Moshkovich* Date Borrower Date

**Open Door Lending**
**24013 Ventura Blvd, Ste 200 Calabasas CA 91302**

Date: **7/22/2014**
Borrower: **Gennady Moshkovich**
Loan No.: **ODL-072214**

**Please provide the purpose of your loan as well as how you intend to pay off the loan.**

The purpose of the purchase or refinance is:

100% of the loan proceeds going to fund my project

I intend to pay off the loan by:

Upon the sale of the property which is listed for sale.

7/22/14

Borrower **Gennady Moshkovich** Date Borrower Date

# <u>EXHIBIT "B"</u>

# <u>EXHIBIT "B"</u>

**Open Door Lending**
**24013 Ventura Blvd, Ste 200 Calabasas CA 91302**

Date: **7/22/2014**
Borrower: **Gennady Moshkovich**
Loan No.: **ODL-072214**

# CERTIFICATE OF BUSINESS PURPOSE OF LOAN

Borrower certifies to **Open Door Lending** ("Originator") as follows:

1. I have applied to Originator for a trust deed loan of **$6,000,000.00** secured by the real property at **911 Loma Vista Dr, Beverly Hills CA 90210** (the "Loan").

2. Originator has stressed to me the importance of knowing the primary purpose of the Loan. I know that the legal responsibilities of Originator vary considerably depending upon whether the Loan is a consumer loan (for personal, household or family purposes), or a business loan.

3. I have represented to Originator and again represent to Originator that all of the purposes of the Loan, exclusive of commissions and loan expenses incurred to obtain the Loan are:

| | Purpose | Approximate Amount |
|---|---|---|
| A. | FUNDING FOR BUSINESS PROJECT | $ 6,000,000 — |
| B. | | $ |
| C. | | $ |
| D. | | $ |

4. The primary purpose of the Loan is to finance the business enterprise known as Gennady Moshkovich that is in the business of: Development.

5. No part of the Loan proceeds are intended to be used for a non-business (i.e., consumer) purpose except:

| | Purpose | Approximate Amount |
|---|---|---|
| A. | N/A | $ |
| B. | | $ |
| C. | | $ |

The lender, broker, assignees and successors of the Originator may rely upon this certificate. I declare under penalty of perjury under the laws of the State of California that the foregoing Certificate is true and correct.

[signature] 7/22/14

Borrower Gennady Moshkovich     Date     Borrower     Date

STATE OF CALIFORNIA
DEPARTMENT OF REAL ESTATE
*Serving Californians Since 1917*

# MORTGAGE LOAN DISCLOSURE STATEMENT/GOOD FAITH ESTIMATE
# NONTRADITIONAL MORTGAGE PRODUCT (ONE TO FOUR RESIDENTIAL UNITS)

RE 885 (REV. 8/08)

Borrower's Name(s): **Gennady Moshkovich**

Real Property Collateral: The intended security for this proposed loan will be a Deed of Trust on (street address or legal description): **911 Loma Vista Dr Beverly Hills CA 90210**

This joint Mortgage Loan Disclosure Statement/Good Faith Estimate is being provided by **Open Door Lending**, a real estate broker acting as a mortgage broker, pursuant to the Federal Real Estate Settlement Procedures Act (RESPA) and similar California law. In a transaction subject to RESPA, a lender will provide you with an additional Good Faith Estimate within three business days of the receipt of your loan application. You will also be informed of material changes before settlement/close of escrow. The name of the intended lender to whom your loan application will be delivered is:

☐Unknown ☑ **Spring7 Loft, LLC** (Name of lender, if known)

## GOOD FAITH ESTIMATE OF CLOSING COSTS

The information provided below reflects estimates of the charges you are likely to incur at the settlement of your loan. The fees, commissions, costs and expenses listed are estimates; the actual charges may be more or less. Your transaction may not involve a charge for every item listed and any additional items charged will be listed. The numbers listed beside the estimate generally correspond to the numbered lines contained in the HUD-1 Settlement Statement which you will receive at settlement if this transaction is subject to RESPA. The HUD-1 Settlement Statement contains the actual costs for the items paid at settlement. When this transaction is subject to RESPA, by signing page two of this form you are also acknowledging receipt of the HUD Guide to Settlement Costs.

| HUD-1 | Item | | Paid to Others | Paid to Broker |
|---|---|---|---|---|
| 800 | *Items Payable in Connection with Loan* | | | |
| 801 | Lender's Loan Origination Fee | | $60,000.00 | |
| 802 | Lender's Loan Discount Fee | | | |
| 803 | Appraisal Fee | | | |
| 804 | Credit Report | | | |
| 805 | Lender's Inspection Fee | | | |
| 808 | Mortgage Broker Fee | | | |
| 809 | Tax Service Fee | | | $2,500.00 |
| 810 | Processing Fee | | | |
| 811 | Underwriting Fee | | | $1,880.00 |
| 812 | Wire Transfer Fee | | | |
| 813 | | | | |
| 900 | *Items Required by Lender to be Paid in Advance* | | | |
| 901 | Interest for 8 days at $2,083.33 per day | | $16,666.67 | |
| 902 | Mortgage Insurance Premiums | | | |
| 903 | Hazard Insurance Premiums | | | |
| 904 | County Property Taxes | | | |
| 905 | VA Funding Fee | | | |
| 906 | Prepaid Payments | | $0.00 | |
| 1000 | *Reserves Deposited with Lender* | | | |
| 1001 | Hazard Insurance: | _ months at _ /month | $0.00 | |
| 1002 | Mortgage Insurance: _ | months at /month | $0.00 | |
| 1004 | Co. Property Taxes: _ | months at /month | $0.00 | |
| 1005 | | | | |
| 1100 | *Title Charges* | | | |
| 1101 | Settlement or Closing/Escrow Fee | | | |
| 1105 | Document Preparation Fee | | | |
| 1106 | Notary Fee | | | |
| 1108 | Title Insurance | | $4,500.00 | |
| 1109 | Lender's coverage | | | |
| 1200 | *Government Recording and Transfer Charges* | | | |
| 1201 | Recording Fees | | $100.00 | |
| 1202 | City/County Tax/Stamps | | | |
| 1203 | State tax/stamps | | | |
| 1300 | *Additional Settlement Charges* | | | |
| 1302 | Pest Inspection | | | |
| 1303 | Beneficiary statement fees | | | |

**Subtotal of Initial Fees, Commissions, Costs and Expenses:** $81,266.67 $4,380.00

**Total of Initial Fees, Commissions, Costs and Expenses** $85,646.67

**Compensation to Broker (Not Paid Out of Loan Proceeds):**

Mortgage Broker Commission/Fee $

Any Additional Compensation from Lender ☑ No ☐ Yes $

(Approximate Yield Spread Premium or Other Rebate)

## ADDITIONAL REQUIRED CALIFORNIA DISCLOSURES

I. Proposed Loan Amount: $6,000,000.00

| | | |
|---|---|---|
| Initial Commissions, Fees, Costs & Expenses Summarized on Page 1 | $85,646.67 | |
| Payment of Other Obligations (List): | | |
| Credit Life and/or Disability Insurance (see V below) | $0.00 | |
| Discharge of existing liens | $2,016,438.36 | |
| **Subtotals of All Deductions:** | | $2,102,085.03 |
| **Estimated Cash at Closing** ☑ **To You** ☐ **That you must pay** | | $3,897,914.97 |

II. Proposed Loan Term: 24 ☐ Years ☑ Months

III. Proposed Interest Rate: 12.500% ☑Fixed Rate ☐Initial Adjustable Rate
**If the Fixed Rate Box is checked in Section III immediately above, proceed to section X. Do not complete sections IV through IX.**

IV. Initial Adjustable Rate in effect for N/A Months

V. Fully Indexed Interest Rate N/A %

VI. Maximum Interest Rate N/A %

VII. Proposed Initial (Minimum) Loan Payment $ N/A Monthly

VIII. Interest Rate can Increase N/A % each N/A Months

IX. Payment Options end after N/A Months or N/A % of Original Balance, whichever comes first.

X. After N/A months you will not have the option to make minimum or interest only payments and negative amortization (increases in your principal balance), if any, will no longer be allowed. Assuming you have made minimum payments, you may then have to make principal and interest payments of N/A at the maximum interest rate in effect for the remaining N/A months of the loan. ***These payments will be significantly higher than the minimum or interest only payments.***

XI. If your loan contains negative amortization, at the time no additional negative amortization will accrue, your loan balance will be N/A assuming minimum payments are made.

XII. The loan is subject to a balloon payment: ☐ No ☑ Yes. If Yes, the following paragraph applies and a final balloon payment of **$6,062,500.00** will be due on 8/1/2016 *[estimated date (day/month/year)]*

**NOTICE TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY TO MAKE THE BALLOON PAYMENT. IN THAT CASE, YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF YOUR EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THIS LOAN.**

XIII. Prepayments: The proposed loan has the following prepayment provisions:
☐ No prepayment penalty (you will not be charged a penalty to pay off or refinance the loan before maturity)
☐ You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 1 years. The prepayment penalty could be as much as . Any prepayment of principal in excess of 20% of the
☐ original loan balance or
☐ unpaid balance
for the first 1 years will include a penalty not to exceed months interest at the note interest rate but not more than the interest you would be charged if the loan were paid to maturity.
☑ Other – you will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 1 years as follows:
Prepayment Penalty is equal to twelve (12) months guarantee interest on the original rincipal balance. Prepayment Penalty is waived after the first twelve (12) months of the loans term.

XIV. Taxes and Insurance:
☐ There will be an impound (escrow) account which will collect approximately a month in addition to your principal and interest payments for the payment of ☐ county property taxes* ☐ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other .
☑ If there is no impound (escrow) account or if your escrow (impound) account does not include one or more of the payments described above, you will have to plan for the payment of ☑ county property taxes** ☑ hazard insurance ☐ mortgage insurance ☐ flood insurance ☐ other of approximately per year.

*** In a purchase transaction, county property taxes are calculated based on the sales price of the property and may require the payment of an additional (supplemental) tax bill from the county tax authority by your lender (if escrowed) or you if not escrowed.**

XV. Credit Life and/or Disability Insurance: The purchase of credit life and/or disability insurance by a borrower is NOT required as a condition of making this proposed loan.

XVI. Other Liens: Are there liens currently on this property for which the borrower is obligated? ☐No ☒Yes. If Yes, describe below:

| *Lienholder's Name* | *Amount Owing* | *Priority* |
|---|---|---|
| **Horizon Mortgage Bankers** | **$5,329,000.00** | **1st** |
| **SB Spring LLC** | **$2,000,000.00** | **2nd** |
| | | |
| | | |

Liens that will remain or are anticipated on this property after the proposed loan for which you are applying is made or arranged (including the proposed loan for which you are applying):

| *Lienholder's Name* | *Amount Owing* | *Priority* |
|---|---|---|
| **Horizon Mortgage Bankers** | **$5,329,000.00** | **1st** |
| **Spring7 Loft, LLC** | **$6,000,000.00** | **2nd** |
| | | |
| | | |
| | | |

NOTICE TO BORROWER: Be sure that you state the amount of all liens as accurately as possible. If you contract with the broker to arrange this loan, but it cannot be arranged because you did not state these liens correctly, you may be liable to pay commissions, fees and expenses even though you do not obtain the loan.

XVII. Article 7 Compliance: If this proposed loan is secured by a first deed of trust in a principal amount of less than $30,000 or secured by a junior lien in a principal amount of less than $20,000, the undersigned licensee certifies that the loan will be made in compliance with Article 7 of Chapter 3 of the Real Estate Law.

A. This loan ☐ may ☐ will ☑ will not be made wholly or in part from broker-controlled funds as defined in Section 10241(j) of the Business and Professions Code.

B. If the broker indicates in the above statement that the loan "may" be made out of broker-controlled funds, the broker must inform the borrower prior to the close of escrow if the funds to be received by the borrower are in fact broker-controlled funds.

XVIII. This loan is based on limited or no documentation of your income and/or assets and may have a higher interest rate, or more points or fees than other products requiring documentation: ☐ No ☑ Yes.

**NOTICE TO BROKER**

**If any of the columns in section XIX, Comparison of Sample Mortgage Features, on page 4 of this RE 885 form, are not completed, you must certify to the following:**

CERTIFICATION

I, Barry Harari, hereby certify (or declare) that the failure to complete the information in any or all of the columns (with the exception of the last column "Proposed Loan" in the Typical Mortgage Transactions portion of this RE 885) is either because (1) after a diligent search, I have determined that the product specified in that column is not available to consumers from mortgage lenders, or (2) the borrower to whom this form applies does not qualify for that particular product.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[signature] 7/22/14

Signature of Broker Date

XIX. Comparison of Sample Mortgage Features (One to Four Residential Units)

***TYPICAL MORTGAGE TRANSACTIONS***

| | **Principal and Interest**<br>*Fully Amortizing*<br>☑ Not Offered* | **Interest Only**<br>*Fully Amortizing*<br>☑ Not Offered* | **5/1 ARM**<br>*Fully Amortizing*<br>☑ Not Offered* | **Interest Only**<br>*Fully Amortizing*<br>☑ Not Offered* | **Option Payment**<br>*Fully Amortizing*<br>☑ Not Offered* | **Proposed Loan Type of Loan:**<br>**Type of Amortization: Interest Only** |
|---|---|---|---|---|---|---|
| **PROPOSED LOAN AMOUNT $6,000,000.00 2-YEAR TERM** | **Fixed Rate (%)** | **Fixed Rate ()<br>Interest Only for First 5 Years** | **Fixed Rate for First 5 Years; Adjustable Each Year After First 5 Years<br>(Initial rate for 1 to 5 is ; Maximum Rate is )** | **Interest Only and Fixed Rate for First 5 years; Adjustable Rate Each Year After First 5 Years<br>(Initial rate for 1 to 5 is ; Maximum Rate is %)** | **Adjustable Rate for Entire Term of the Mortgage (Rate in month 1 is ; Rate in month 2 through year 5 is ; Maximum Rate is )** | **Explanation of Type of Proposed Loan Product: Interest Only** |
| ***Payment Scenarios*** | | | | | | |
| Minimum Monthly Payment Years 1-5 except as noted | ** | | | | ****<br>(1st year only) | $62,500.00 |
| Monthly Payment in Year 6 with no change in rates | | *** | | | | |
| Monthly Payment in Year 6 with a 2% rise in rates | | | | | | |
| Minimum Monthly Payment | | | | | | |
| Your Gross Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $62,500.00 |
| Difference | | | | | | $0.00 |
| Maximum Monthly Payment in Year 6 with a 5% rise in rates | | | | | | $-62,500.00 |
| Your Gross Income | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Difference | | | | | | |
| ***Loan Balance Scenarios*** | | | | | | |
| How much will be owed after 5 years? | | | | | | |
| Has the loan balance been reduced after 5 years of payments? | Yes<br>The loan balance was reduced by | No<br>The loan balance was not reduced | Yes<br>The loan balance was reduced by | No<br>The loan balance was not reduced | No<br>The loan balance increased by | No<br>The loan balance:<br>by |

* **"Not offered" indicates the broker does not offer the comparison loan product.**
**The information provided for the products not offered was obtained from sources deemed reliable.** ☑ **Yes** ☐ **No**

** **This illustrates an interest rate and payments that are fixed for life of the loan.**

*** **This illustrates payments that are fixed after the first five years of the loan at a higher amount because they include both principal and interest.**

**** **This illustrates minimum monthly payments that are based on an interest rate that is in effect during the first month only. The payments required during the first year will not be sufficient to cover all of the interest that is due when the rate increases in the second month of the loan. Any unpaid interest amount will be added to the loan balance. Minimum payments for years 2-5 are based on the higher interest rate in effect at the time, subject to any contract limits on payment increases. Minimum payments will be recast (recalculated) after 5 years, or when the loan balance reaches a certain limit, to cover both principal and interest at the applicable rate.**

**IMPORTANT NOTE: Please use this chart to discuss possible loans with your broker or lender**

**If a mortgage loan broker licensed by the California Department of Real Estate is acting as your agent in connection with your home loan/mortgage, the agent owes you certain fiduciary duties, and California statutory law imposes other duties.**

XX. NOTICE TO BORROWER: THIS IS NOT A LOAN COMMITMENT. Do not sign this statement until you have read and understood all of the information in it. All parts of the form must be completed before you sign. Borrower hereby acknowledges the receipt of a copy of this statement.

**Open Door Lending** — *Name of Broker* — **01878271** *License #*

**Joseph Zacharia** — *Broker's Representative* — **01440743** *License #*

**24013 Ventura Blvd, STe 200 Calabasas CA 91302** — *Broker's Address*

[signature] *Signature of Broker* — 7/22/14 *Date*

OR

*Signature of Representative* — *Date*



[signature]

Borrower Gennady Moshkovich 7/22/14 Date

Borrower Date

Department of Real Estate license information telephone number: (916) 227-0931, or check license status at www.dre.ca.gov

# EXHIBIT "C"

EXHIBIT "C"

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD


**This page is part of your document - DO NOT DISCARD**

# 20111019288

**Pages: 0007**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**07/29/11 AT 08:00AM**

| | |
|---|---:|
| FEES: | 55.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 55.00 |

LEADSHEET

201107290110008

**00004462520**

003421128

**SEQ:**
**15**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t97

E248971

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD


RECORDING REQUESTED BY
TICOR TITLE COMPANY

07/29/2011
*20111019288*

**Recording Requested By**

**When Recorded Mail To**
SB Spring, LLC
312 W. 5th Street
Unit No.: Office
Los Angeles CA 90013

Title Order No. 27170

Space above this line for recorder's use

# SECOND DEED OF TRUST

RECORDER: INDEX FOR SPECIAL NOTICE

Loan No. **CPL-1154**

This Deed of Trust, made this **26th** day of **July 2011**, among the Trustor, **Gennady Moshkovich, an unmarried man** (herein "Borrower"), **SB Spring, LLC** (herein "Trustee"), and the Beneficiary, **SB Spring, LLC, a California Limited Liability Company as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

**GRANT IN TRUST**

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: **LOT 2 OF TRACT NO. 23782, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 621, PAGE 33 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**, which has the address of **911 Loma Vista Dr. Beverly Hills CA 90210** (herein "Property Address"); **APN: 4391-036-020**

**TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents** (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **07/26/2011**, in the principal sum of U.S. **$1,250,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note, and the principal of and/or interest on any Future Advances secured by the Deed of Trust.



15

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

3

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property, and such insurance is not specifically required by the Lender, then such insurance shall: (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

4

with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust . Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time with written notice to borrower, and without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **SB Spring, LLC, 312 W. 5th Street Unit No.: Office Los Angeles CA 90013** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.



RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD


6

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law.

**REQUEST FOR SPECIAL NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

In accordance with Section 2924b of the Civil Code, Request is hereby made by the undersigned Trustor that a copy of any default and a copy of any notice of sale under deed of trust recorded in Book ________, Page(s) ________, Instrument No.__________, Official Records of County Recorder of __________________________ County, California. The original Trustor ______________________________________________ and the original Trustee ______________________________________________ and the original Beneficiary ______________________________________________
Mail to:

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

[signature] 7/27/11

Borrower Gennady Moshkovich Date Borrower Date

State of California
County of LOS ANGELES

On 7/27/11 before me, SCOTT HACKER, NOTARY PUBLIC,
personally appeared GENNADY MOSHKOVICH

who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[signature]

Signature

SCOTT HACKER
Commission # 1921408
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2015

(Seal)

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.


7

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

______________________________ Date
Signature of Beneficiary (the "LENDER")

______________________________ Date
Signature of Beneficiary (the "LENDER")

When recorded, mail to

Att: ______________________

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **CPL-1154** Date: **07/26/2011** Agoura Hills, California

**911 Loma Vista Dr. Beverly Hills CA 90210**
Property Address
A.P.N.: 4391-036-020

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$1,250,000.00** (this amount will be called "principal"), plus interest, to the order of **SB Spring, LLC, a California Limited Liability Company as to an undivided 100.000% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2. INTEREST**

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/28/2011**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

**3. PAYMENTS**

My payments are ☒ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning September 1, 2011 | 12.50% | $13,020.83 |
| 1 | August 1, 2013 | 12.50% | $1,263,020.83 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **08/01/2013** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **SB Spring, LLC, 312 W. 5th Street**
**Unit No.: Office Los Angeles CA 90013**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$1,302.08**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period until such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000%)** the ("Default Rate"). No delay

or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or

b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the "Loan Documents").

c) A violation of any Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 1.5 year(s) as follows: If the loan pays off in the first six (6) months then lender is guaranteed 6 months payments less the interest already paid plus an additional six (6) months interest penalty. After 6 months the prepayment penalty is equal to six (6) months interest.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

[signature] 7/27/11

Borrower **Gennady Moshkovich** Date Borrower Date

## ASSIGNMENT OF NOTE SECURED BY A DEED OF TRUST

Date: ______________________________

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

______________________________ ______________________________

______________________________ ______________________________

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

# EXHIBIT "4"

EXHIBIT "4"

# EXHIBIT "A"

Case 2:20-bk-11623-BB Doc 70 Filed 04/17/20 Entered 04/17/20 12:59:29 Desc
Main Document Page 19 of 30

## EXHIBIT A"

## REQUEST FOR PRODUCTION OF DOCUMENTS

## DEFINITIONS

As used in the following document requests (the "Requests") and in each individual document request therein ("Request"), the following terms shall have the following meanings:

1. The term "BOBS," "YOU," and "YOUR" as used herein means BOBS, LLC, and any of its parents, subsidiaries, and affiliates, and any PERSON employed by, or working on behalf of, that company.

2. The term "COMMUNICATION" or "COMMUNICATIONS" as used herein means any transfer of information, oral or written, be it in the form of facts, ideas, inquiries, opinions, or otherwise, by any means, including but not limited to, letter, facsimile, email, memorandum, voicemail, text messages, instant messages, social media communications (Facebook, Twitter, LinkedIn, etc.), and/or other any other type or form of communication.

3. The term "DEBTOR" as used herein means Gennady Moshkovich.

4. The term "DOCUMENT" or "DOCUMENTS" as used herein means all written, printed, typed, recorded, or graphic matter of every type and description, however and by whomever prepared, produced, reproduced, disseminated or made in any form, including, but not limited to, letters, correspondence, emails, text messages, instant messages, social media communications (Facebook, Twitter, LinkedIn, etc.) telegrams, telexes, memoranda, records, minutes, contracts, agreements, intra- and interoffice communications, microfilm, bulletins, circulars, pamphlets, studies, reports, notices, diaries, calendar entries, summaries, books, messages, instructions, work assignments, notes, writeups, notebooks, drafts, data sheets, data compilations, computer data compilation and computer runs, worksheets, statistics, speeches, tapes, tape recordings, press releases, public statements and public announcements, public and governmental filings, financial statements, opinions and other writings and other magnetic, photographic, electronic and sound recordings.

5. The term "DOT" as used herein means any deed of trust securing any obligations under the LOAN AGREEMENTS.

6. The term "LENDERS" as used herein means BOBS and SPRING7.

7. The term "LOANS" as used herein means any loans or advances of funds made by LENDERS to DEBTOR pursuant to the LOAN AGREEMENTS.

8. The term "LOAN AGREEMENTS" as used herein means any agreements between either of the LENDERS, on one hand, and DEBTOR, on the other hand, whereby one or more of the LENDERS made LOANS to DEBTOR, including but not limited to, pursuant to a note for $6 million dated on or about 7/22/2014, a note for $1 million dated on or about 4/6/2016, a note for

$1 million dated on or about 8/11/2016, a note for $1.5 million dated on or about 4/10/2017, a loan modification and principal increase of $2 million dated on or about 6/27/2018, and a loan modification and principal increase of $1.5 million dated on or about 12/5/2017,, a loan modification dated on or about 9/4/2019.

9. The term "LOAN DOCUMENTS" as used herein means the LOAN AGREEMENTS and the DOT.

10. The term "PERSON" or "PERSONS" as used herein shall mean all natural persons and all entities, including without limitation, associations, companies, partnerships, joint ventures, corporations, limited liability companies, trusts, estates, agencies or governmental entities. Where an artificial (*e.g.*, a corporation, partnership, governmental entity or agency, etc.) person is involved, PERSON or PERSONS includes all natural persons acting or purporting to act on behalf of the artificial person.

11. The term "PROPERTY" as used herein means 917 Loma Vista Dr., Beverly Hills, California 90210 (aka 911 Loma Vista Dr., Beverly Hills, California 90210).

12. The term "RELATING TO" as used herein means referring to, alluding to, responding to, pertaining to, connected with, commenting on, including, containing, regarding, discussing, showing, illustrating, constituting, consisting of, describing, mentioning, respecting, analyzing, evidencing, concerning, memorializing, supporting, negating, detracting from, indicating, corroborating, reviewing any aspect of, leading up to, or having any impact, bearing, or relation to in any way.

13. The term "SPRING7" as used herein means Spring7 Loft, LLC, and any of its parents, subsidiaries, and affiliates, and any PERSON employed by, or working on behalf of, that company.

14. Whenever appropriate, the singular form of a word shall be interpreted in the plural, or vice versa; verb tenses shall be interpreted to include past, present, and future tenses, and the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, so as to make the Request inclusive rather than exclusive.

15. Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to their ordinary usage and meaning.

## **DOCUMENT REQUESTS**

**REQUEST NO. 1**

All LOAN DOCUMENTS.

**REQUEST NO. 2**

All DOCUMENTS RELATING TO the LOANS, the LOAN DOCUMENTS, the PROPERTY, and the DEBTOR.

**REQUEST NO. 3**

All COMMUNICATIONS RELATING TO the LOANS, the LOAN DOCUMENTS, the PROPERTY, and the DEBTOR.

**REQUEST NO. 4**

All COMMUNICATIONS between YOU and DEBTOR.

**REQUEST NO. 5**

All COMMUNICATIONS between YOU and LOFT7.

**REQUEST NO. 6**

All DOCUMENTS RELATING TO the funding of any of the LOANS, including, but not limited, bank statements and wire transfers showing the transfer of funds to DEBTOR.

**REQUEST NO. 7**

All DOCUMENTS RELATING TO any payments made on any obligations arising under the LOAN DOCUMENTS.

**REQUEST NO. 8**

All DOCUMENTS RELATING TO any transfer and/or assignment of any of the LOAN DOCUMENTS from LOFT7 to BOBS.

# EXHIBIT "5"

EXHIBIT "5"

DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234, Facsimile: (310) 229-1244
Email: dbg@lnbyb.com, tma@lnbyb.com

Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

GENNADY MOSHKOVICH,

Debtor and Debtor in Possession.

Case No.: 2:20-bk-11547-BB

Chapter 11 Case

**DECLARATION OF GENNADY MOSHKOVICH IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS:**
**(I) AUTHORIZING DEBTOR TO OBTAIN SECURED POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,**
**(II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE,**
**(III) GRANTING LIENS,**
**(IV) SCHEDULING A FINAL HEARING, AND**
**(V) GRANTING RELATED RELIEF**

**Hearing:**
Date: April 2, 2020
Time: 10:00 a.m.
Place: Courtroom 1539
255 E. Temple Street
Los Angeles, CA 90012

I, GENNADY MOSHKOVICH, hereby declare as follows:

1. I am over 18 years of age. Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am the debtor and debtor in possession herein.

3. Unless otherwise stated, all capitalized terms herein have the same meaning as in the Motion.

4. On February 12, 2020 (the "Petition Date"), I commenced my bankruptcy case by filing a voluntary petition under Chapter 11. I am operating my estate and managing my financial affairs as a debtor in possession.

**A. Background**

5. I own my real property located at 911 (aka 917) Loma Vista Dr., Beverly Hills, CA 90210 (the "Property"). The Property is situated on an over-2-acre lot and includes dwellings with approximately 11,000 square feet of space, including the main residence, which has 5 bedrooms and 9 bathrooms, and a guest residence, which has 3 bedrooms and 2 bathrooms. The Property also has a pool, sauna, and basketball court.

6. This is one of the most unique properties in the Trousdale Estates. Trousdale Estates permits only single-story residences with restriction on roof height. The Property is grandfathered in and, therefore, has roof pitches up to 17 feet, which cannot be duplicated under current restrictions. The Property has a substantial flat pad, which would allow expansion for a residence of over 30,000 square feet. Finally, and most remarkably, the Property is one of the most-private estates in Trousdale Estates located just above and behind the world-famous Greystone Mansion with incredible views and unique landscaping making this a one-of-a-kind private resort.

7. Over the years, I have extensively remodeled and added to the Property, both with respect to the structure as well as the grounds. In essence, we retained a couple walls and built new and grander structures. I have invested substantial sums into the Property to create the secluded luxury resort that is there today.

8. I have engaged in numerous business ventures and activities over my life, which were extremely successful, including allowing me to acquire and improve the Property. For the last approximately ten (10) years, however, I have devoted all my time and resources to developing a unique and giant amusement park outside of Moscow, Russia. It was a $4 billion project referred to as the Magical World of Russia. In connection with its development, I employed world's top professionals, including architects, engineers, designers and other consultants to work on the project. I became the managing director of the consortium of 16 of the most specialized theme park design and development firms. The funding for such efforts, including my personal living expenses, came from, among other things, the equity I had in the Property.

9. The development, such as the one described above, requires personal face time and personal meetings. I would travel to Russia often for such meetings based on my expertise in such design and technological development of such project and my relationship with other partners. I am the principal person that engaged the various professionals. In other words, I am the quarterback for this project. Unfortunately, approximately two (2) years ago, I developed a medical condition where my spine structure is unstable and sever neuropathy, where I lose sensation in my legs. My mobility has been limited and impeded my ability to travel to Russia. Although approval was obtained and we were able to commence breaking ground, my physical attendance was required and I could not travel. I have continued to seek assistance from doctors and other practitioners and I am getting better slowly. I anticipate that I should be able to travel in the near future to proceed with the development of the project, including obtaining personal funding for selling off portions of the project.

**B. BOBS, LLC**

10. 7th Street Lofts, LLC, predecessor to, and affiliate of, BOBS, LLC, the asserted second lienholder, provided me with financing, at least portions of which were secured by the Property, with full knowledge that I had limited sources of income at the time. After initial financing, the lender provided me with millions in additional financing, at least portions of which were secured by the Property, with disclosure and knowledge that I no longer had source of income at this time. Over time, we became friends, with Barry Shy, principal of BOBS, LLC, vising my house and vice versa. In fact, Mr. Shy travelled with me to Russia and advised me that he would fund, in

part, the development of the Magical World of Russia. In fact, at a meeting with high ranking government officials in Russia, Mr. Shy committed to provide bridge financing until a scheduled buyout from an investor occurs. Based on the foregoing, in addition to providing BOBS, LLC with a deed of trust on my Property to secure at least portions of the loans it provided, I also transferred to the principals of BOBS, LLC an equity interest in a Russian company that was developing Magical World of Russia. In other words, in addition to borrower and lender, we were also partners in the Russian operations.

11. From time to time, as I considered alternatives for my financing needs, and based on my view of the real estate market, I would place the Property for sale. My intention was to place it in public view and if any interest was expressed, I would consider selling it. Other than listing the Property, there were minimal marketing efforts. I did obtain many expressions of interest. However, based on my relationship with BOBS, LLC and its willingness not only to fund the Property, but also the amusement park in Russia, I was not (and didn't feel I had to be) aggressive in pursuing a sale of the Property.

12. In the latter half of 2019, BOBS, LLC was pressuring me with not only extension of financing, which included a $500,000 extension fee, but also the principal's interest in taking over the Property from me. In September 2019, days after executing a forbearance agreement, BOBS, LLC recorded a Notice of Default and proceeded towards foreclosure. BOBS, LLC advised me that I should transfer the Property to BOBS, LLC and, if I can find funds in the future, they may sell the Property back to me.

**C. Marketing Efforts**

13. The foregoing was not acceptable to me. As a result, I entered into a Listing Agreement with Compass to sell the Property. I met with Tomer Fridman, who is a top broker with respect to luxury estates in Los Angeles. Mr. Fridman viewed the Property and conducted his analysis, concluding that the Property should be listed at $36 million. I agreed, based on advice of an expert, and we proceeded. My goal was to sell the Property and pay my debts so that I can live in peace.

14. Numerous expressions of interest were received. I was advised and understand that, unlike less expensive properties, luxury estates, such as the Property, generally require more time to locate a buyer and for an interested party to consider and arrange for financing or, in many cases, transfer of funds from oversees. Although such scenarios arose in our case, a closing did not occur.

15. Shortly prior to the commencement of this bankruptcy case, I advised Mr. Fridman that I wanted to sell the Property as quickly as possible so that I could satisfy my debts and move on with life. In order to effectuate this strategy, we (a) reduced the listing price to $29,950,000; and (b) signed a co-listing agreement to include Compass and Hilton & Hyland. I believe that the combination of both firms will ensure maximum exposure of the Property to the highest level of clientele.

16. I understand that the brokers had an extremely successful Brokers Open on February 25, 2020 with over 50 agents on the Property and showings that followed which are detailed below. Several buyers that have returned to the Property again with family, designers and other consultants to discuss the possibilities in connection with the purchase of the Property.

17. Unfortunately, with the current pandemic and the “safer at home” order, the entire marketplace came to a halt. Notwithstanding the foregoing, there were minimal showings which occurred briefly and only from the exterior of the Property.

**D. Post-Petition Financing**

18. Based on my current financial situation, I needed funds to live, including maintaining the Property. For example, the over 2-acre Property has over 2,000 trees that require constant landscaping and watering, which are expensive. The Property requires utilities and insurance. Without access to funds, I was not able to pay those expenses.

19. Both prior to the bankruptcy filing and after, I contacted numerous lenders and private parties looking for financing. I was unsuccessful in doing so. Fortunately, I was able secure a commitment for funding in the principal amount of $200,000, which was reflected in the Motion. At the March 5, 2020 hearing on the Motion, I understand that the Court approved $30,000 of the

foregoing amount in financing with the balance to be considered at the April 2, 2020 hearing. In addition, the Court asked for a supplement discussing use of proceeds and marketing efforts.

20. Filed concurrently herewith is the Declaration of Tomer Fridman, discussing the marketing efforts. Of course, the March 5, 2020 hearing took place just prior to the "safer at home" directive, which changed (rather, halted) the landscape for me and everyone else.

21. With respect to the financing, attached hereto as **Exhibit "B"** is a true and correct copy of a spreadsheet which compares amounts budgeted vs. amounts actually utilized. Based on the requirement to file a supplement by March 26, 2020, I was not able to provide a full month of data for March, but have included as much as possible. As the Court can see, the vast majority of expenses relate to preserve and upkeep the Property. I purchase many more cleaning products to maintain the house germ-free. My personal expenses are relatively minimal although I require distilled water for my medical situation and it has been difficult to obtain. As previously stated, the financing sought is to maintain and make the Property presentable for third parties and not some sort of a windfall for me.

22. I have also amended the budget as discussed at the last hearing, including utilizing categories to match the Schedules filed with the Court and omit items disallowed. Based on the foregoing, attached hereto as **Exhibit "C"** is a true and correct budget from April 2020 through November 2020. As evidenced from the attached, out of the monthly budget of $16,900 - $24,100, only approximately $3,500 per month is allocated for my personal expenses. Based on available remaining funds of $170,000 from the proposed financing, there will be sufficient funds to meet the necessary obligations.

23. In addition, I believe that it is critical to point out that the vast majority of the funds are to be used to preserve and maintain the Property. This will benefit the secured creditors, including BOBS, LLC. Importantly, however, the proposed financing will be junior in priority to all secured creditors and, therefore, does not prejudice of harm them in any way. My goal is to avoid needless litigation and fighting and focus on maximizing the value of this Property for the benefit of all creditors.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 26th day of March 2020, at Los Angeles, California.

*/s/ Gennady Moshkovich*
GENNADY MOSHKOVICH

| **Gennady Moshkovich** vs. **BOBS LLC et al** | CHAPTER: **11**<br>CASE NUMBER: **2:20-ap-01623-BB** |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**5950 Canoga Avenue Suite 400 Woodland Hills, California 91367**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION TO DISMISS COMPLAINT UNDER FEDERAL RULE OF PROCEDURE 12(b)(1) and 12(b)(6) WITH MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 15, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Todd M. Arnold, Esq (Plaintiff's Counsel):** tma@lnbyb.com;
**David B. Golubchik, Esq (Plaintiff's Counsel)**: dbg@lnbyb.com; stephanie@lnbyb.com
**United States Trustee (Los Angeles)**: ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **October 15, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**(United States Bankruptcy Judge)**
Honorable Sheri Bluebond
255 E. Temple Street, Suite 1534
Los Angeles, California 90012

**(Debtor's Counsel)**
David B. Golubchik, Esq
Levene, Neale, Bender, Yoo & Brill L.L.P
10250 Constellation Blvd Suite 1700
Los Angeles, California 90067

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 15, 2020 | **David P. Jacob** | /s/David P. Jacob |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |