DAVID B. GOLUBCHIK (State Bar No. 185520)
TODD M. ARNOLD (State Bar No. 221868)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: dbg@lnbyb.com, tma@lnbyb.com

Attorneys for Plaintiff Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>GENNADY MOSHKOVICH,<br><br>Debtor and Debtor in Possession. | Case No.: 2:20-bk-11547-BB<br><br>Chapter 11 Case |
| GENNADY MOSHKOVICH,<br><br>Plaintiff,<br><br>v.<br><br>BOBS, LLC, a California limited liability company, ROMMY SHY, an individual, and BARRY SHY, an individual,<br><br>Defendants. | Adversary Case No.: 2:20-ap-01623-BB<br><br>**FIRST AMENDED COMPLAINT:**<br>**(1) FOR DECLARATORY RELIEF REGARDING ENTIRETY OF ALLEGED LIEN AND SECURED CLAIM;**<br>**(2) FOR DECLARATORY RELIEF REGARDING A PORTION OF ALLEGED LIEN AND SECURED CLAIM;**<br>**(3) FOR DECLARATORY RELIEF REGARDING APPLICABLE INTEREST RATE;**<br>**(4) FOR DECLARATORY RELIEF REGARDING CLAIM REDUCTION FOR PAYMENTS MADE;**<br>**(5) FOR USURY;**<br>**(6) TO AVOID FRAUDULENT TRANSFER;**<br>**(7) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ.;**<br>**(8) OBJECTING TO CLAIM; AND**<br>**(9) INJUNCTIVE RELIEF** |

Gennady Moshkovich, the Chapter 11 debtor and debtor in possession in the above-captioned bankruptcy case and the plaintiff herein (the "Plaintiff" or "Mr. Moshkovich") avers and complains, by way of this First Amended Complaint (the "Complaint"), subject to amendment, as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding in the Chapter 11 bankruptcy case of *In re Gennady Moshkovich*, Case No. 2:20-bk-11547-BB, pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court"), is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), (K), and (O).

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and 11 U.S.C. §§ 105, 502, and 548, and Local Rules and Orders of the United States District Court for the Central District of California governing the reference and conduct of proceedings arising under or related to cases under Title 11 of the United States Code, including General Order No. 13-05, dated July 1, 2013.

3. Venue is proper in this Court under 28 U.S.C. § 1409(a) as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this district.

4. Plaintiff consents to the entry of final judgments and orders by this Court in this adversary proceeding.

## PARTIES

5. Mr. Moshkovich is a 76 year old individual residing in Los Angeles County, California.

6. BOBS, LLC (the "BOBS") is a Nevada limited liability company registered to do business and doing business in California and is subject to the jurisdiction of this Court.

7. Rommy Shy ("R. Shy") is an owner and the managing member of BOBS, resides in the County of Los Angeles, and is subject to the jurisdiction of this Court.

8. Barry Shy ("B. Shy") is R. Shy's father and, at all times relevant herein, acted as an agent of BOBS. B. Shy resides in the County of Los Angeles and is subject to the jurisdiction of this Court.

9. On information and belief, B. Shy has a financial interest in BOBS and/or some of its loans.

10. On information and belief, BOBS is the alter ego of R. Shy and/or B. Shy, because, (a) at all times relevant, there was a unity if interest between BOBS and R. Shy and/or B. Shy, because, *inter alia*, (i) R. Shy was an owner and managing member of BOBS, (ii) B. shy had a financial interest in BOBS and/or some of its loans, (iii) R. Shy and B. Shy had exclusive control over BOBS, (iv) BOBS failed to maintain adequate corporate records, (v) BOBS was not adequately capitalized, (vi) BOBS sometimes paid the personal expenses of R. Shy and/or B. Shy, and (vii) R. Shy and/or B. Shy treated BOBS assets as their own, and (b) the failure to disregard BOBS as a corporate entity and to hold R. Shy and/or B. Shy personally liable for any claims against BOBS, including for any monetary damages awarded to Mr. Moshkovich against BOBS, would cause an inequitable result.

## GENERAL ALLEGATIONS

11. At all times relevant herein, the Debtor owned his personal residence located in the County of Los Angeles at 911 (aka 917) Loma Vista Dr., Beverly Hills, CA 90210 (the "Real Property").

**2011 LOANS, 7/26/11 DOT, 7/22/14 NOTE AND 7/22/14 DOT**

12. At all times relevant herein, Spring7 Loft, LLC ("Spring7") was an affiliate of BOBS.

13. In 2011, Spring7, or its affiliates and/or predecessors in interest, made certain loans to Mr. Moshkovich (the "2011 Loans") that were secured by a second position Deed of Trust on the Real Property (the "7/26/11 DOT").

14. On or about July 22, 2014, Spring7 made an additional loan to Mr. Moshkovich (the "7/22/14 Loan").

15. The obligations for the 2011 Loans and the 7/22/14 Loan, which obligations totaled $6 million, were rolled up into a Note Secured by a Deed of Trust dated July 22, 2014 (the "7/22/14 Note").

16. A true and correct copy of the 7/22/14 Note is attached hereto as **Exhibit "1."**

17. The obligations under the 7/22/14 Note were secured by a Deed of Trust dated July 22, 2014 (the "7/22/14 DOT") and recorded with the Los Angeles County Recorder's Office pursuant to which Spring7 obtained a second position lien on the Real Property.

18. A true and correct copy of the 7/22/14 DOT is attached hereto as **Exhibit "2."**

19. As a result of the 7/22/14 Note transaction, the 7/26/11 DOT was discharged and is no longer in title.

20. In addition to securing the obligations under the 7/22/14 Note, the 7/22/14 DOT also provided that it would secure the "repayment of any future advances, with interest thereon, made to the Borrower [Mr. Moshkovich] by Lender [Spring7] pursuant to paragraph 19 hereof (herein 'Future Advances')." In turn, paragraph 19 of the 7/22/14 DOT, titled "Future Advances" states that, "upon request of Borrower [Mr. Moshkovich], Lender [Spring7], at Lender's [Spring7's] option prior to full conveyance of the Property by Trustee to Borrower [Mr. Moshkovich], may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby."

**4/6/16 NOTE**

21. On or about April 6, 2016, Spring7 made a $1 million loan to Mr. Moshkovich pursuant a Note Secured by a Deed of Trust dated April 6, 2016 (the "4/6/16 Note").

22. A true and correct copy of the 4/6/16 Note is attached hereto as **Exhibit "3."**

23. The 4/6/16 Note provided that it was secured by a Deed of Trust "dated the same date of this Note [*i.e.,* April 16, 2016]" (the "4/6/16 DOT"). The 4/6/16 Note does not state that it is secured by the 7/22/14 DOT.

24. Mr. Moshkovich is informed and believes that there is no 4/6/16 DOT, that a 4/6/16 DOT was never recorded against the Real Property, and that there is no 4/6/16 DOT currently recorded against the Real Property.

**8/11/16 NOTE**

25. On or about August 11, 2016, BOBS made a $1 million loan to Mr. Moshkovich pursuant a Note Secured by a Deed of Trust dated August 11, 2016 (the "8/11/16 Note").

26. A true and correct copy of the 8/11/16 Note is attached hereto as **Exhibit "4."**

27. The 8/11/16 Note provided for non-default annual interest of at the rate of 12%.

28. The 8/11/16 Note provided that it was secured by a Deed of Trust "dated the same date of this Note [*i.e.,* August 11, 2016]" (the "8/11/16 DOT"). The 8/11/16 Note does not state that it is secured by the 7/22/14 DOT.

29. Mr. Moshkovich is informed and believes that there is no 8/11/16 DOT, that a 8/11/16 DOT was never recorded against the Real Property, and that there is no 8/11/16 DOT currently recorded against the Real Property.

**11/16/16 ASSIGNMENT OF THE 7/22/14 NOTE AND 7/22/14 DOT FROM SPRING 7 TO BOBS**

30. On November 16, 2016, pursuant to an Assignment of Loan Documents dated November 16, 2016 (the "11/16/16 Assignment"), Spring 7 purportedly assigned the 7/22/14 Note and 7/22/14 DOT to BOBS.

31. A true and correct copy of the 11/16/16 Assignment is attached hereto as **Exhibit "5."**

32. The 11/16/16 Assignment was purportedly notarized by R. Shy, a party in interest in the transaction, on November 16, 2016.

33. On October 29, 2019, BOBS recorded the 11/16/16 Assignment with the Los Angeles County Recorder's Office.

34. The 11/16/16 Assignment was actually not executed or effective until on or about October 29, 2019 when it was recorded with the with Los Angeles County Recorder's Office.

**4/10/17 NOTE**

35. On or about April 10, 2017, BOBS made a $1.5 million loan to Mr. Moshkovich pursuant a Note Secured by a Deed of Trust dated April 10, 2017 (the "4/10/17 Note").

36. A true and correct copy of the 4/10/17 Note is attached hereto as **Exhibit "6."**

37. The 8/11/16 Note provided for non-default annual interest of at the rate of 12.5%.

38. The 4/10/17 Note provided that it was secured by a Deed of Trust "dated the same date of this Note [*i.e.,* April 10, 2017]" (the "4/10/17 DOT"). The 4/10/17 Note does not state that it is secured by the 7/22/14 DOT.

39. Mr. Moshkovich is informed and believes that there is no 4/10/17 DOT, that a 4/10/17 DOT was never recorded against the Real Property, and that there is no 4/10/17 DOT currently recorded against the Real Property.

**12/5/17 NOTE AND LOAN MODIFICATION AGREEMENT**

40. On or about December 5, 2017, BOBS made a $1.5 million loan to Mr. Moshkovich pursuant a Note Secured by a Deed of Trust dated December 5, 2017 (the "12/5/17 Note"). The 12/5/17 Note is in the amount of $11 million because, in addition to the new loan in the amount of $1.5 million, the 12/5/17 Note purportedly rolled up the obligations under the 7/22/14 Note, the 4/6/16 Note, the 8/11/16 Note, and the 4/10/17 Note and created a single new obligation under the 12/5/17 Note.

41. A true and correct copy of the 12/5/17 Note is attached hereto as **Exhibit "7."**

42. The 12/5/17 Note provided, among other things, (a) that the obligation under the 12/5/17 Note would accrue annual interest at the rate of 12.25%, (b) that if Mr. Moshkovich did not make the required monthly payment by the fifth day of the month, Mr. Moshkovich would be charged a late fee in the amount of 10% of the overdue payment, (d) in the event of a payment or other specified event of default under the 12/5/17 Note, that the obligation under the 12/5/17 Note would

accrue annual interest at the default rate of 15.00%, and (e) that it was secured by "a 2nd (SECOND) Position Deed of Trust and other security agreements," none of which are identified in the 12/5/17 Note. The 12/5/17 Note does not state that it is secured by the 7/22/14 DOT.

43. In addition to the 12/5/17 Note, on December 5, 2017, Mr. Moshkovich and BOBS also executed a Loan Modification Agreement (the "12/5/17 Loan Modification Agreement").

44. A true and correct copy of the 12/5/17 Loan Modification Agreement is attached hereto as **Exhibit "8."**

45. The 12/5/17 Loan Modification Agreement, among other things, (a) memorialized that the 12/5/17 Note rolled up the obligations under the 7/22/14 Note, the 4/6/16 Note, the 8/11/16 Note, the 4/10/17 Note, and the 12/5/17 Note into a new single obligation under the 12/5/17 Note, (b) provides that interest on the obligation under the 12/5/17 Note would "accrue at the rate of 12.25% from 12/5/2017 until maturity on 12/5/19, at which time all sums shall become due and payable" and that the maturity date for the obligation under the 12/5/17 Note was December 5, 2019, "at which time all amounts of unpaid principal and interest become due and payable," and (d) provides that the obligations under the rolled up 12/5/17 Note were "secured by a Second Deed of Trust on 917 Loma Vista Dr., Beverly Hills, CA 90120 (the 'Deed of Trust') dated **7/26/2011** [*i.e.*, the 7/26/11 DOT]) (emphasis in original).

46. On information and belief, there is no 7/26/11 DOT currently recorded against the Real Property.

47. Despite both the 12/5/17 Note and 12/5/17 Loan Modification Agreement providing for annual interest at the rate of 12.25%, which would amount to a monthly payment of $112,291.66, the 12/5/17 Note provides for monthly payments in the amount of $114,583.33, which is based on annual interest at the rate of 12.50% (the "12/5/17 Disguised Interest Increase").

48. Mr. Moshkovich made payments in the amount of $114,583.33 to BOBS between January 2018 and June 2018 based on the 12/5/17 Disguised Interest Increase and, therefore, overpaid $13,750.02 in interest (the "12/5/17 Note Interest Overpayments").

**<u>6/27/18 LOAN MODIFICATION AGREEMENT</u>**

49. On or about June 27, 2018, BOBS made a $2 million loan to Mr. Moshkovich (the "<u>6/27/18 Loan</u>"). Unlike the prior loans, there is no promissory note for the 6/27/18 Loan.

50. On or about June 27, 2018, Mr. Moshkovich and BOBS executed a Loan Modification Agreement (the "<u>6/27/18 Loan Modification Agreement</u>").

51. A true and correct copy of the 6/27/18 Loan Modification Agreement is attached hereto as **Exhibit "9."**

52. The 6/27/18 Loan Modification Agreement, among other things, (a) recites the obligations under the 7/22/14 Note, the 4/6/16 Note, the 8/11/16 Note, the 4/10/17 Note, and the 12/5/17 Note were rolled up into the 12/5/17 Note, (b) provides that the obligation under the 12/5/17 Note accrue annual interest at the rate of 12.25%, (c) provides for an amendment to the 12/5/17 Note whereby BOBS would advance an additional $2 million to Mr. Moshkocich, for a total obligation of $13 million, (d) provides that interest on the $13 million obligation under the 12/5/17 Note, as modified by the 6/27/18 Loan Modification Agreement, would "accrue at the rate of 12.25% until maturity on 12/5/2020, at which time all sums (including but not limited to principal, interest, default interest, late fees and any other ancillary fees shall become due and payable)," (e) provides that the foregoing obligations under the rolled up 12/5/17 Note, as modified by the 6/27/18 Loan Modification Agreement, were "secured by a Second Deed of Trust on 917 Loma Vista Dr., Beverly Hills, CA 90120 (the 'Deed of Trust') dated **7/26/2011** [*i.e.*, the 7/26/11 DOT] (emphasis in original), and (f) includes an integration clause (the "<u>6/27/18 Integration Clause</u>") providing as follows:

> This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

53. On information and belief, there is no 7/26/11 DOT currently recorded against the Real Property.

**9/4/19 LOAN MODIFICATION AGREEMENT**

54. On or about September 4, 2019, Mr. Moshkovich and BOBS executed a Loan Modification Agreement (the "9/4/19 Loan Modification Agreement").

55. A true and correct copy of the 9/4/19 Loan Modification Agreement is attached hereto as **Exhibit "10."**

56. The 9/4/19 Loan Modification Agreement, among other things, (a) recites the total obligation of $13 million under the 7/22/14 Note, the 4/6/16 Note, the 8/11/16 Note, the 4/10/17 Note, the 12/5/17 Note, and 12/5/17 Loan Modification Agreement, (b) states that Mr. Moshkovich was delinquent on six monthly interest payments of $132,708 for the months of April 2019 through and including September 2019 for a total of $796,248 in alleged delinquent payments (the "Alleged 2019 Delinquent Payments"), (c) provides that, if for Mr. Moshkovich paid $398,124 of the Alleged 2019 Delinquent Payments by October 15, 2019, then BOBS would refrain from filing a Notice of Default (the "NOD") until February 4, 2020, but that, in the event of Mr. Moshkovich's failure to pay the foregoing amount, BOBS could record a NOD without further delay, (d) provides that, in exchange for the purported consideration provided under the 9/4/19 Loan Modification Agreement, Mr. Moshkovich would pay BOBS a $500,000 exit fee to BOBS (the "Exit Fee"), (e) provides that "the capitalized terms used herein [this 9/4/19 Loan Modification Agreement] shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer and relate to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein. … Except as modified herein the Note, Deed of Trust, and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement;" however, the term "Loan Documents" is not defined, (f) provides that the obligations under the rolled up 12/5/17 Note, as modified by the 6/27/18 Loan Modification Agreement, were "secured by a Second Deed of Trust on 917 Loma Vista Dr., Beverly

Hills, CA 90120 (the 'Deed of Trust') dated **7/26/2011** [*i.e.*, the 7/26/11 DOT] (emphasis in original), (g) provides that the 9/4/19 Loan Modification Agreement is governed by California law, and (f) includes an integration clause (the "9/4/19 Integration Clause") providing as follows:

> This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

57. On information and belief, there is no 7/26/11 DOT currently recorded against the Real Property.

**B. SHY AS BOBS' AGENT IN CONNECTION WITH LOANS AND RELATED REPRESENTATIONS**

58. B. Shy acted as BOBS' agent in respect to all of the loans to Mr. Moshkovich from BOBS and arranged for all such loans.

59. Mr. Moshkovich has had debilitating health issues since for many years. Specifically, Mr. Moshkovich suffers from severe spinal stenosis with two collapsed disks, neuropathy, permanent damage of his peripheral nerve system, and deep vein thrombosis. Those health issues often result in Mr. Moshkovich losing sensation in his legs.

60. B. Shy was aware of Mr. Moshkovich's health problems, including that Mr. Moshkovich suffered from spine issues and severe neuropathy, where Mr. Moshkovich would lose sensation in his legs, as well other issues inhibiting his ability to generate income from employment or business ventures.

61. B. Shy made numerous representations to Mr. Moshkovich that BOBS would loan Mr. Moshkovich up to a total principal amount of $20 million.

**MR. MOSHKOVICH'S PAYMENTS TO BOBS**

62. Between October 2016 and July 2019, Mr. Moshkovich paid no less than $3,171,600 to BOBS as interest only payments on his various obligations to BOBS under the notes and loan modification agreements referenced herein (the "Interest Payments").

63. All of the Interest payments were for interest only at a rate equal to 12% or, most often above 12%.

**RECORDING OF NOD AND NOTICE OF TRUSTEE'S SALE**

64. On October 16, 2019, BOBS recorded an NOD.

65. A true and correct copy of the NOD is attached hereto as **Exhibit "11."**

66. The NOD provides that, as of October 15, 2019, the Mr. Moshkovich purportedly owed BOBS $14,572,748.10.

67. Despite that the 12/5/17 Note, 12/5/17 Loan Modification Agreement, 6/27/18 Loan Modification Agreement, and 9/4/19 Loan Modification Agreement all provide that Mr. Moshkovich's obligations to BOBS are secured by the 7/26/11 DOT, the NOD purports to give notice of a default and institute a non-judicial foreclosure pursuant to the 7/22/14 DOT.

68. On January 14, 2020, a Notice of Trustee's Sale (the "Notice of Sale") of the Real Property was recorded.

69. A true and correct copy of the Notice of Sale is attached hereto as **Exhibit "12."**

70. Despite that the 12/5/17 Note, 12/5/17 Loan Modification Agreement, 6/27/18 Loan Modification Agreement, and 9/4/19 Loan Modification Agreement all provide that Mr. Moshkovich's obligations to BOBS are secured by the 7/26/11 DOT, the Notice of Sale purports to give notice of a trustee's sale of the Real Property on February 13, 2020 pursuant to the 7/22/14 DOT.

**THE FILING OF THE DEBTOR'S BANKRUPTCY CASE**

71. In order to protect the equity in his Real Property and under the threat of a foreclosure sale thereof pursuant to the NOD and Notice of Sale, on February 12, 2020 (the "Petition Date"), Mr. Moshkovich commenced his bankruptcy case by filing a voluntary petition under Chapter

11 of the Bankruptcy Code. The Plaintiff is operating his estate and managing his financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**BOBS PROOF OF CLAIM**

72. On June 7, 2020, BOBS filed its Proof of Claim 7-1 (the "POC") asserting a secured claim in the amount of $16,624,271.11 (the "Claim") as of the date the POC was filed..

73. A true and correct copy of BOBS POC is attached hereto as **Exhibit "13."**

74. The accounting for the Claim attached to the POC is as follows (the "Accounting"):

| Date | Description | Transaction Amount | Interest Balance | Principal | Fee Balance | Principal + Interest + Fees |
|---|---|---|---|---|---|---|
| 4/1/2019 | Payment | $186,875.00 | $186,875.00 | $13,000,000.00 | | $13,186,875.00 |
| 4/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $13,270.00 | $13,200,145.00 |
| 5/1/2019 | Payment | $186,875.00 | $373,750.00 | $13,000,000.00 | | $13,387,020.00 |
| 5/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $26,540.00 | $13,400,290.00 |
| 6/1/2019 | Payment | $186,875.00 | $560,625.00 | $13,000,000.00 | | $13,587,165.00 |
| 6/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $39,810.00 | $13,600,435.00 |
| 7/1/2019 | Payment | $186,875.00 | $747,500.00 | $13,000,000.00 | | $13,787,310.00 |
| 7/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $53,080.00 | $13,800,580.00 |
| 8/1/2019 | Payment | $186,875.00 | $934,375.00 | $13,000,000.00 | | $13,987,455.00 |
| 8/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $66,350.00 | $14,000,725.00 |
| 9/1/2019 | Payment | $186,875.00 | $1,121,250.00 | $13,000,000.00 | | $14,187,600.00 |
| 9/4/2019 | Loan Exit Fee | $500,000.00 | | $13,000,000.00 | $566,350.00 | $14,687,600.00 |
| 9/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $579,620.00 | $14,700,870.00 |
| 9/18/2019 | Addition Money Advanced | $60,000.00 | | $13,060,000.00 | | $14,760,870.00 |
| 10/1/2019 | Payment | $186,875.00 | $1,308,125.00 | $13,060,000.00 | | $14,947,745.00 |
| 10/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $592,890.00 | $14,961,015.00 |
| 10/17/2019 | Trustee Fees | $25,761.95 | | | $618,651.95 | $14,986,776.95 |
| 11/1/2019 | Payment | $186,875.00 | $1,495,000.00 | $13,060,000.00 | | $15,173,651.95 |
| 11/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $631,921.95 | $15,186,921.95 |
| 12/1/2019 | Payment | $186,875.00 | $1,681,875.00 | $13,060,000.00 | | $15,373,796.95 |
| 12/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $645,191.95 | $15,387,066.95 |
| 1/1/2020 | Payment | $186,875.00 | $1,868,750.00 | $13,060,000.00 | | $15,573,941.95 |
| 1/10/2020 | Late Fee | $13,270.00 | | $13,060,000.00 | $658,461.95 | $15,587,211.95 |
| 2/1/2020 | Payment | $186,875.00 | $2,055,625.00 | $13,060,000.00 | | $15,774,086.95 |
| 2/10/2020 | Late Fee | $13,270.00 | | $13,060,000.00 | $671,731.95 | $15,787,356.95 |
| 2/11/2020 | Petition Date | | | | | $15,787,356.95 |
| 3/1/2020 | Payment | $186,875.00 | | | | $15,974,231.95 |
| 3/5/2020 | Attorneys Fees | $6,000.00 | | | $677,731.95 | $15,980,231.95 |
| 3/10/2020 | Late Fee | $13,270.00 | | | $691,001.95 | $15,993,501.95 |
| 4/1/2020 | Payment | $186,875.00 | | | | $16,180,376.95 |
| 4/10/2020 | Late Fee | $13,270.00 | | | $704,271.95 | $16,193,646.95 |
| 5/1/2020 | Payment | $186,875.00 | | | | $16,380,521.95 |
| 5/10/2020 | Late Fee | $13,270.00 | | | $717,541.95 | $16,393,791.95 |
| 6/1/2020 | Payment | $186,875.00 | | | | $16,580,666.95 |
| 6/7/2020 | Per Diem | $43,604.16 | | | | $16,624,271.11 |

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief Pursuant to 28 U.S.C. § 2201 –**

**Re the Entirety of BOBS' Alleged Lien and Secured Claim)**

**(Against BOBS)**

75. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

76. BOBS' asserts that its entire Claim is secured by the Real Property pursuant to the 7/22/14 DOT.

77. The Debtor asserts that no portion of BOBS' Claim is secured by the Real Property, because (a) the 12/5/17 Loan Modification, the 6/27/18 Loan Modification Agreement, and the 9/4/19 Loan Modification Agreement each provide that the obligations thereunder are secured by the 7/26/11 DOT, yet there is no 7/26/11 DOT currently recorded against the Real Property and/or (b) the 7/22/14 DOT was not assigned by Spring7 to BOBS until October 29, 2019, which is after all of the loans made to Mr. Moshkovich by BOBS that were rolled up and/or documented by the 12/5/17 Note, the 12/5/17 Loan Modification, the 6/27/18 Loan Modification Agreement, and the 9/4/19 Loan Modification Agreement; therefore, none of the loans made to Mr. Moshkovich by BOBS and rolled up and/or documented by the 12/5/17 Note, the 12/5/17 Loan Modification, the 6/27/18 Loan Modification Agreement, and the 9/4/19 Loan Modification Agreement were "Future Advance[s]" by Spring7 secured by the 7/22/14 DOT.

78. Based on the foregoing, there is an actual controversy between Mr. Moshkovich and BOBS regarding whether BOBS' Claim is secured by the Real Property.

79. Mr. Moshkovich is entitled to a declaratory judgment establishing that none of BOBS' Claim is secured by the Real Property.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Relief Pursuant to 28 U.S.C. § 2201 –**

**Re a Portion of BOBS' Alleged Lien and Secured Claim)**

**(Against BOBS)**

80. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

81. The $1 million 8/11/16 Note provided that it was secured by a Deed of Trust against the Real Property "dated the same date of this Note [*i.e.*, August 11, 2016]" (*i.e.*, the 8/11/16 DOT).

82. Despite the foregoing, BOBS' asserts that the portion of its Claim purportedly arising from the $1 million 8/11/16 Note is secured by the Real Property pursuant to the 7/22/14 DOT.

83. The Debtor asserts that any obligation under the $1 million 8/11/16 Note and any portion of BOBS' Claim purportedly arising from the $1 million 8/11/16 Note are not secured by the Real Property, because (a) there is no 8/11/16 DOT recorded against the Real Property and/or (b) the 7/22/14 DOT was not assigned by Spring7 to BOBS until November 16, 2016, at the earliest, and possibly not until October 29, 2019; therefore, BOBS $1 million loan to Mr. Moshkovich under the 8/11/16 Note was not a "Future Advance" by Spring7 secured by the 7/22/14 DOT.

84. Based on the foregoing, there is an actual controversy between Mr. Moshkovich and BOBS regarding whether any obligation under the $1 million 8/11/16 Note and any portion of BOBS' Claim purportedly arising from the $1 million 8/11/16 Note are secured by the Real Property.

85. Mr. Moshkovich is entitled to a declaratory judgment establishing that any obligation under the $1 million 8/11/16 Note and any portion of BOBS' Claim purportedly arising from the $1 million 8/11/16 Note are not secured by the Real Property.

**THIRD CLAIM FOR RELIEF**

**(Declaratory Relief Pursuant to 28 U.S.C. § 2201 –**

**Re a Applicable Interest Rate)**

**(Against BOBS)**

86. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

87. Pursuant to its Claim and the Accounting attached thereto, BOBS utilizes an interest rate of 17.25% (e.g., the 4/1/19 interest payment line-item in the amount of $186,875, which is $13 million in principal x 17.25% / 12).

88. The Debtor asserts that BOBS is only entitled to interest at the rate of 10%, 12.25% or, at most, 15%, because (a) all obligations by Mr. Moshkovich to BOBS were rolled up and restated in the 9/4/19 Loan Modification, which includes the 9/4/19 Integration Clause, but which does not include a non-default or default interest rate; as a result, the interest chargeable under the 9/4/19 Loan Modification, which is governed by California law, should be 10%, which is the amount utilized under California law when a rate of interest is not specified, (b) the next prior agreement between the Debtor and BOBS is the 6/27/18 Loan Modification agreement, includes the 6/27/18 Integration Clause and which provides for a maximum rate of interest of 12.25% and no default interest rate, and/or (c) the next prior agreements between the Debtor and BOBS, are the 12/5/17 Note and 12/5/17 Loan Modification agreement, which provide for a non-default interest rate of 12.25% and a default interest rate of 15%.

89. Based on the foregoing, there is an actual controversy between Mr. Moshkovich and BOBS regarding the interest rate applicable to Mr. Moshkovich's obligations to BOBS.

90. Mr. Moshkovich is entitled to a declaratory judgment establishing that the interest rate applicable to Mr. Moshkovich's obligations to BOBS is 10%, 12.25% or, at most 15%.

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Relief Pursuant to 28 U.S.C. § 2201 –**

**Re Reduction of BOBS' Claims Based on Payments Made to BOBS)**

**(Against BOBS)**

91. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

92. Pursuant to its POC and the Accounting attached thereto, BOBS includes amounts for (a) alleged missed interest payments in April, May, June, and July 2019 (the "Alleged 2019 Missed Payment(s)") and (b) late fees for each of the Alleged 2019 Missed Payments.

93. Mr. Moshkovich timely made all of the Alleged 2019 Missed Payments.

94. In regard to Alleged 2019 Missed Payment for April 2019, attached hereto as **Exhibit "14"** is a true and correct copy of a cleared check in the amount of $132,708 (*i.e.*, interest at the rate of 12.25% on the $13 million obligation) from Mr. Moshkovich to BOBS.

95. In regard to Alleged 2019 Missed Payments for May, June, and July 2019, in its production of documents to Mr. Moshkovich pursuant to Rule 2004 during Mr. Moshkovich's bankruptcy case, BOBS produced a document showing that Mr. Moshkovich made payments to BOBS in May, June, and July 2019, each in the amount of $132,708 (*i.e.*, interest at the rate of 12.25% on the $13 million obligation).

96. A true and correct copy of the document produced by BOBS to Moshkovich pursuant to Rule 2004 during Mr. Moshkovich's bankruptcy case and showing and admitting that Mr. Moshkovich made payments to BOBS in May, June, and July 2019, each in the amount of $132,708, is attached hereto as **Exhibit "15."**

97. Based on the foregoing, there is an actual controversy between Mr. Moshkovich and BOBS regarding whether BOBS' Claim asserted by way of its POC should include the Alleged 2019 Missed Payments and late fees for each of the Alleged 2019 Missed Payments.

98. Mr. Moshkovich is entitled to a declaratory judgment establishing that BOBS' Claim asserted by way of its POC should *not* include the Alleged 2019 Missed Payments or late fees for each of the Alleged 2019 Missed Payments.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**<u>(For Usury)</u>**

**<u>(Against BOBS)</u>**

99. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 98, inclusive, of this Complaint as if set forth fully herein.

100. Mr. Moshkovich entered into loan and/or forbearance transactions with BOBS pursuant to the 8/11/16 Note, the 4/10/17 Note, the 12/5/17 Note, the 12/5/17 Loan Modification Agreement, the 6/27/18 Loan Modification Agreement, and the 9/4/19 Loan Modification Agreement (collectively, the "<u>BOBS Loan Documents</u>").

101. The BOBS Loan Documents are all governed by California law.

102. The interest specified by the BOBS Loan Documents and to be paid under the BOBS Loan Documents, which ranged from 12% (only for the 8/11/16 Note) and allegedly up to 12.5% (for the 4/10/17 Note, the 12/5/17 Note, the 12/5/17 Loan Modification Agreement, the 6/27/18 Loan Modification Agreement, and the 9/4/19 Loan Modification Agreement), exceeded the maximum amount allowed and was usurious under California law.

103. The loans and interest under the BOBS Loan Documents are absolutely repayable by Mr. Moshkovich.

104. On information and belief, BOBS had a willful intent to enter into usurious transactions with Mr. Moshkovich.

105. Between October 2016 and July 2019, Mr. Moshkovich paid no less than $3,171,600 in Interest Payments to BOBS pursuant to the BOBS Loan Documents.

106. On information and belief, the Interest Payments were at usurious rates of interest in violation of California law.

**SIXTH CLAIM FOR RELIEF**

**(To Avoid Fraudulent Obligation - 11 U.S.C. § 548(a)(1)(B))**

**(Against BOBS)**

107. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

108. Mr. Moshkovich received no value and, in any event, less than reasonably equivalent value in exchange for the obligation to pay the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement.

109. On February 25, 2020, Mr. Moshkovich filed his Schedules of Assets and Liabilities (the "Schedules") in his bankruptcy case. In his Schedules, which reflect Mr. Moshkovich's belief as to the value of his assets as of the Petition Date of February 12, 2020, which was approximately five months after Mr. Moshkovich incurred the obligation for the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement, Mr. Moshkovich (a) scheduled assets with a total value of $30.474 million, including the Real Property, which was scheduled with a value of $30 million and (b) scheduled claims in the total amount of $20.448 million.

110. Based on, *inter alia*, (a) BOBS' assertions that the Real Property only has a fair market value of $18 million and (b) the purchase price of $20.4 million for the Real Property that was agreed to with a buyer on or about November 30, 2020, Mr. Moshkovich now believes that, at the time the Debtor incurred the obligation for the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement, (i) the Real Property had a fair market value of between $18 million and 20.4 million and, therefore, (ii) the Debtor's assets had a total value as low as $18.474.

111. Based on the foregoing, on information and belief, Mr. Moshkovich alleges that, (a) he was insolvent at the time he incurred the obligation for the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement or became insolvent as a result of incurring the obligation for the $500,000 Exit Fee, (b) at the time he incurred the obligation for the $500,000 Exit Fee, he was engaged in or was about to engage in a business or a transaction for which any property remaining with him was an unreasonably small capital, or (c) at the time he incurred the obligation for the $500,000 Exit Fee, he intended to incur, or believed that he would incur, debts that would be beyond

his ability to pay as such debts matured.

112. The obligation to pay the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement a fraudulent obligation under 11 U.S.C. § 548(a)(1)(B) and, therefore, is avoidable by Mr. Moshkovich.

**SEVENTH CLAIM FOR RELIEF**

**(For Violation of Business & Professions Code § 17200 et. seq.)**

**(Against BOBS)**

113. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 112, inclusive, of this Complaint as if set forth fully herein.

114. On information and belief, BOBS' conduct in connection with the BOBS Loan Documents, including, but not limited to, all of the Subject Conduct described above, and violations of California's usury law, Cal. Welf. & Inst. Code § 15610 et seq., and/or 11 U.S.C. § 548(a)(1)(B) are the result of unlawful, unfair, and/or fraudulent business practices or acts and, therefore constitutes one or more violations of Cal. Bus & Prof. Code § 17200 *et. seq.*

**EIGHTH CLAIM FOR RELIEF**

**(Objection to Claim – 11 U.S.C. § 502(b))**

**(Against BOBS)**

115. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 112, inclusive, of this Complaint as if set forth fully herein.

116. To the extent Mr. Moshkovich succeeds on any or all of his First through Eighth Claims for Relief in this Complaint, BOBS' POC must be disallowed, offset, and/or reclassified, as appropriate, pursuant to 11 U.S.C. § 502(b).[1]

[1] In the event the Court determines that some or all of BOBS' POC is secured by the Real Property, to the extent there is not enough equity in the Real Property to pay any allowed claim of BOBS in full, Mr. Moshkovich reserves his right to further object to the POC and to have any allowed claim of BOBS bifurcated into secured and general unsecured claims.

**NINTH CLAIM FOR RELIEF**

**(Injunctive Relief - Red. R. Civ. P. 65 and Fed. R. Bankr. P. 7065)**

**(Against BOBS)**

117. Mr. Moshkovich realleges each and every allegation contained in paragraphs 1 through 116, inclusive, of this Complaint as if set forth fully herein.

118. Mr. Moshkovich has substantial equity in the Real Property.

119. On information and belief, if and when BOBS obtains relief from the automatic stay, it will seek to fore close on the Real Property pursuant to the NOD and Notice of Sale.

120. The NOD and Notice of Sale are inaccurate and, therefore, do not serve as a valid means of initiating, pursuing and/or consummating any non-judicial foreclosure sale of the Real Property because, *inter alia*, (a) the NOD provides that as of October 15, 2019, Mr. Moshkovich was allegedly in default on $14,572,748.10 in payments due to BOBS, but that amount is inaccurate, because (i) it includes amounts for the Alleged 2019 Missed Payments that BOBS admits were paid and/or the Debtor has shown were paid and (ii) the myriad bases for objecting to and reducing BOBS claim or eliminating it as a secured claim altogether due to defects in BOBS alleged lien on the Real Property, (b) despite that the 12/5/17 Note, 12/5/17 Loan Modification Agreement, 6/27/18 Loan Modification Agreement, and 9/4/19 Loan Modification Agreement all provide that Mr. Moshkovich's obligations to BOBS are secured by the 7/26/11 DOT, the NOD purports to give notice of a default and institute a non-judicial foreclosure pursuant to the 7/22/14 DOT, and (c) despite that the 12/5/17 Note, 12/5/17 Loan Modification Agreement, 6/27/18 Loan Modification Agreement, and 9/4/19 Loan Modification Agreement all provide that Mr. Moshkovich's obligations to BOBS are secured by the 7/26/11 DOT, the Notice of Sale purports to give notice of a trustee's sale of the Real Property on February 13, 2020 pursuant to the 7/22/14 DOT.

121. In the event BOBS were to foreclose on the Real Property, Mr. Moshkovich would be irreparably injured by losing his Real Property and the equity he has in the Real Property, much of it resulting from millions of dollars invested by Mr. Moshkovich improving the Real Property.

122. In the event BOBS were to foreclose on the Real Property, Mr. Moshkovich should have no adequate remedy at law for the injuries he would sustain.

123. For the foregoing reasons, Mr. Moshkovich is entitled to an order enjoining and restraining BOBS, and any person or entity acting on its behalf, from foreclosing on the Real Property.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Mr.

Moshkovich prays for judgment against BOBS as follows:

1. On the First Claim for Relief: A declaratory judgment against BOBS establishing that none of BOBS' Claim is secured by the Real Property.

2. On the Second Claim for Relief: A declaratory judgment against BOBS establishing that any obligation under the $1 million 8/11/16 Note and any portion of BOBS' Claim purportedly arising from the $1 million 8/11/16 Note are not secured by the Real Property.

3. On the Third Claim for Relief: A declaratory judgment against BOBS establishing that the interest rate applicable to Mr. Moshkovich's obligations to BOBS is 10%, 12.25% or, at most 15%.

4. On the Fourth Claim for Relief: A declaratory judgment against BOBS establishing that BOBS' Claim asserted by way of its POC does *not* include the Alleged 2019 Missed Payments or late fees for each of the Alleged 2019 Missed Payments.

5. On the Fifth Claim for Relief: A judgment against BOBS (a) establishing that the interest charged under the BOBS Loan Documents was usurious and violated California law, (b) declaring that any provisions in the BOBS Loan Documents providing for, or requiring the payment of, interest are null and void, and (c) crediting all of the Interest Payments made Mr. Moshkovich to BOBS against any principal owed by Mr. Moshkovich to BOBS or, alternatively, requiring BOBS to repay to Mr. Moshkovich treble the amount of the Interest Payments made Mr. Moshkovich to BOBS to the extent such Interest Payments exceeded interest allowable under California law.

6. On the Sixth Claim for Relief: A judgment against BOBS finding that the obligation to pay the $500,000 Exit Fee pursuant to the 9/4/19 Loan Modification Agreement is a

fraudulent obligation under 11 U.S.C. § 548(a)(1)(B) and, therefore, that the obligation is deemed avoided.

7. On the Seventh Claim for Relief: A judgment against BOBS requiring the restitution to Mr. Moshkovich of all amounts received by BOBS as a result of its violations of violations of Cal. Bus & Prof. Code § 17200 *et. seq.*

8. On the Eighth Claim for Relief: To the extent Mr. Moshkovich succeeds on any or all of his First through Eighth Claims for Relief in this Complaint, a judgment against BOBS sustaining Mr. Moshkovich's objection to BOBS' POC and be disallowing, offsetting, and/or reclassifying BOBS' POC, as appropriate, pursuant to 11 U.S.C. § 502(b).

9. On the Ninth Claim for Relief: For an order enjoining and restraining BOBS, and any person or entity acting on its behalf, from foreclosing on the Real Property, until further order of the Court made after the resolution of the of the Claims for Relief at issue in this Complaint and only to the extent such Claims for Relief are decided in favor of BOBS such that it has a claim secured by the Real Property and is otherwise entitled to foreclose on the Real Property in compliance with applicable California law.

10. On All Claims for Relief: A judgment (a) against BOBS and R. Shy and/or B. Shy establishing that (i) BOBS is the alter ego of R. Shy and/or B. Shy and (ii) R. Shy and/or B. Shy are personally liable for any claims against BOBS, including, but not limited to, any monetary damages awarded to Mr. Moshkovich and against BOBS pursuant to this Complaint, (b) awarding attorneys' fees and costs to Mr. Moshkovich according to proof to the maximum extent provided by applicable law, and (c) for such further and other relief as is warranted under the circumstances.

Dated: December 18, 2020

GENNADY MOSHKOVICH

*/s/ David B. Golubchik*
DAVID B. GOLUBCHIK
TODD M. ARNOLD
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
Counsel for Debtor and Debtor in Possession

# EXHIBIT "1"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **ODL-072214** Date: **07/22/2014** Original Calabasas, California

**911 Loma Vista Dr Beverly Hills CA 90210**
Property Address
A.P.N.: 4391-036-020

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$6,000,000.00** (this amount will be called "principal"), plus interest, to the order of **Spring7 Loft, LLC, as to an undivided 100.000% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/24/2014**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are ☑ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning September 1, 2014 | 12.50% | $62,500.00 |
| 1 | August 1, 2016 | 12.50% | $6,062,500.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **08/01/2016** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Spring7 Loft LLC, 600 S Spring St, Unit Office Los Angeles CA 90014**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$6,250.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000%)** the ("Default Rate"). No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or
b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the "Loan Documents").
c) A violation of any provisions of the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 1. year(s) as follows: Prepayment Penalty is equal to twelve (12) months guarantee interest on the original rincipal balance. Prepayment Penalty is waived after the first twelve (12) months of the loans term.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

| | | | |
|---|---|---|---|
| Borrower Gennady Moshkovich | Date 7/22/14 | Borrower | Date |

# EXHIBIT "2"

This page is part of your document - DO NOT DISCARD

**20140770548**

Pages: 0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/25/14 AT 08:00AM

| | |
|---|---|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |

LEADSHEET

201407250250001

**00009438959**

006310951

SEQ:
10

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

E 145791

t60

FATCOLA

**Recording Requested By**

**When Recorded Mail To**
Spring7 Loft LLC
600 S Spring St, Unit Office
Los Angeles, CA 90014

Title Order No. 4676174

07/25/2014

*20140770548*

Space above this line for recorder's use

# DEED OF TRUST

Loan No. **ODL-072214**

This Deed of Trust, made this **22nd** day of **July 2014**, among the Trustor, **Gennady Moshkovich, an unmarried man** (herein "Borrower"), **Spring7 Loft LLC** (herein "Trustee"), and the Beneficiary, **Spring7 Loft, LLC, as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: **TRACT NUMBER 23782, LOT 2, IN THE CITY OF BEVERLY HILLS, AS PER MAP RECORDED IN BOOK 621, PAGE(S) 33, OF MAPS OF THE OFFICIAL RECORDS OF THE LOS ANGELES COUNTY RECORDER'S OFFICE**, which has the address of **911 Loma Vista Dr Beverly Hills CA 90210** (herein "Property Address"); APN: 4391-036-020

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust, and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **07/22/2014**, in the principal sum of U S. **$6,000,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of

3

yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

4. **Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall. (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the

Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Spring7 Loft LLC, 600 S Spring St, Unit Office Los Angeles CA 90014** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property

5

including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

[signature] 7/22/14

Borrower Gennady Moshkovich Date Borrower Date

6

State of California
County of Los Angeles

On 7/22/2014 before me, Scott Hacker, Notary Public,
personally appeared Gennady Moshkovich

who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SCOTT HACKER
Commission # 1921408
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2015

Signature

(Seal)

7

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

_______________________________ Date
Signature of Beneficiary (the "LENDER")

_______________________________ Date
Signature of Beneficiary (the "LENDER")

When recorded, mail to

Att: ____________________

# EXHIBIT "3"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: ODL-072214 Date: 04/06/2016 Los Angeles, California

917 Loma Vista Dr. Beverly Hills CA 90210
Property Address
A.P.N. 4391-036-020

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$1,000,000.00** (this amount will be called " principal"), plus interest, to the order of **Spring7 Loft, LLC, as to an undivided 100.000% interest** (who will be called "Lender" ). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **06/01/2016**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are Interest Only.

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 11 | Monthly beginning June 1, 2016 | 12.50% | $10,416.66 |
| 1 | May 1, 2017 | 12.50% | $1,010,416.66 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **05/01/2017** (the Due Date) I still owe amounts under this Note (balloon balance) , I will pay all those amounts, in full, on that date.

I will make my payments payable to **Spring7 Loft LLC, 600 S. Spring St. Unit Office Los Angeles CA 90014**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$1,041.66**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period until such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000 %)** the ("Default Rate"). No delay

Case 2:20-ap-01623-BB Doc 1 Filed 09/16/20 Entered 09/16/20 08:39:27 Desc
Main Document Page 36 of 161

or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or

b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents , together with this Note, constituting the "Loan Documents").

c) A violation of any Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment". If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 6 month(s) as follows: Prepayment penalty is equal to six (6) months guaranteed interest on the original principal balance. Prepayment Penalty is waived after the first six (6) months of the loan term.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as " presentment"); (b) to give notice that amounts due have not been paid (known as " notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors , sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent , or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payab le , in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

Borrower: Gennady Moshkovich

4/6/2016
Date

# EXHIBIT "4"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **BO-08112016** Date: **08/11/2016** Los Angeles, California

**911 Loma Vista Dr. Beverly Hills CA 90210**
Property Address
A.P.N.: 4391-036-020

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$1,000,000.00** (this amount will be called "principal"), plus interest, to the order of **BOBS, LLC, as to an undivided 100.000% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

## 2. INTEREST

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **08/19/2016**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar single payment before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

## 3. PAYMENTS

My payments are ☐ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each single payment as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 11 | October 1, 2016 | 12.00% | $10,000.00 |
| 1 | September 1, 2017 | 12.00% | $1,010,000.00 |

I will make this payments of the principal and interest and any other charges that I may owe under this Note on **09/01/2017** (the Due Date). I will make my payments payable to **BOBS, LLC, 600 S. Spring St., Unit Office Los Angeles CA 90014**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each single paymently payment by the end of calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be of my overdue payment or U.S. , whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each single paymently payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000%)** the ("Default Rate"). No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or

b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the "Loan Documents").

c) A violation of any provisions of the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **No prepayment penalty (you will not be charged a penalty to pay off or refinance the loan before maturity).**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

Gennady Moshkovich   August 13 / 2016

Borrower Gennady Moshkovich   Date   Borrower   Date

# EXHIBIT "5"

**This page is part of your document - DO NOT DISCARD**

**20191158906**

**Pages: 0006**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/29/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 52.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 202.00 |

LEADSHEET

201910291130026

**00017366799**

010243103

**SEQ:
01**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E465752

R38

BOBS-000059

Recording Requested By
Bobs LLC

When Recorded Mail To:
Bobs LLC
600 S. Spring St. Unit Office
Los Angeles CA 90014

10/29/2019
*20191158906*

SPACE ABOVE THIS LINE IS RESERVED FOR RECORDER'S USE

# ASSIGNMENT OF LOAN DOCUMENTS

## ASSIGNMENT OF LOAN DOCUMENTS

FOR VALUE RECEIVED, the undersigned, **Spring7 Loft, LLC** ("Assignor"), hereby absolutely and unconditionally transfers, conveys, and assigns to **BOBS LLC** ("Assignee") all of Assignor's right, title and interest in and to (i) all those Loan Documents described in Schedule 1 hereto, (ii) the Loan, and (iii) Assignor's security interests in the collateral securing the Loan. In connection therewith, Assignor hereby grants, sells, transfers, conveys, and assigns to Assignee the Loan Documents.

This Assignment is made pursuant to the terms and conditions of that certain Loan Purchase Agreement between Assignor and Assignee which, among other things, provides for an assignment and transfer to Assignee on as 'AS IS" AND "WITH ALL FAULTS" basis and without recourse or representation or warranty of any kind, express or implied.

Assignor hereby covenants and agrees to execute and deliver to Assignee any and all further documents an instruments reasonably required by Assignee to effectuate and perfect the grant, sale, transfer, conveyance and assignment contained in this Assignment of Loan Documents.

See Exhibit "A"

This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and its successors and assigns. (All capitalized terms not defined herein shall have the meaning ascribed to them in the aforementioned Loan Purchase and Sale Agreement.)

Dated: November 16, 2016

*Assignor:*

Spring7 Loft, LLC

By: [signature]

Name: Yaniv Aviner

Its: G.M

BOBS-000062

Case 2:20-ap-01623-BB Doc 1 Filed 09/16/20 Entered 09/16/20 08:39:27 Desc
Main Document Page 45 of 161

**Schedule 1 to**
**Assignment of Loan Documents**

| | |
|---|---|
| Borrower: | Gennady Moshkovich, an Individual |
| Lender/Assignor: | Spring7 Loft LLC |
| Assignee: | BOBS LLC |
| Property Address: | 911 Loma Vista Dr.<br>Beverly Hills, California 90210 |
| Date: | 11/16/2016 |

---

1. Loan Agreement
2. Promissory Note
3. Deed of Trust and Assignment of Rents (recorded as Instrument 20140770548 on 7/25/2014 in Los Angeles, CA)
4. Affidavit Regarding Business Loan Purpose
5. Arbitration Agreement
6. Balloon Payment Disclosures
7. Borrower's Representations and Warranties
8. Certificate of Business Purpose of Loan
9. Continuing Guaranty
10. Environmental Certificate and Indemnity Agreement
11. Lender's Instructions

Case 2:20-ap-01623-BB Doc 1 Filed 09/16/20 Entered 09/16/20 08:39:27 Desc
Main Document Page 46 of 161

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On November 16, 2016 before me, R Shy Notary Public
(insert name and title of the officer)

personally appeared Yaniv Aviner,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

R. SHY
Comm. #2165300
Notary Public - California
Los Angeles County
Comm. expires Sep. 22, 2020

Signature [signature] (Seal)

BOBS-000064

[redacted]

Exhibit 'A'

**LEGAL DESCRIPTION**

Real property in the City of Beverly Hills, County of Los Angeles, State of California, described as follows:

TRACT NUMBER 23782, LOT 2, IN THE CITY OF BEVERLY HILLS, AS PER MAP RECORDED IN BOOK 621, PAGE(S) 33, OF MAPS OF THE OFFICIAL RECORDS OF THE LOS ANGELES COUNTY RECORDER'S OFFICE

APN: 4391-036-020

[redacted]

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Cl...

OCT 2 9 2019

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA

# EXHIBIT "6"

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **SS-041017** Date: **04/10/2017** Los Angeles, California

**917 Loma Vista Drive, Beverly Hills, CA. 90210 (formerly 911 Loma Vista)**

Property Address
A.P.N.: 4391-036-020

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$1,500,000.00** (this amount will be called "principal" ), plus interest to the order of **BOBS, LLC, as to an undivided 100.000 % interest** (who will be called "Lender"). I understand that the Lender may
transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2. INTEREST**

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **04/10/2017** , and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (l) calendar single payment before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a pat l of the principal.

**3. PAYMENTS**

My payments are ☑ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each single payment as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 11 | June 1, 2017 | 12.50 % | 15,625 .00 |
| 1 | May 1. 2018 | 12.50% | 1,515,625.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note . If on **05/01/2018** (the Due Date) I still owe amounts under this Note (balloon balance). I will pay all those amounts. in full, on that date.

I will make my payments payable to **BOBS LLC, 600 S. Spring St Unit Office Los Angeles CA 90014**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each single payment by the end of 10 calendar days after the date it is due. I will pay a late charge to the Note Holder. The amount of the charge will be 10% of my overdue payment or U.S. **$1,562.50**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each single payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if. at a tune when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above. the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law . Those expenses include, for example. reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000%)** the ("Default Rate"). No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof: or
b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment , modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the " Loan Documents").
c) A violation of any provisions of the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE TH EY ARE DUE - PREPAYMEN T PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily. I agree to pay a prepayment penalty computed as follows: **You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 6 month(s) as follows: Prepayment Penalty is equal to six (6) months guarantee interest on the original principal balance. Prepayment Penalty is waived after the first six (6) months of the loan term.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor") ; (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor. surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations. including the obligations of the guarantor, surety, or endorse r of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note. Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6years (including options to renew). lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein. excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant. the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender' s right to accelerate shall be effective unless it is in writing."

Gennady Moshkovich, Individually:

[signature] 4/7/17

Borrower Gennady Moshkovich Date

# EXHIBIT "7"

# NOTE SECURED BY A DEED OF TRUST

**Property Address: 917 Loma Vista Dr. Beverly Hills, CA 90210 (formerly 911 Loma Vista)**
**Borrower: Gennady Moshkovich, an Individual**

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$11,000,000.00** (this amount will be called "principal") plus interest, to the order of BOBS, LLC, a Nevada Limited Liability Company as to an undivided **100.000%** interest (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2. INTEREST**

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on 12/05/2017 and if Paragraph 3 references more than one interest rate during the loan term, the rate will change on the date which is one (I) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

**3. PAYMENTS**

I will make my payments as follows:

| Number of Payments | Payment Start Date | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | January 1, 2018 | 12.25% | $114,583.33 |
| 1 | December 5, 2019 | 12.25% | $11,000,000.00 |

On or before 12/05/2019 (the Due Date), I promise to pay all of principal amount owed ($11,000,000.00) plus all interest incurred over the life of the loan and any other charges that may have been incurred in connection to this Note.

I will make my payments payable to BOBS, LLC 600 S. Spring St. Unit Office Los Angeles CA 90014, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4. BORROWER'S FAILURETO PAY AS REQUIRED**

(A) **Late Charge For Overdue Payments**. If I do not pay the full amount of each monthly payment by the end of 5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will **be 10.000%** of my overdue payment. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than 5 days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

(B) **Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, and such failure continues for a period of 5 days thereafter, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**Each of the following shall constitute an event of default (Event of Default") under this Note:**

**Payment Default.** Borrower fails to make any payment when due under this Note; including, but not limited to, all principal, late fees, extension fees and accrued interest due on the Maturity Date.

**Other Defaults in Obligations to Lender.** Borrower fails to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or in any other agreement between Lender and Borrower.

**Event of Default Under Related Documents.** A default or event of default occurs under the terms of any promissory note, deed of trust, loan agreement, guaranty, pledge agreement, security agreement or other agreement ("Related Documents").

**Default In Favor of Third Parties.** Borrower or any guarantor defaults in favor of any other creditor or person under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement that may materially affect any of the Secured Property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the Loan Documents.

G.M.

**Judgment.** The entry of a judgment against any Borrower or guarantor, pledgor, accommodation party or other obligor which Lender deems, in Lender's sole discretion, to be of a material nature.

**False Statement.** Any statement, representation or warranty which Borrower makes to Lender or is made on Borrower's behalf with respect to this Note or the Loan Documents as defined in the Trust Deed of even date as "Related Documents" is false or misleading in any material respect either when made or at any time thereafter. Borrower shall promptly disclose circumstances which make the statement false or misleading.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any of the secured property including, for example, a garnishment of any of Borrower's accounts with Lender or others. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and Borrower gives Lender written notice of the proceeding and deposits with Lender monies or a surety bond in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events of default occur with respect to any guarantor, endorser, surety or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is substantially impaired or Lender, in good faith, believes itself insecure.

**Resignation/Withdrawal.** The resignation or withdrawal of any partner, member or material owner of Borrower or of any guarantor, pledgor, accommodation party or other obligor, as determined by Lender in its sole discretion.

**Death or Insolvency.** The death of Borrower or, if Borrower is an entity, the dissolution or the termination of its right to do business or the cessation of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout or the commencement by Borrower of any proceeding under any bankruptcy or insolvency laws or the commencement of such proceedings by a creditor not dismissed within sixty (60) days.

(C) Payment of Note Holder's Costs and Expenses. If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

(D) Remedy in Event of Default. Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **fifteen percent (15.000%)**, , or if such increased rate of interest may not be collected under applicable law, (as applicable), then at the maximum rate of interest, if any, which may be collected from Borrower under applicable law (as applicable, the "Default Interest Rate"), and such default interest shall be immediately due and payable. The interest rate shall not return to the Agreed Interest Rate until Borrower has cured the default in full. No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE. PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. There will be no prepayment penalty at any time.

BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

C. M.

## 6. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

## 7. THIS NOTE IS SECURED BY A DEED OF TRUST

This Promissory Note is secured by a **2nd (SECOND)** Position Deed of Trust and other security agreements. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest, then to any late charges, then to any unpaid collection costs and then to principal. Interest on this Note is computed monthly by applying the annual interest rate divided by twelve (12) and daily on the basis of a 360-day year. Borrower will pay Lender at Lender's address or at such other place as Lender may designate in writing.

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

If the borrower shall sell, lease for a term of more than 6- years (including options to renew), lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

**Borrower: Gennady Moshkovich, an Individual**

December 5/2017
**Date**

# EXHIBIT "8"

***Borrower: Gennady Moshkovich***

# LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **12/05/2017**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

**I) Note for $6,000,000.00 dated 07/22/2014 (originally to Spring7 Loft, LLC and later assigned to Lender.**

**II) Note for $1,000,000.00 dated 04/06/2016**

**III) Note for $1,000,000.00 dated 08/11/2016**

**IV) Note for $1,500,000.00 dated 04/10/2017**

These 4 Notes represent Borrower's total indebtedness of **$9,500,000.00** to Lender and this debt is secured by a Second Deed of Trust on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

Borrower currently wishes to borrow $1,500,000.00 ("Increase") from Lender which will bring Borrower's total principal balance(s) to $11,000,000.00. Borrower will sign a new Note consolidating existing balance and new increase. This Note shall be in the amount of $11,000,000.00 and bear a 12.25% interest rate with interest payments of $114,843.75 due monthly.

**Interest will accrue at the rate of 12.25% from 12/05/2017 until maturity on 12/05/2019, at which time all sums shall become due and payable.**

1. **Maturity and Balloon Payment** - The loan is hereby extended to **12/05/2019** at which time all amounts of unpaid principal and interest become all due and payable ("Loan Maturity").

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable.

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has notoccurred.

4. **Lender Origination Fee**

Borrower agrees to pay to Lender an amount equal to 1.00% of the new loan increase amount ($15,000) which will be taken from Borrower's net funded amount upon funding. Borrower acknowledges that Lender will fund $1,485,000.00 upon mutual execution of this Loan Modification Agreement and new Note secured by Deed of Trust dated 12/04/17.

5. **No Further Commitments**.

Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

**a. Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

Case 2:20-ap-01623-BB Doc 1 Filed 09/16/20 Entered 09/16/20 08:39:27 Desc
Main Document Page 60 of 161

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

b. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his favor at the
> time of executing the release which if known by him
> must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:



INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER:**

**GENNADY MOSHKOVICH**

**Signature**

GENNADY MOSHKOVICH
**Print Name**

Dated: 12/5/2017

**LENDER:**

**BOB$ LLC**

**Signature**

Ronny Shy
**Print Name**

Dated: 12/5/2017

# EXHIBIT "9"

This page is part of your document - DO NOT DISCARD

COUNTY OF LOS ANGELES CALIFORNIA

**20180665817**

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/03/18 AT 12:49PM

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |

LEADSHEET

201807032260006

00015444055

009192126

SEQ:
01

DAR - Counter (Upfront Scan)

THIS FORM IS NOT TO BE DUPLICATED

E503341

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME BOBS LLC

MAILING 600 S. Spring St. #106

CITY, STATE ZIP CODE

Los Angeles, CA 90014

07/03/2018

*20180665817*

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

TITLE(S)

Loan Modification Agreement

***Borrower: Gennady Moshkovich***

## LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **06/27/2018**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") and **Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

- **I) Note for $6,000,000.00 dated 07/22/2014 and recorded as Instrument #20140770548 for the benefit of Spring 7 Loft LLC which has since assigned loan to Lender**
- **II) Note for $1,000,000.00 dated 04/06/2016**
- **III) Note for $1,000,000.00 dated 08/11/2016**
- **IV) Note for $1,500,000.00 dated 04/10/2017**
- **V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**

These 4 Notes and 1 Loan Modification represent Borrower's total indebtedness of **$11,000,000.00** to Lender and this debt is secured by a **Second Deed of Trust** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

On 12/5/2017, Borrower signed a Loan Modification consolidating the first four notes and the $1,500,000 principal increase into a New Note for $11,000,000 and bearing an interest rate of 12.25%. Now, Borrower currently wishes to borrow $2,000,000.00 ("Increase") from Lender and amend Note dated 12/5/2017 which will bring Borrower's total principal balance(s) to **$13,000,000.00**. At funding of the additional $2,000,000 as evidenced herein, Lender shall net fund $1,938,750.00 retaining 90 (ninety) days prepaid interest on this new $2,000,000 installment. Per diem interest calculated on the basis of a 360 day year.

Until 10/1/2018, Borrower will not make interest payments for the period of 7/1/2018 – 9/30/2018 as the total interest owed for these 3 months ($398,125.00) will be taken out of Lender proceeds on this $2,000,000 advance. Lender will net fund $1,601,875.00 plus $6,000 early payment credit.

Net funding to Borrower to be $1,607,875.00.

Initial

1. **Maturity and Balloon Payment** –

Interest will accrue at the rate of 12.25% until maturity on 12/05/2020, at which time all sums (including but not limited to principal, interest, default interest, late fees and any other ancillary fees shall become due and payable).

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable. Borrower warrants that the outstanding debt of $13,000,000 is secured in entirety by a **Second Position Deed of Trust**.

Initial

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows: .

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:



INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER:**

**GENNADY MOSHKOVICH**

[signature]
**Signature**

GENNADY MOSHKOVICH
**Print Name**

Dated: 7/3/18

**LENDER:**

**BOBS LLC**

[signature]
**Signature**

Rommy Shy / Manager
**Print Name**

Dated: 7/3/18

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On July 3 2018 (Date) before me, Michael Boh, Notary Public (Here Insert Name and Title of the Officer),

personally appeared Gennady Moshkovich (Name(s) of Signer(s))

who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL BOH
Commission # 2091314
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2018

Signature ________ (Signature of Notary Public)

*Place Notary Seal Above*

***OPTIONAL***

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: LOAN Modification Agreement Document Date: ________
Number of Pages: 6 Signer(s) Other Than Named Above: ________

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: ________ | Signer's Name: ________ |
|---|---|
| ☐ Corporate Officer — Title(s): ________ | ☐ Corporate Officer — Title(s): ________ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☑ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: ________ | ☐ Other: ________ |
| Signer Is Representing: ________ | Signer Is Representing: ________ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

# EXHIBIT "10"

*Borrower: Gennady Moshkovich*

# LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **09/04/2019**, by and between **BOBS, LLC, as to an undivided 100.00% interest**, ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

- **I) Note for $6,000,000.00 dated 07/22/2014 (originally to Spring7 Loft, LLC and later assigned to Lender.**
- **II) Note for $1,000,000.00 dated 04/06/2016**
- **III) Note for $1,000,000.00 dated 08/11/2016**
- **IV) Note for $1,500,000.00 dated 04/10/2017**
- **V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**
- **VI) Loan Modification and Principal Balance Increase of $2,000,000 dated 6/27/2018 and recorded on 7/3/2018 at the Los Angeles Recorder's Office as Instrument #20180665817**

These 4 Notes and 2 Loan Modifications represent Borrower's total indebtedness of **$13,000,000.00** to Lender and this debt is secured by a **<u>Second Deed of Trust</u>** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011.**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

As of September 4, 2019, Borrower is delinquent 6 months in his monthly interest payments of $132,708 for a total of $796,248 owed in simple interest, and not including late fees or default interest which Lender is entitled to collect per the Note terms. Borrower has expressed to Lender that they are currently marketing the collateralized property for sale and have expressed that a recorded Notice of Default will hurt their prospects of selling the property. Lender hereby agrees not to file a Notice of Default in consideration of the following:

- Borrower will pay at least 3 months of interest payments ($398,124) on or before October 15, 2019. If this payment is not made, Lender shall have the option to file the Notice of Default without further delay.
- Should Borrower make the above mentioned payment by the specified date, Lender will refrain from filing a Notice of Default until 2/4/2020. If all delinquent interest shall be paid by 2/4/2020 then Lender shall not charge Borrower default interest or late fees as is Lender's

right by the terms of the Loan Documents. If all delinquent interest accrued will not be paid by 2/4/2020, Lender shall have the right to file a Notice of Default and Borrower shall be responsible for all default interest and late fees that have accrued up until that point and going forward from then.

- Further, in consideration of Lender agreeing to this agreement, Borrower shall pay a $500,000 loan exit fee to Lender when this loan is paid off in addition to any accrued interest or fees owed at that time under the terms of the Note and Loan Documents.

E.M.
Initial

1. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire

understanding between the parties hereto with respect to the subject matter hereof. and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs. executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (1) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed

inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

| | |
|---|---|
| **BORROWER:** | **LENDER:** |
| **GENNADY MOSHKOVICH** | **BOBS LLC** |
| [signature] | |
| **Signature** | **Signature** |
| GENNADY MOSHKOVICH | |
| **Print Name** | **Print Name** |
| Dated: 9/6/2019 | Dated:__________ |

Certificate Attached for
California Notary Wording

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

(CALIFORNIA CIVIL CODE § 1189)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
COUNTY OF Los Angeles )

On 09/06/2019 before me, Pernetha Julien, Notary Public
(*Date*) (*Here Insert Name and Title of the Officer*)

personally appeared Gennady Moshkovich,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

PERNETHA JULIEN
Notary Public - California
Los Angeles County
Commission # 2271005
My Comm. Expires Dec 15, 2022

WITNESS my hand and official seal.

Pernetha Julien
*Signature of Notary Public* (Notary Seal)

## ADDITIONAL OPTIONAL INFORMATION

**Description of Attached Document**

Title or Type of Document: ____________ Document Date: ____________

Number of Pages: ______ Signer(s) Other Than Named Above: ____________

Additional Information: ____________

revision date 01/01/2015

# EXHIBIT "11"

Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436

**USPS CERTIFIED MAIL** ™

9207 1902 4395 0500 0382 61

TS#: 19-19392
GENNADY MOSHKOVICH
917 LOMA VISTA DR
BEVERLY HILLS, CA 90210

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE

# PLEASE READ CAREFULLY

**BEST ALLIANCE FORECLOSURE AND LIEN SERVICES CORP. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436

TS#: 19-19392
Gennady Moshkovich
917 Loma Vista Dr
Beverly Hills, CA 90210

# IMPORTANT INFORMATION IS CONTAINED WITHIN THE ATTACHED NOTICE

# PLEASE READ CAREFULLY

**BEST ALLIANCE FORECLOSURE AND LIEN SERVICES CORP. IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**

**This page is part of your document - DO NOT DISCARD**

COUNTY OF LOS ANGELES
CALIFORNIA

**20191104383**

**Pages: 0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**10/16/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |

**LEADSHEET**

201910163320069

**00017305158**

010207932

**SEQ:**
**02**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E497026

E08_191016_7[illegible]

FOR REFERENCE ONLY: 20191104383

RECORDING REQUESTED BY:
LAWYERS TITLE COMPANY
WHEN RECORDED MAIL TO:

BEST ALLIANCE FORECLOSURE
AND LIEN SERVICES

16133 Ventura Blvd., Suite 700
Encino, California 91436
(888) 785-9721
APN: 4391-036-020 05940208

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 19-19392, Loan No.: ODL-072214

[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR]

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$14,572,748.10** as of **10/15/2019**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

TS No.: 19-19392
Loan No.: ODL-072214

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**Bobs, LLC, Beneficiary**
**C/O Best Alliance Foreclosure and Lien Services Corp.**
**16133 Ventura Blvd., Suite 700**
**Encino, California 91436**
**Phone: (888) 785-9721**

**If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN:** That **Best Alliance Foreclosure and Lien Services Corp.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **7/22/2014**, executed by **Gennady Moshkovich**, as Trustor, to secure certain obligations in favor of **Spring7 Loft, LLC**, as beneficiary, recorded **7/25/2014, as Instrument No. 20140770548. The subject Deed of Trust was modified by Loan Modification recorded as Instrument 20180665818 and recorded on 07/03/2018**, of Official Records in the Office of the Recorder of Los Angeles County, California describing land therein as: As more fully described on said Deed of Trust.

Including **ONE NOTE(S) FOR THE ORIGINAL** sum of **$6,000,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The balance of principal, interest, advances, charges, fees and costs which became due on 10/15/2019, along with late charges, interest, default interest, foreclosure fees and costs, enforcement costs and charges, collection costs and charges, legal fees and costs and/or advances that become due.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**Dated: 10/15/2019**

**BEST ALLIANCE FORECLOSURE AND LIEN SERVICES AS TRUSTEE, AGENT OF TRUSTEE OR AGENT OF BENEFICIARY IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE.**

**OFFICE VISITS ARE BY APPOINTMENT ONLY, NO WALK INS CAN BE ACCOMMODATED. PLEASE CALL FIRST.**

**Bobs, LLC,** Beneficiary

**BY:** ______________________
Rommy Shy, authorized signer

**BENEFICIARY DECLARATION OF COMPLIANCE WITH (OR EXCEPTION FROM) CIVIL CODE §2923.4 - 7 AND AUTHORIZATION FOR RECORDING NOTICE OF DEFAULT**

| | |
|---|---|
| Borrower(s): | Gennady Moshkovich |
| Beneficiary: | Bobs, LLC |
| Loan Servicer: | |
| Property: | 911 Loma Vista Dr<br>Beverly Hills, CA 90210 |
| Loan No.: | ODL-072214 |
| TS No.: | 19-19392 |

The undersigned beneficiary hereby represents and declares that the herein loan is exempt from th provisions of California Civil Code § 2923.4 – 2923.7 and that the undersigned has authority to record a notice of default and proceed with non-judicial foreclosure; and authorizes the trustee, foreclosure agent and/or their authorized agents to proceed with non judicial foreclosure of the above referenced loan.

Dated: October 15, 2019

(Beneficiary's/Authorized Agent's signature)

Print Name: Ronny Shy

Summary of Notice of Default

NOTICE OF DEFAULT
SUMMARY OF KEY INFORMATION

The attached notice of default was sent to Gennady Moshkovich, in relation to 911 Loma Vista Dr, Beverly Hills, CA 90210.

This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. Gennady Moshkovich has, as described in the notice of default, breached the mortgage or deed of trust and or delinquent assessment lien on the property described above.

IMPORTANT NOTICE: IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments/assessments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is $14,572,748.10 as of 10/15/2019 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

If you would like additional copies of this summary, you may obtain them by calling (888) 785-9721.

**違約通知**
**關鍵信息摘要**

本文中包含有關911 Loma Vista Dr, Beverly Hills, CA 90210 的違約通知發送給Gennady Moshkovich。

該房產可能被出售，以履行你的產權契約，抵押貸款及所應承擔的任何其它義務。

Gennady Moshkovich 如違約通知中所描述，違反了上述房產的抵押貸款或產權契約。

**重要注意事項：如果你的房**產因為你逾期未付款而進入法拍程序，可能不經任何法庭行動而被出售。你可能有權利在法律允許的恢復賬戶時間內，支付你所有的逾期款項，加上應付的成本和費用，使你的帳戶保持良好信譽。 **時間通常是確定你財**產出售日期的五個工作日之前。法拍日期要到本文中包含的違約通知被記錄在案（記錄日期出現在通知上）之后的**90天，才可能確定。**

**這一金額在$14,572,748.10 時為10/15/2019，並會增加，直到你的帳戶**回歸正常。

**當你的房**產進入法拍程序，你仍須支付應付票據和產權契約或抵押貸款的其它付款義務（如保險費和稅金）。如果你沒有支付接下來的貸款，房地產稅，或財產保險及其它應付票據和產權契約或抵押貸款所要求的付款義務，受益人或抵押權人可以堅持要求你履行這些義務，以恢復你的帳戶信譽。此外，受益人或抵押權人可以以恢復你的帳戶為條件，要求你提供已經付清需優先處理的放置在你產權上的債務，房地產稅及財產保險保費的可靠書面証據。

**一旦你書面申請，受益人或抵押權人會提供給你分類支付的全部帳單金額。雖然要求全額付款，你可以不用支付賬戶**中的全部未付款，**但你必須支付所有已逾期的款項。但是，你和你的受益人或抵押權人在發布法拍書面通知前（本通知被記錄在案的3個月后），可以以書面形式相互同意，其中包括（1）提供更多的時間來轉讓房**產及以其它方式糾正違約，或（2）**建立付款時間表以糾正違約，或兩者兼而有之。**

**當本通知第一段中提到的時間段到期，如果法拍未進行，或者你和你的債權人之間有單獨的書面協議允許更長的時間，你隻有在支付你債權人所要求的全部金額后，才有權利停止債權人出售你的房**產。

**如果要了解必須支付的款項或安排支付以停止法拍，或者要了解你的房**產進入法拍程序的其他原因，請聯系：

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

**如果你有任何疑問，應咨詢律師及可能為你的貸款提供擔保的政府機構。**

**盡管事實上你的房**產已進入法拍程序，你可以上市出售你的房產。隻要出售程序在法拍程序結束之前完成即可。

**請記住，如果你不迅速採取行動，你可能失去法律權利。**

**如果你想獲得更多的本摘要副本，請撥打下列電話(888) 785-9721。**

채무 불이행 통지서
주요 정보 요약

첨부된 채무 불이행 통지서는Gennady Moshkovich 에게 발송되는 것이며, 이는911 Loma Vista Dr, Beverly Hills, CA 90210 에 관한것입니다.

이 부동산은 귀하의 채무 및 신탁 증서나 저당권에 의해 보증된 기타 채무를 이행하기

위해 매각될 수 있습니다.채무 불이행 통지서에서 설명된 바와 같이, Gennady Moshkovich 는(은)상기 설명된 부동산의 저당권 또는 신탁 증서를 위반했습니다.

중요 통보: <u>귀하의 부동산이 체납으로 인해 차압이 진행 중인 경우, 그 부동산은 법원의 판결 없이 매각될 수 있으며</u>, 귀하에게는 모든 미불금과 허용 가능 원가 및 법이 허용하는 시간 내에 계정 복구를 위한 비용을 지불함으로써 귀하의 계정을 완불 상태로 만들 수 있는 법적 권리가 있으며, 이 허용 시간은 보통 영업일로 부동산의 매각 예정일로부터 5일 전입니다. 부동산 매각 날짜는 채무 불이행 통지가 기록되는 날짜(통지서에 기재되어 있음)로부터 약 90일 이내로 정해질 수 없습니다.

이 금액은$14,572,748.10 현재10/15/2019 이며, 귀하의 계정이 기한 내

지불 상태가 될 때까지 증가할 것입니다.

귀하의 부동산 차압이 진행되는 동안에도 귀하는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무(보험, 세금 등)를 지불해야 합니다. 장래 대부금 지불, 부동산에 대한 세금 납부, 부동산에 대한 보험 유지, 또는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무에 대한 지불을 불이행하는 경우, 신탁수익자나 저당권자는 상기 사항이 이행되지 않으면 귀하의 계정이 완불 상태로 복구될 수 없다고 주장할 수 있습니다. 또한 신탁수익자나 저당권자는 복구의 조건으로 귀하에게 모든 선순위 담보권, 재산세 및 재해 보험료을 지불했다는 확실한 서면 증거를 제공할 것을 요구할 수 있습니다.

서면 요청시, 신탁수익자나 저당권자는 지불되어야 할 전체 금액에 대한 조목별 기재 문서를 제공할 것입니다. 완불을 요구한다 하더라도 귀하는 귀하 계정의 전체 미납 부분을 모두 지불할 필요는 없지만, 지불하는 당시 모든 채무 불이행 금액이 지불되어야 합니다. 그러나, 귀하와 귀하의 신탁수익자 또는 저당권자는 매각 통보의 게시 시점 이전에(이 채무 불이행 통지서가 기록된 후 3개월이 지나기 이전에는 가능하지 않음), (1) 부동산의 양도 또는 다른 방법으로 채무 불이행을 해결할 수 있는 추가적인 시간 제공, 또는 (2) 채무 불이행을 해결하기 위한 지급 일정의 확립, 또는 (1)과 (2)를 함께 수행하는 서면 사전 합의와 같은 해결 방법들이 있습니다.

본 통지서의 첫번째 단락에 나타난 만기일 이후, 차압이 진행되는 채무 또는 귀하와 귀하의 채권자에 의한 별도의 서면 합의에 의해 추가적인 시간이 허용되지 않는 한, 채권자가 요구하는 전체 금액을 지불하는 것이 귀하의 부동산 매각을 저지할 수 있는 유일한 법적 권리입니다.

귀하가 지불해야 할 금액을 알아보시려면, 차압을 중단하기 위한 지불 방법에 대해 합의하시려면 또는 다른 어떤 이유로 인해 귀하의 부동산에 대한 차압이 진행되는 경우, 다음으로 연락하십시오:

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

질문이 있으신 경우, 변호사 또는 귀하의 대부금을 보증한 정부 기관에 연락하십시오.

귀하의 부동산에 대한 차압이 진행됨에도 불구하고 귀하는 부동산을 매각 처분할 수 있으며, 이때 부동산의 매각은 차압이 완료되기 전에 완료되어야 합니다.

<u>신속히 행동하지 않으시는 경우, 법적 권리를 잃을 수 있는 사실</u>을 명심하시기 바랍니다.

본 요약서의 추가적인 사본을 원하시는 경우, (888) 785-9721 (으)로
전화하시면 보내드립니다.

AVISO DE INCUMPLIMIENTO
RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de incumplimiento adjunto se envió a Gennady Moshkovich, en relación con 911 Loma Vista Dr, Beverly Hills, CA 90210.

Es posible que esta propiedad sea subastada para cancelar su deuda y cualquier otra obligación garantizada por la escritura de fideicomiso o hipoteca en mora. Tal como se describe en el aviso de incumplimiento, Gennady Moshkovich ha incumplido los términos de la hipoteca o escritura de fideicomiso relacionadas con la propiedad antes mencionado.

ADVERTENCIA DE IMPORTANCIA: SI LA PROPIEDAD VA A SER EJECUTADO POR UN ATRASO EN LOS PAGOS, PUEDE VENDERSE SIN NECESIDAD DE ENTABLAR NINGUNA ACCIÓN ANTE LA CORTE, pero usted tiene el derecho jurídico de regularizar su cuenta mediante el pago de todos los importes atrasados, más los costos y gastos permitidos, dentro del plazo permitido por ley para la regularización de la deuda, que es, por lo general, de cinco días hábiles antes de la fecha fijada para la subasta la propiedad. No se puede fijar una fecha para la subasta hasta aproximadamente 90 días después de la fecha en que se registre el aviso de incumplimiento adjunto (fecha que figura en el aviso).

El importe adeudado es de $14,572,748.10 al día 10/15/2019 y aumentará hasta que se ponga al corriente en los pagos.

Mientras se mantenga vigente el procedimiento de ejecución de su propiedad, usted debe pagar otras obligaciones (tales como seguro e impuestos) exigidas en su vale y escritura de fideicomiso o hipoteca. Si no realiza los próximos pagos del préstamo, los impuestos de la propiedad, el seguro de la propiedad u otras obligaciones requeridas por el vale y la escritura de fideicomiso o hipoteca, el beneficiario o acreedor hipotecario pueden insistir en que los pague como condición para regularizar su cuenta. Asimismo, el beneficiario o acreedor hipotecario pueden exigirle, como condición para la regularización, que presente un comprobante confiable por escrito de que ha pagado todos los gravámenes principales, impuestos inmobiliarios y primas del seguro contra riesgos.

Si usted lo solicita por escrito, el beneficiario o acreedor hipotecario le entregarán un resumen por escrito del importe total que debe pagar. Es posible que usted no tenga que pagar la totalidad del monto adeudado de su cuenta, aunque la intimación haya incluido la totalidad de dicho monto, pero sí deberá pagar todos los importes vencidos a la fecha de la realización del pago. Sin embargo, antes de la fecha de publicación del aviso de venta (que no podrá ser menos de tres meses antes de la fecha de registro de este aviso de incumplimiento), usted y su beneficiario o acreedor hipotecario podrán acordar mutuamente por escrito, entre otras cosas: (1) un plazo adicional para subsanar el incumplimiento mediante una transferencia del bien o de otro modo; (2) un programa de pagos para subsanar el incumplimiento; o ambos.

Una vez vencido el plazo mencionado en el primer párrafo del presente aviso, salvo que la obligación que se ejecuta o un acuerdo por escrito separado entre usted y su acreedor permitan un plazo mayor, usted solo tendrá el derecho jurídico de detener la subasta de la propiedad mediante el pago de todo el importe adeudado cuyo pago haya exigido el acreedor.

Para averiguar el importe que debe pagar o coordinar un programa de pagos para suspender la ejecución, o si su propiedad va a ser ejecutada por cualquier otro motivo, comuníquese con:

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

Si tiene alguna duda, debe consultar a un abogado o a la agencia de gobierno que asegura su préstamo.

Aun cuando ya se haya iniciado el procedimiento de ejecución, usted puede vender su propiedad, siempre que la venta se realice antes de la finalización del procedimiento de ejecución.

Recuerde que SI NO TOMA MEDIDAS DE INMEDIATO, ES POSIBLE QUE PIERDA SUS DERECHOS JURÍDICOS.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (888) 785-9721.

PABATID NG HINDI PAGKAKABAYAD
BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of default (pabatid ng hindi pagkakabayad) ay ipinadala kay Gennady Moshkovich, sa may kaugnayan sa 911 Loma Vista Dr, Beverly Hills, CA 90210.

Ang ari-arian na ito ay maaaring ibenta para masiyahan ang inyong obligasyon at alinmang iba pang obligasyong natibay ng deed of trust (papeles ng panagot sa utang) o isinangla na hindi nabayaran. Gennady Moshkovich ay, tulad nang inilarawan sa notice of default (pabatid ng hindi pagkakabayad), hindi natupad na isinangla o deed of trust (papeles ng panagot sa utang) sa ari-arian na inilarawan sa itaas.

MAHALAGANG PAUNAWA: KUNG ANG INYONG ARI-ARIAN AY MAREREMATA SANHI NG INYONG PAGKUKULANG SA MGA KABAYARAN, MAAARI ITONG IBENTA NANG WALANG ANUMANG PAGKILOS MULA KORTE, at maaaring kayo ay may legal na karapatan na muling maisaayos para maturing na mainam na katayuan ang inyong account sa pamamagitan ng pagbabayad sa lahat ng inyong nakalipas na bayarin at ang mga pinahihntulutan na gastusin at singil sa loob ng panahon na pinahihintulutan ng batas para sa muling pagtatalaga ng inyong account, na karaniwang limang araw ng trabaho bago ang petsang itinakda para sa pagbebenta ng inyong ari-arian. Ang petsa ng pagbebenta ay hindi maaaring itakda hanggang makalipas ang 90 na araw mula sa petsa na ang pabatid ng hindi pagkakabayad ay maaaring maitala (aling petsa ng muling pagtatala na ipinapakita sa pabatid).

Ang halagang ito ay $14,572,748.10 base sa petsang 10/15/2019 at tataas hanggang ang inyong account ay masapanahon.

Habang ang inyong ari-arian ay inireremata, maaari ninyo pa rin bayaran ang iba pang mga obligasyon (tulad ng insurance at mga buwis) na hinihiling ang inyong tala at deed of trust (papeles ng panagot sa utang) o isinangla. Kung kayo ay hindi makapagbayad sa utang, magbayad sa mga buwis sa ari-arian, kumuha ng insurance sa ari-arian, o bayaran ang iba pang mga obligasyon tulad nang hinihiling sa tala o deed of trust (papeles ng panagot sa utang) o isinangla, maaaring pilitin ng benepisyaryo o nag-sangla (nagkaloob ng isinangla) na gawin ninyo ito upang muling maitalaga ang inyong account patungo sa mainam na katayuan. Bilang karagdagan dito, maaaring hilingin bilang kondisyon ng benepisyaryo o nag-sangla para sa muling pagtatalaga, na kayo ay magbigay ng mapagkakatiwalaang nakasulat na katibayan na inyong nabayaran ang mga lumang garantiya, buwis sa ari-arian, at mga hulog sa seguro para sa pinsala.

Sa inyong naibigay na nakasulat na kahilingan, ang benepisyaryo o nag-sangla ay magbibigay sa inyo ng nakasulat na detalyadong listahan ng kabuuang halaga na dapat ninyong bayaran. Maaaring hindi ninyo kailangang bayaran ang kabuuan ng inyong hindi pa bayad na bahagi ng inyong account, kahit na hinihiling ang buong kabayaran, pero kailangan muna ninyong bayaran ang lahat ng mga halaga na nagkukulang ayon sa kasunduan sa panahon na naisagawa ang pagbabayad. Gayunman, kayo at ang inyong benepisyaryo o nag-sangla ay maaaring magkasundo sa pamamagitan ng kasulatan bago ilagay ang abiso ng pagbebenta (na hindi maaaring mas maaga sa tatlong buwan makalipas na matala itong notice of default o abiso ng hindi pagkakabayad) sa, bukod sa iba pang mga bagay, (1) magbigay ng dagdag na panahon kung saan ang kalutasan sa hindi pagtutupad sa napagkasunduan sa pamamagitan ng paglilipat ng ari-arian o sa iba pang paraan; o (2) magtatag ng tipanan ng mga pagbabayad upang malutas ang inyong pagkukulang; o parehong (1) at (2).

Kasunod ng paglipas ng itinakdang panahon na tinutukoy sa unang talaga ng pabatid na ito, maliban kung ang obligasyon sa pagkakaremata o sa hiwalay na nakasulat na kasunduan sa pagitan ninyo at ng inyong creditor ay nagpapahintulot sa isang mas pinatagal na panahon, mayroon lamang kayong legal na karapatan na ihinto ang pagbebenta ng inyong legal na ari-arian sa pamamagitan ng pagbabayad ng buong halagang hinihingi ng inyong creditor.

Upang malaman ang halagang kailangan ninyong bayaran, o para isaayos ang mga pagbabayad para maihinto ang pagkakaremata, o kung ang inyong ari-arian ay maremata sa iba pang kadahilanan, makipag-ugnayan sa:

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

Kung kayo ay mayroong kahit na anong katanungan, kailangan ninyong makipag-ugnayan sa isang abogado o ahensya ng pamahalaan na maaaring nagkaloob ng insurance sa inyong utang.

Sa kabila ng katotohanan na ang inyong ari-arian ay nireremata, maaari ninyong ihandog na ipagbenta ang inyong ari-arian, sa kundisyon na ang pagbebenta ay natapos bago ang pagtatapos ng pagkakaremata.

Tandaan, MAAARING MAWALA SA INYO ANG MGA LEGAL NA KARAPATAN KUNG HINDI KAYO KUMILOS KAAGAD.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitan ng pagtawag sa (888) 785-9721.

THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
BẢN TÓM LƯỢC CÁC THÔNG TIN CHÍNH

Thông báo quá hạn trả nợ kèm theo đây được gửi cho có quan hệ với Gennady Moshkovich,

911 Loma Vista Dr, Beverly Hills, CA 90210. Căn nhà này có thể được bán để hoàn trả số tiền nợ của quý vị và bất kỳ khoản nợ nào khác theo khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà đã quá hạn trả. Như trình bày

trong thông báo quá hạn trả nợ, Gennady Moshkovich đã vi phạm hợp đồng vay thế chấp mua nhà hoặc khế ước ủy thác đối với căn nhà ghi trên.

THÔNG BÁO QUAN TRỌNG: NẾU CĂN NHÀ CỦA QUÝ VỊ BỊ TỊCH THU THẾ NỢ VÌ QUÝ VỊ KHÔNG TRẢ TIỀN ĐÚNG HẠN, CĂN NHÀ ĐÓ CÓ THỂ ĐƯỢC BÁN MÀ KHÔNG CẦN KIỆN RA TÒA, và theo luật quý vị có quyền trả nợ đầy đủ cho trương mục của mình bằng cách trả toàn bộ số tiền đã quá hạn trả cộng với các khoản chi phí và phí tổn được phép trong thời gian luật pháp cho phép để khôi phục lại tài khoản của quý vị, thường là năm ngày làm việc trước ngày dự định bán căn nhà của quý vị. Không được thu xếp ngày bán nhà cho tới khoảng 90 ngày kể từ ngày thông báo quá hạn trả nợ kèm theo có thể được lưu hồ sơ (ngày lưu hồ sơ như trên thông báo).

Số tiền này là $14,572,748.10 tính tới ngày 10/15/2019 và sẽ tăng cho tới khi tài khoản của quý vị được thanh toán đầy đủ.

Trong thời gian căn nhà của quý vị bị tịch thu thế nợ, quý vị vẫn phải trả các khoản tiền khác (ví dụ như bảo hiểm và thuế) theo giấy vay nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà của quý vị. Nếu sau này quý vị không tiếp tục trả nợ khoản vay đó, trả thuế cho căn nhà đó, cung cấp bảo hiểm cho căn nhà, hoặc trả các khoản tiền khác theo qui định trong giấy cam kết trả nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà, người thụ hưởng hoặc người cho vay thế chấp mua nhà có thể yêu cầu quý vị làm như vậy để phục hồi tài khoản của quý vị. Ngoài ra, người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể đưa ra điều kiện tái phục hồi, đó là quý vị phải cung cấp chứng từ đáng tin cậy về việc đã trả tất cả các khoản tịch thu thế nợ trước đó, thuế bất động sản, và lệ phí bảo hiểm hiểm nguy.

Sau khi nhận được yêu cầu bằng văn bản của quý vị, người thụ hưởng hoặc người cho vay thế chấp mua nhà sẽ gửi cho quý vị một bản liệt kê chi tiết toàn bộ số tiền mà quý vị phải trả. Quý vị có thể không phải trả toàn bộ phần chưa trả trong trương mục của quý vị, mặc dù phải trả toàn bộ, nhưng phải trả tất cả các khoản tiền đã quá hạn trả nợ vào thời điểm trả tiền. Tuy nhiên, quý vị và người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể thỏa thuận bằng văn bản trước thời điểm niêm yết thông báo bán (không được sớm hơn ba tháng sau khi thông báo vi phạm hợp đồng này được lưu hồ sơ) để (ngoài các việc khác) (1) gia hạn thêm thời gian khắc phục tình trạng quá hạn trả nợ bằng cách chuyển nhượng căn nhà hoặc theo cách khác; hoặc (2) sắp xếp kế hoạch trả góp để khắc phục tình trạng vi phạm hợp đồng của quý vị; hoặc cả (1) và (2).

Sau khi hết khoảng thời gian được nhắc tới trong đoạn đầu tiên của thông báo này, trừ khi số tiền bị tịch thu thế nợ hoặc có thỏa thuận riêng bằng văn bản giữa quý vị và chủ nợ cho phép gia hạn thêm thời gian, theo luật quý vị chỉ có quyền ngừng việc bán căn nhà của quý vị bằng cách trả toàn bộ số tiền mà chủ nợ yêu cầu.

Để biết số tiền mà quý vị phải trả, hoặc để thu xếp việc trả tiền nhằm ngăn chặn tình trạng tịch thu nhà thế nợ, hoặc nếu căn nhà của quý vị đang bị tịch thu thế nợ vì bất kỳ lý do nào khác, liên lạc:

Bobs, LLC
C/O Best Alliance Foreclosure and Lien Services Corp.
16133 Ventura Blvd., Suite 700
Encino, California 91436
Phone: (888) 785-9721

Nếu có thắc mắc, quý vị nên liên lạc với một luật sư hoặc cơ quan chính phủ có thể giúp bảo hiểm cho khoản vay của quý vị.

Cho dù căn nhà của quý vị hiện đang bị tịch thu thế nợ của quý vị, quý vị có thể chào bán căn nhà đó, với điều kiện việc bán nhà phải kết thúc trước khi kết thúc thủ tục tịch thu nhà thế nợ.

Xin nhớ, QUÝ VỊ CÓ THỂ MẤT CÁC QUYỀN HẠN PHÁP LÝ NẾU KHÔNG HÀNH ĐỘNG NGAY.

Nếu muốn có thêm bản sao của thông báo này, quý vị có thể gọi (888) 785-9721.

another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

4. Best Alliance was provided with the amounts set forth in the Itemization of Amounts Owed by either the Bobs, LLC or its manager and was advised in writing that the itemization was performed in accordance with the CC&R's of your association. Our demand for payment does not eliminate your right to dispute this debt within thirty days of your receipt of this letter. If you choose to do so, we are required by law to cease our collection efforts until we have mailed you verification of the debt and the name of the original creditor if different from the current creditor. to you.

California Civil Code 5655(a), which states "Any payments made by the owner of a separate interest toward the debt set forth, as required in subdivision (a) of Section 5650 shall first be applied to the assessments owed, and, only after the assessments owed are paid in full shall the payments be applied to the fees and costs of collection, attorney's fees, late charges, or interest." The interest owed was calculated on a 365day year basis. If you pay in full the assessments owed the Association may retain the right to retain a lien against your separate interest in your association.

5. When an owner makes a payment, the owner may request a receipt and the association shall provide it. The receipt shall indicate the date of payment and the person who received it.

**WE ARE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN MAY BE USED FOR THAT PURPOSE.**

16133 Ventura Blvd., Suite 700, Encino, CA 91436 • Phone: 888.785.9721 • FAX: 818.981.7127

Case 2:20-ap-01623-BB Doc 1 Filed 09/16/20 Entered 09/16/20 08:39:27 Desc
Main Document Page 94 of 161

BEST ALLIANCE
Foreclosure and Lien Services

Date: 10/17/2019 T.S. Number: 19-19392 Reference Number: ODL-072214

# DEBT VALIDATION NOTICE
# AND NOTICE OF IMPORTANT RIGHTS

1. As of the date of this letter, 10/17/2019, the amount you owe is $0.00. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or **Bobs, LLC.** To find out the total amount you must pay to bring your account current you must contact Best Alliance Foreclosure and Lien Services Corp. (Best Alliance) at: (888) 785-9721. **This amount may increase until the delinquency has been fully paid.** Any statements or invoices you receive from your association or its managing agent may not reflect the total amount due because statements you receive directly from your association or its managing agent may not include fees and costs from Best Alliance.

   If you believe that the amounts or charges set forth above are incorrect, then you must notify Best Alliance either orally or in writing that you dispute the charges. Unless you, within thirty days after receipt of this letter dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office. If you notify Best Alliance in writing within thirty-days after your receipt of this letter that the debt, or any portion thereof, is disputed, our office will obtain verification of the debt and a copy of such verification will be mailed to you by our office. Upon your written request within the thirty-day period after your receipt of this letter, Best Alliance will provide you with the name and address of the original creditor, if different from the current creditor.

   Our demand for payment does not eliminate your right to dispute this debt within thirty days of your receipt of this letter. If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you. A summary of your rights is described at the end of this Notice.

   Please note that our office, cannot discuss the details of your account with a representative, including your attorney without your express written authorization. Therefore, if you have a family member or advisor contact we, our office will be limited in the information we are able to provide unless you provide Best Alliance with written authorization permitting Best Alliance to disclose your private financial information to that person. If you choose a third party to contact either our office or the **Bobs, LLC**, please provide your representative with written authorization to contact our office and discuss your personal financial information

   The release of lien, or dismissal of any legal action, all assessments, late charges, interest, and costs of collection, including attorney fees, must be paid in full.

2. The enclosed Notice of Intent to Lien relates to a debt owed to: Bobs, LLC
   for non-payment of Regular and/or Special Assessments, interest, late charges, costs of collection and attorney's fees. If your account is not brought current, including all costs of collection, within thirty (30) days after receipt of this notice, Bobs, LLC could instruct Best Alliance to record a Notice of Delinquent Assessment and Claim of Lien against your separate interest in your association.

3. The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact

# EXHIBIT "12"

RECORDING REQUESTED BY
Best Alliance Foreclosure and Lien Services Corp.

AND WHEN RECORDED MAIL TO:

BEST ALLIANCE
Foreclosure and Lien Services

16133 Ventura Blvd., Suite 700
Encino, California 91436
(888) 785-9721

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No. **19-19392** Loan No. **ODL-072214** Order No. **05940208** **APN: 4391-036-020**

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 7/22/2014. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On :**2/13/2020** at **10:30 AM** (or as postponed from time to time), **Best Alliance Foreclosure and Lien Services Corp.** as the duly appointed trustee under and pursuant to deed of trust recorded **7/25/2014, as Instrument No. 20140770548, The subject Deed of Trust was modified by Loan Modification recorded as Instrument 20180665818 and recorded on 07/03/2018.** of Official Records in the office of the Recorder of **Los Angeles** County, California, executed by **Gennady Moshkovich** as Trustor, Spring7 Loft, LLC, Beneficiary, **WILL SELL AT PUBLIC AUCTION SALE TO THE HIGHEST BIDDER FOR CASH,** (payable at the time of sale in lawful money of the United States, by cash, a cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state)
At: **THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406,** all right, title, and interest conveyed to and now held by it under said deed of trust in the property situated in said county, California describing the land therein: **AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST**
The property heretofore described is being sold "as is". The street address and other common designation, in any, of the real property described above is purported to be: **911 Loma Vista Dr, Beverly Hills, CA 90210**
The undersigned Trustee disclaims any liability for any incorrectness of the street address and/or other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding the physical condition of the property, title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust and personal property, if any,, with interest and late charges thereon, as provided in the note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the trustee and of the trusts created by said deed of trust, to wit: amount of unpaid balance and other charges: **$15,322,409.61 (Estimated)** Accrued interest and additional advances, if any, will increase this figure prior to sale. **If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

**Continued on page 2**

Title No.: 05940208
T.S. No.: 19-19392
Loan No.: ODL-072214
AP No.: 4391-036-020

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property or necessarily a 100% ownership interest in the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off or resolving ownership interest issues, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens as well as the ownership interest(s) that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, lien holder, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **(714) 848-9272** or visit this Internet Web site www.elitepostandpub.com using the T.S. number assigned to this case. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a Written Notice of Default and Election to Sell. The Notice of Default and Election to Sell was recorded in the county where the real property is located, and more than three months have elapsed since such recordation.

**OFFICE VISITS ARE BY APPOINTMENT ONLY, NO WALK INS CAN BE ACCOMMODATED. PLEASE CALL FIRST.**

Date: 1/14/2020

**Best Alliance Foreclosure and Lien Services Corp., as Trustee**
**16133 Ventura Blvd., Suite 700**
**Encino, California 91436**
**For Payoff/Reinstatement: (888) 785-9721**
**Sales Line: (714) 848-9272 or**
**www.elitepostandpub.com**

**WE ARE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Cindy Sandoval, Best Alliance Foreclosure and Lien Services Corp.**

**Summary of Notice of Sale**

NOTICE OF SALE
SUMMARY OF KEY INFORMATION

The attached notice of sale was sent to Gennady Moshkovich, in relation to 911 Loma Vista Dr, Beverly Hills, CA 90210.

YOU ARE IN DEFAULT UNDER A DELINQUENT ASSESSMENT LIEN, DEED OF TRUST OR MORTGAGE DATED 7/22/2014. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.

IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

The total amount due in the notice of sale is $15,322,409.61

Your property is scheduled to be sold on 2/13/2020 at 10:30 AM at AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406.

However, the sale date shown on the attached notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 848-9272 or visit this Internet Web site address www.elitepostandpub.com, using the file number assigned to this case 19-19392. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If you would like additional copies of this summary, you may obtain them by calling (888) 785-9721.
www.elitepostandpub.com

出售通知
關鍵信息摘要

本文中包含的有關 911 Loma Vista Dr, Beverly Hills, CA 90210

的出售通知發送給Gennady Moshkovich。

你的 DEED OF TRUST OR MORTGAGE 於7/22/2014 已經逾期違約。

除非你採取行動保護你的房產，否則該房產將被公開出售。

如果你需要了解對你的訴訟程序的性質，應該聯系一名律師。

法拍書面通知的總金額是$15,322,409.61 。

你的房產預計出售的時間2/13/2020。你的房產預計出售的時間10:30 AM 出售地點 AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406。

然而，根據加州民法第2924g，本文中包含的法拍書面通知上顯示的出售日期可能會被抵押權人，受益人，受托人，或法院一次或多次推遲。該法規定，作為對不在法拍現場人士的一種寬限，有關受托人推遲出售的信息要提供給你和公眾。如果你想了解你的房產出售日期是否已被推遲，以及（如適用）重新安排的法拍時間和日期，可致電(714) 848-9272 或訪問互聯網網址www.elitepostandpub.com，用指定的檔案編號19-19392 查找。

關於推遲法拍的信息，持續時間會很短，或僅在預定法拍時間前不久發布，可能不會立即反映在電話信息或互聯網的網址上。最好驗証推遲信息的方法是，出席預定的拍賣。

如果你想獲得更多的本摘要副本，請撥打下列電話(888) 785-9721。www.elitepostandpub.com

매각 공고
주요 정보 요약

첨부된 매각 공고는 Gennady Moshkovich 에게 발송되는 것이며, 이는 911 Loma Vista Dr, Beverly Hills, CA 90210 에 관한 것입니다.

귀하는7/22/2014 현재 날짜로 DEED OF TRUST OR MORTGAGE하에서 채무 불이행 상태입니다. 귀하의 부동산을 보호하기 위해 조치를 취하시지 않는 한, 귀하의 부동산은 공매로 매각 처분될 수 있습니다. 귀하에게 취해지는 이러한 법적 절차에 대한 설명이 필요하신 경우 변호사와 상담하십시오.

매각 공고에서 지불되어야 할 총액은**$15,322,409.61** 입니다.

귀하의 부동산은2/13/2020 10:30 AM 에 AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406 에서 매각되기로 일정이 잡혀 있습니다.

그러나 캘리포니아주 민법 2924g항에 준하여, 첨부된 매각 공고에 나타난 매각 일자는 저당권자, 신탁수익자, 수탁자, 또는 법정에 의해 한 번 이상 연기될 수 있습니다. 법에 따라, 수탁자 매각 연기에 관한 정보는 매각에 참석하지 않는 사람들에 대한 호의로서 귀하 및 일반 대중에게 제공되어야 합니다. 매각 일자가 연기되었는 지, 그리고 해당되는 경우 이 부동산의 연기된 매각 일자 및 시간에 대해 알기 원하시는 경우, (714) 848-9272 로 전화하시거나 또는 웹사이트 주소 www.elitepostandpub.com 를 방문해 본 사례 배정 파일 번 19-19392 를 사용하시면 됩니다.

매우 짧은 기간의 연기 또는 매각 일정과 가까운 시간에 발생하는 연기는 정보 안내 전화나 인터넷 웹사이트에 즉각적으로 나타나지 않을 수 있습니다. 연기 정보를 확인하는 최선의 방법은 매각 예정일에 참석하는 것입니다.

본 요약서의 추가적인 사본을 원하시는 경우, (888) 785-9721 (으)로 전화하시면 보내드립니다.
www.elitepostandpub.com

AVISO DE VENTA
RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de venta adjunto se envió a Gennady Moshkovich, en relación con 911 Loma Vista Dr, Beverly Hills, CA 90210

USTED HA INCUMPLIDO LOS TÉRMINOS DE UNA DEED OF TRUST OR MORTGAGE DE FECHA 7/22/2014. SI NO TOMA MEDIDAS PARA PROTEGER SU PROPIEDAD, PODRÁ SER VENDIDO EN UNA SUBASTA PÚBLICA.

SI USTED NECESITA QUE LE EXPLIQUEN LA NATURALEZA DEL PROCEDIMIENTO EN SU CONTRA, DEBE CONSULTAR A UN ABOGADO.

El importe total adeudado correspondiente al aviso de venta es $15,322,409.61.

La subasta de la propiedad se ha programado para el día 2/13/2020 10:30 AM en AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406.

No obstante, conforme al Artículo 2924g del Código Civil de California, la fecha de la subasta que figura en el aviso adjunto podrá ser postergada una o más veces por el acreedor hipotecario, el beneficiario, el fideicomisario o un tribunal. La ley exige que, como cortesía para quienes no hayan asistido a la subasta, la información sobre las postergaciones solicitadas por el fideicomisario se ponga a disposición suya y del público en general. Si desea saber si la subasta de su propiedad se ha postergado, y, en tal caso, la nueva fecha propuesta para la subasta de esta propiedad, puede llamar al teléfono (714) 848-9272 o visitar el sitio web www.elitepostandpub.com, usando el número de registro asignado a este caso 19-19392.

Es posible que la información sobre las postergaciones por plazos muy breves o decididas muy próximo a la fecha programada para la subasta no figuren en la información que se ofrece por teléfono o en el sitio web. La mejor forma de verificar la información sobre las postergaciones es asistir a la subasta que se ha programado.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (888) 785-9721.www.elitepostandpub.com

PABATID NG PAGBEBENTA
BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of sale (pabatid ng pagbebenta) ay ipinadala kay Gennady Moshkovich, bilang kaugnayan sa 911 Loma Vista Dr, Beverly Hills, CA 90210.

IKAW AY HINDI NAKABAYAD SA ILALIM NG DEED OF TRUST OR MORTGAGE NA MAY PETSA NA 7/22/2014. MALIBAN KUNG KAYO AY KUMILOS UPANG MAPROTEKTAHAN ANG INYONG ARI-ARIAN, MAAARI ITONG IBENTA SA ISANG PAMPUBLIKONG PAGBEBENTA.

KUNG KINAKAILANGAN NINYO NG PAGPAPALIWANAG SA KALIKASAN NG PAGLILITIS LABAN SA INYO, KAILANGAN NINYONG MAKIPAG-UGNAYAN SA ISANG ABOGADO.

Ang kabuuang halaga na dapat bayaran sa notice of sale (pabatid ng pagbebenta) ay $15,322,409.61.

Ang inyong ari-arian ay nakatakdang ibenta sa 2/13/2020 10:30 AM sa AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406.

Gayunman, ang petsa ng pagbebenta na ipinapakita sa nakalakip na notice of sale (pabatid ng pagbebenta) ay maaaring maantala ng isa o mas marami pang beses ng nagkaloob ng isinangla, benepisyaryo, pinagkatiwalaan, o ng korte, alinsunod sa Seksyon 2924g ng Kodigong Sibil ng California. Hinihiling ng batas na ang impornasyon tungkol sa mga pagpaantala sa pagbebenta ng pinagkatiwalaan ay handang maibigay sa inyo at sa publiko, bilang isang kagandahang-loob doon sa mga hindi makakadalo sa bentahan. Kung nais ninyong malaman kung naantala ang inyong petsa ng pagbebenta, at kung naaangkop, ang natakda muli na oras at petsa sa bentahan ng ari-arian, maaari kayong tumawag sa (714) 848-9272 o bumisita dito sa Internet Web site address www.elitepostandpub.com gamit ang numero ng file na itinalaga sa kasong ito 19-19392. Impormasyon tungkol sa mga pagpaaantala sa loob ng maikling panahon o maaaring maganap kalapit ng itinakdang pagbebenta ay maaaring hindi kaagad masaad sa impormasyon mula sa telepono o sa Internet Web site. Ang pinakamainam na paraan upang mapatotohanan ang impormasyon sa pagpaaantala ng petsa ay ang pagdalo sa nakatakdang petsa ng bentahan.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitna ng pagtawag sa (888) 785-9721.www.elitepostandpub.com

THÔNG BÁO BÁN
BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN CHÍNH

Thông báo rao bán kèm theo được gửi tới cho Gennady Moshkovich, trong mối quan hệ với 911 Loma Vista Dr, Beverly Hills, CA 90210

QUÝ VỊ VI PHẠM QUI ĐỊNH GHI THEO 7/22/2014 NGÀY $15,322,409.61. TRỪ KHI QUÝ VỊ CÓ HÀNH ĐỘNG BẢO VỆ CĂN NHÀ CỦA QUÝ VỊ, CĂN NHÀ CÓ THỂ BỊ BÁN CÔNG KHAI.

NẾU QUÝ VỊ CẦN MỘT PHẦN GIẢI THÍCH VỀ TÍNH CHẤT CỦA THỦ TỤC CHỐNG LẠI QUÝ VỊ, QUÝ VỊ NÊN LIÊN LẠC VỚI LUẬT SƯ.

Toàn bộ số tiền phải trả trong thông báo bán là 2/13/2020. Căn nhà của quý vị được dự kiến sẽ bán vào 10:30 AM tại AT THE FRONT STEPS OF BUILDING LOCATED AT 17305 GILMORE STREET, LAKE BALBOA, CA 91406.

Tuy nhiên, ngày bán ghi trong thông báo bán kèm theo có thể bị trì hoãn một hoặc nhiều lần bởi bên cho vay thế chấp, người thụ hưởng, người được ủy quyền, hoặc tòa án, chiếu theo Mục 2924g của Bộ Luật Dân Sự California. Luật pháp qui định thông tin về các trường hợp trì hoãn bán nhà của bên được ủy quyền phải được cung cấp cho quý vị và công chúng, để cập nhật cho những người không có mặt tại buổi rao bán. Nếu quý vị muốn biết ngày rao bán của quý vị có bị trì hoãn hay không, và, nếu thích hợp, ngày giờ mới cho việc rao bán căn nhà này, quý vị có thể gọi (714) 848-9272 hoặc tới địa chỉ Internet này www.elitepostandpub.com dựa trên mã số hồ sơ được ấn định cho hộ này 19-19392. Thông tin về các trường hợp trì hoãn rất ngắn hoặc xảy ra ngay sát ngày rao bán dự kiến có thể không được phản ánh ngay trong thông tin cung cấp qua điện thoại hoặc trên Internet. Cách tốt nhất để xác minh thông tin trì hoãn là tham dự buổi rao bán đã ấn định.

Nếu quý vị muốn có thêm bản sao của tài liệu trình bày tóm lược này, vui lòng gọi số (888) 785-9721.www.elitepostandpub.com

# EXHIBIT "13"

**Fill in this information to identify your case:**

Debtor 1 **Gennady Moshkovich**

Debtor 2 ______
(Spouse if, filing)

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number **2:20-bk-11547-BB**
(if known)

Official Form 410

# Proof of Claim

**4/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

**BOBS LLC**
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor **Spring7 Loft, LLC, SB Spring LLC**

**2. Has this claim been acquired from someone else?**

☐ No
☒ Yes. From whom? **Assigned from Spring7 Loft, LLC**

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

**BOBS LLC**
**c/o David P. Jacob, Esq**
**5950 Canoga Avenue, Suite 400**
**Woodland Hills, CA 91367**
Name, Number, Street, City, State & Zip Code

Contact phone **213-293-5931**

Contact email **david@dpjacob.com**

**Where should payments to the creditor be sent?** (if different)

**BOBS LLC**
**600 S. Spring Street, Suite 600**
**Los Angeles, CA 90014**
Name, Number, Street, City, State & Zip Code

Contact phone ______

Contact email ______

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

______

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? ______



Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____________

**7. How much is the claim?** $ **16,624,271.11** **Does this amount include interest or other charges?**
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

**9. Is all or part of the claim secured?**
☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☒ Real Estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: 911 Loma Vista Drive, Beverly Hills CA 90210

**Basis for perfection:** **Deed of Trust**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 18,000,000.00

**Amount of claim that is secured:** $ 16,624.271.11

**Amount of claim that is unsecured:** $ ____________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 2,227,356.95

**Annual Interest Rate** (when case was filed) 12.25 %

☒ Fixed

☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition:** $ ____________

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: ____________



Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

- ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ ________
- ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ ________
- ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier.11 U.S.C. § 507(a)(4). $ ________
- ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ ________
- ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ ________
- ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. $ ________

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571**.

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date **June 7, 2020**
MM/ DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name **Rommy Shy**

Title **Manager**

Company **BOBS LLC**
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address **c/o David P. Jacob, Esq**
**5950 Canoga Ave Suite 400**
**Woodland Hills, CA 91367**
Number, Street, City, State and Zip Code

Contact phone **213-293-5931** Email **david@dpjacob.com**



Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

## Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in ~~the debtor's principal residence~~, you must use this form as an attachment to your proof of claim. See separate instructions.**

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | **2:20-bk-11547-BB** |
| Debtor 1: | **Gennady Moskovich** |
| Debtor 2: | |
| Last 4 digits to identify: | |
| Creditor: | **BOBS LLC** |
| Servicer: | |
| Fixed accrual/daily simple interest/other: | **Fixed** |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | **$13,060.000.00** |
| Interest due: | **$2,821,812.50** |
| Fees, costs due: | **$717,541.95** |
| Escrow deficiency for funds advanced: | |
| Less total funds on hand: | - |
| Total debt: | **$16,599,354.45** |

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | **$2,055,625.00** |
| Prepetition fees due: | **$671,731.95** |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | - |
| Total prepetition arrearage: | **$2,727,356.95** |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | **$186,875.00** |
| Monthly escrow: | |
| Private mortgage insurance: | |
| Total monthly payment: | **$186,875.00** |

-

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/ Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| 4/1/19 | $186,875 | 0.00 | 0.00 | Payment | 4/1/19 | $13,186,875 | $13,000,000 | | | | | | | | | |
| 4/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 4/10/19 | $13,200,145 | $13,000,000 | | | | | | | | | |
| 5/1/19 | $186,875 | 0.00 | 0.00 | Payment | 5/1/19 | $13,387,020 | $13,000,000 | | | | | | | | | |
| 5/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 5/10/19 | $13,400,290 | $13,000,000 | | | | | | | | | |
| 6/1/19 | $186,875 | 0.00 | 0.00 | Payment | 6/1/19 | $13,587,165 | $13,000,000 | | | | | | | | | |
| 6/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 6/10/19 | $13,600,435 | $13,000,000 | | | | | | | | | |
| 7/1/19 | $186,875 | 0.00 | 0.00 | Payment | 7/1/19 | $13,787,310 | $13,000,000 | | | | | | | | | |
| 7/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 7/10/19 | $13,800,580 | $13,000,000 | | | | | | | | | |
| 8/1/19 | $186,875 | 0.00 | 0.00 | Payment | 8/1/19 | $13,987,455 | $13,000,000 | | | | | | | | | |
| 8/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 8/10/19 | $14,000,725 | $13,000,000 | | | | | | | | | |
| 9/1/19 | $186,875 | 0.00 | 0.00 | Payment | 9/1/19 | $14,187,600 | $13,000,000 | | | | | | | | | |
| 9/4/19 | $500,000 | 0.00 | 0.00 | Loan Exit Fee | 9/4/19 | $14,687,600 | $13,000,000 | | | | | | | | | |
| 9/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 9/10/19 | $14,700,870 | $13,000,000 | | | | | | | | | |
| 9/18/19 | $60,000 | 0.00 | 0.00 | Advanced Funds | 9/18/19 | $14,760,870 | $13,060,000 | | | | | | | | | |
| 10/1/19 | $186.875 | 0.00 | 0.00 | Payment | 10/1/19 | $14,947,745 | $13,060,000 | | | | | | | | | |
| 10/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 10/10/19 | $14,961,015 | $13,060,000 | | | | | | | | | |



Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

**Mortgage Proof of Claim Attachment:** Additional Page (12/15)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/17/19 | $25,761 | 0.00 | 0.00 | Trustee Fee | 10/17/19 | $14,986,766.95 | $13,060,000 |
| 11/1/19 | $186,875 | 0.00 | 0.00 | Payment | 11/1/19 | $15,147,890.95 | $13,060,000 |
| 11/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 11/10/19 | $15,161,160.95 | $13,060,000 |
| 12/1/19 | $186,875 | 0.00 | 0.00 | Payment | 12/1/19 | $15,348,035.95 | $13,060,000 |
| 12/10/19 | $13,270 | 0.00 | 0.00 | Late Fee | 12/10/19 | $15,361,305.95 | $13,060,000 |
| 1/1/20 | $186,875 | 0.00 | 0.00 | Payment | 1/1/20 | $15,548,180.95 | $13,060,000 |
| 1/10/20 | $13,270 | 0.00 | 0.00 | Late Fee | 1/10/20 | $15,561,450.95 | $13,060,000 |
| 2/1/20 | $186,875 | 0.00 | 0.00 | Payment | 2/1/20 | $15,748,325.95 | $13,060,000 |
| 2/10/20 | $13,270 | | | Late Fee | 2/10/20 | $15,761,595.95 | $13,060,000 |



Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

| Date | Description | Transaction Amount | Interest Balance | Principal | Fee Balance | Principal + Interest + Fees |
|---|---|---|---|---|---|---|
| 4/1/2019 | Payment | $186,875.00 | $186,875.00 | $13,000,000.00 | | $13,186,875.00 |
| 4/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $13,270.00 | $13,200,145.00 |
| 5/1/2019 | Payment | $186,875.00 | $373,750.00 | $13,000,000.00 | | $13,387,020.00 |
| 5/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $26,540.00 | $13,400,290.00 |
| 6/1/2019 | Payment | $186,875.00 | $560,625.00 | $13,000,000.00 | | $13,587,165.00 |
| 6/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $39,810.00 | $13,600,435.00 |
| 7/1/2019 | Payment | $186,875.00 | $747,500.00 | $13,000,000.00 | | $13,787,310.00 |
| 7/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $53,080.00 | $13,800,580.00 |
| 8/1/2019 | Payment | $186,875.00 | $934,375.00 | $13,000,000.00 | | $13,987,455.00 |
| 8/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $66,350.00 | $14,000,725.00 |
| 9/1/2019 | Payment | $186,875.00 | $1,121,250.00 | $13,000,000.00 | | $14,187,600.00 |
| 9/4/2019 | Loan Exit Fee | $500,000.00 | | $13,000,000.00 | $566,350.00 | $14,687,600.00 |
| 9/10/2019 | Late Fee | $13,270.00 | | $13,000,000.00 | $579,620.00 | $14,700,870.00 |
| 9/18/2019 | Addition Money Advanced | $60,000.00 | | $13,060,000.00 | | $14,760,870.00 |
| 10/1/2019 | Payment | $186,875.00 | $1,308,125.00 | $13,060,000.00 | | $14,947,745.00 |
| 10/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $592,890.00 | $14,961,015.00 |
| 10/17/2019 | Trustee Fees | $25,761.95 | | | $618,651.95 | $14,986,776.95 |
| 11/1/2019 | Payment | $186,875.00 | $1,495,000.00 | $13,060,000.00 | | $15,173,651.95 |
| 11/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $631,921.95 | $15,186,921.95 |
| 12/1/2019 | Payment | $186,875.00 | $1,681,875.00 | $13,060,000.00 | | $15,373,796.95 |
| 12/10/2019 | Late Fee | $13,270.00 | | $13,060,000.00 | $645,191.95 | $15,387,066.95 |
| 1/1/2020 | Payment | $186,875.00 | $1,868,750.00 | $13,060,000.00 | | $15,573,941.95 |
| 1/10/2020 | Late Fee | $13,270.00 | | $13,060,000.00 | $658,461.95 | $15,587,211.95 |
| 2/1/2020 | Payment | $186,875.00 | $2,055,625.00 | $13,060,000.00 | | $15,774,086.95 |
| 2/10/2020 | Late Fee | $13,270.00 | | $13,060,000.00 | $671,731.95 | $15,787,356.95 |
| 2/11/2020 | Petition Date | | | | | $15,787,356.95 |
| 3/1/2020 | Payment | $186,875.00 | | | | $15,974,231.95 |
| 3/5/2020 | Attorneys Fees | $6,000.00 | | | $677,731.95 | $15,980,231.95 |
| 3/10/2020 | Late Fee | $13,270.00 | | | $691,001.95 | $15,993,501.95 |
| 4/1/2020 | Payment | $186,875.00 | | | | $16,180,376.95 |
| 4/10/2020 | Late Fee | $13,270.00 | | | $704,271.95 | $16,193,646.95 |
| 5/1/2020 | Payment | $186,875.00 | | | | $16,380,521.95 |
| 5/10/2020 | Late Fee | $13,270.00 | | | $717,541.95 | $16,393,791.95 |
| 6/1/2020 | Payment | $186,875.00 | | | | $16,580,666.95 |
| 6/7/2020 | Per Diem | $43,604.16 | | | | $16,624,271.11 |

Case 2:20-ap-01623-BB Doc 18 Filed 12/18/20 Entered 12/18/20 16:30:57 Desc Main Document Page 109 of 161

# NOTE SECURED BY A DEED OF TRUST

Loan Number: **ODL-072214** Date: **07/22/2014** Calabasas, California

Original

**911 Loma Vista Dr Beverly Hills CA 90210**
Property Address
A.P.N.: 4391-036-020

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$6,000,000.00** (this amount will be called "principal"), plus interest, to the order of **Spring7 Loft, LLC, as to an undivided 100.000% interest** (who will be called "Lender"). I understand that the Lender may transfer this Note. The Lender or anyone else who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder(s)."

**2. INTEREST**

I will pay interest at a yearly rate as described in paragraph 3 below.

Interest commences on **07/24/2014**, and, if paragraph 3 reflects more than one interest rate during the loan term, the rate will change on the date which is one (1) calendar month before each Payment Start Date.

Interest will be charged on unpaid principal until the full amount of principal has been paid.

I also agree to pay interest at the rate described in paragraph 3 below on the prepaid finance charges which are a part of the principal.

**3. PAYMENTS**

My payments are ☑ Interest Only ☐ Fully Amortized ☐ Other

I will make my payments each month as follows:

| Number of Payments | Payment Start Dates | Interest Rates | Payment Amounts |
|---|---|---|---|
| 23 | Monthly beginning September 1, 2014 | 12.50% | $62,500.00 |
| 1 | August 1, 2016 | 12.50% | $6,062,500.00 |

I will make these payments until I have paid all of the principal and interest and any other charges that I may owe under this Note. If on **08/01/2016** (the Due Date) I still owe amounts under this Note (balloon balance), I will pay all those amounts, in full, on that date.

I will make my payments payable to **Spring7 Loft LLC, 600 S Spring St, Unit Office Los Angeles CA 90014**, or at a different place if I am notified by the Note Holder or the Agent for the Note Holder.

**4. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge For Overdue Payments.** If I do not pay the full amount of each monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **10.000%** of my overdue payment or U.S. **$6,250.00**, whichever is more. I will pay this late charge only once on any late payment.

In the event a balloon payment is delinquent more than **10** days after the date it is due, I agree to pay a late charge in an amount equal to the maximum late charge that could have been assessed with respect to the largest single monthly installment previously due, other than the balloon payment, multiplied by the sum of one plus the number of months occurring since the late payment charge began to accrue.

**(B) Default.** If I do not pay the full amount of each monthly payment due under this Note by the date stated in paragraph 3 above, I will be in default, and the Note Holder may demand that I pay immediately all amounts that I owe under this Note.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(C) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees. A default upon any interest of any Note Holder shall be a default upon all interests.

**(D) Remedy in Event of Default.** Upon the occurrence of an Event of Default, the entire balance of principal, together with all accrued interest, shall, at the option of the Lender, without demand or notice, immediately become due and payable. Upon the occurrence of an Event of Default (and for a period of no less than 6 months after such Event of Default may be remedied), the entire balance of principal, together with all accrued interest thereon, shall bear interest at the note rate plus **five percent (5.000%)** the ("Default Rate"). No delay or omission on the part of the Lender in exercising any right under this Note or under any of the Loan Documents shall operate as a waiver of such right.

The occurrence of (but not limited to) any of the following shall be deemed to be an event of default ("Event of Default") hereunder:

a) Default in the payment of principal or interest when due pursuant to the terms hereof; or

b) The occurrence of an Event of Default under the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing this Note (all such documents, together with this Note, constituting the "Loan Documents").

c) A violation of any provisions of the Deed of Trust or other agreement (including any amendment, modification or extension thereof) now or hereafter evidencing or securing ANY Note (all such documents, together with this Note, constituting the "Loan Documents") on ANY property secured by this Lender.

**5. BORROWER'S PAYMENTS BEFORE THEY ARE DUE - PREPAYMENT PENALTIES**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as "prepayment." If I pay all or part of the loan principal before it is due, whether such payment is made voluntarily or involuntarily, I agree to pay a prepayment penalty computed as follows: **You will have to pay a prepayment penalty if the loan is paid off or refinanced in the first 1. year(s) as follows: Prepayment Penalty is equal to twelve (12) months guarantee interest on the original rincipal balance. Prepayment Penalty is waived after the first twelve (12) months of the loans term.**

**6. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); (c) to obtain an official certification of nonpayment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**7. RESPONSIBILITIES OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that anyone of us may be required to pay all of the amounts owed under this Note.

**8. THIS NOTE IS SECURED BY A DEED OF TRUST**

In addition to the protection given to the Note Holder under this Note, a Deed of Trust (the "Security Instrument") with a Due-on-Transfer Clause dated the same date of this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in the Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of those conditions are described as follows:

"Lender's Right to Require The Loan to be Paid Off Immediately. If the borrower shall sell, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for less than the encumbrances for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver of the Lender's right to accelerate shall be effective unless it is in writing."

7/22/14

Borrower Gennady Moshkovich Date Borrower Date

Case 2:20-ap-01623-BB Doc 18 Filed 12/18/20 Entered 12/18/20 16:30:57 Desc
Main Document Page 111 of 161

## ASSIGNMENT OF NOTE SECURED BY A DEED OF TRUST

Date: ______________________________________________

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

all beneficial interest under the within Note, without recourse, and Deed of Trust securing same

______________________________ ______________________________

______________________________ ______________________________

**DO NOT DESTROY THIS NOTE:** When paid it must be surrendered to the Trustee, together with the Deed of Trust securing same for cancellation, before reconveyance will be made.

This page is part of your document - DO NOT DISCARD

20140770548

Pages: 0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/25/14 AT 08:00AM

| | |
|---|---|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |

LEADSHEET

201407250250001

00009438959

006310951

SEQ:
10

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

E 945797

t60

FATCOLA
**Recording Requested By**

**When Recorded Mail To**
Spring7 Loft LLC
600 S Spring St, Unit Office
Los Angeles, CA 90014

Title Order No. 4676174

07/25/2014
*20140770548*

Space above this line for recorder's use

# DEED OF TRUST

Loan No. **ODL-072214**

This Deed of Trust, made this **22nd** day of **July 2014**, among the Trustor, **Gennady Moshkovich, an unmarried man** (herein "Borrower"), **Spring7 Loft LLC** (herein "Trustee"), and the Beneficiary, **Spring7 Loft, LLC, as to an undivided 100.000% interest** (herein "Lender").

The beneficiaries (or assignees) of this deed of trust have agreed in writing to be governed by the desires of the holders of more than 50% of the record beneficial interest therein with respect to actions to be taken on behalf of all holders in the event of default or foreclosure or for matters that require direction or approval of the holders, including designation of the broker, servicing agent, or other person acting on their behalf, and the sale, encumbrance or lease of real property owned by the holders resulting from foreclosure or receipt of a deed in lieu of foreclosure.

## GRANT IN TRUST

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, transfers, conveys and assigns to Trustee, in trust, with power of sale, the following described property located in the county of **Los Angeles**, State of California: **TRACT NUMBER 23782, LOT 2, IN THE CITY OF BEVERLY HILLS, AS PER MAP RECORDED IN BOOK 621, PAGE(S) 33, OF MAPS OF THE OFFICIAL RECORDS OF THE LOS ANGELES COUNTY RECORDER'S OFFICE**, which has the address of **911 Loma Vista Dr Beverly Hills CA 90210** (herein "Property Address"); APN: 4391-036-020

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, and water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust, and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

**THIS DEED OF TRUST IS MADE TO SECURE TO LENDER:**
(a) the repayment of the indebtedness evidenced by Borrower's note (herein "Note") dated **07/22/2014**, in the principal sum of U.S. **$6,000,000.00**, with payment of interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; the performance of the covenants and agreements of Borrower herein contained; and (b) repayment of any future advances, with interest thereon, made to the Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"); and in addition (c) this Deed of Trust shall provide the same security on behalf of the Lender, to cover extensions, modifications or renewals, including without limitation, extensions, modifications or renewals of the Note at a different rate of interest; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the **Property, that the Property is unencumbered except for encumbrances of record, and that Borrower will warrant and defend** generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

**1. Payments of Principal and/or Interest.** Borrower shall promptly pay, when due, the principal of and/or interest on the indebtedness evidenced by the Note, prepayment and late charges as provided in the Note and the principal of and/or interest on any Future Advances secured by the Deed of Trust.

**2. Funds for Taxes and Insurance (Impounds).** Subject to applicable law, and if required by the Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of

3

yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such an agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under Paragraph 18 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, if applicable, then to interest payable on the Note, then to the principal of the Note, and then to interest and principal on any Future Advances.

**4. Prior Mortgages and Deeds of Trust; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid, at least 10 days before delinquency, all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower agrees to provide, maintain and deliver to Lender fire insurance satisfactory and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured hereby and in such order as Lender may determine, or at option of Lender the entire amount so collected or any part thereof may be released to the Borrower. Such application or release shall not cure or waive any Default or Notice of Default hereunder or invalidate any act done pursuant to such notice.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of a loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply their insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower obtains earthquake, flood or any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by the Lender, then such insurance shall. (i) name the Lender as loss payee thereunder, and (ii) be subject to all of the provisions of this paragraph 5.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration of covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which affects Lender's interest in the Property, including but not limited to proceedings by the Lender to obtain relief from stay in any bankruptcy proceeding which would prohibit Lender enforcing its rights under the

Deed of Trust, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, including but not limited to payment of delinquent taxes and assessments, insurance premiums due, and delinquent amounts owed to prior lien holders, shall become additional indebtedness of Borrower secured by this Deed of Trust. Such amounts as are disbursed by Lender shall be payable, upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable on the Note. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspection of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in conjunction with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released.** At any time or from time to time, without liability therefore and without notice upon written request of Lender and presentation of this Deed and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge thereof. Trustee may, but shall be under no obligation or duty to, appear in or defend any action or proceeding purporting to affect said property or the title thereto, or purporting to affect the security hereof or the rights or powers of Lender or Trustee.

**11. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

**12. Remedies Cumulative.** All remedies provided in this Deed of Trust are distinct and cumulative to any other or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

**13. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 18 hereof. All covenants and agreements of Borrower shall be joint and several.

**14. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower or the Property at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender, in care of Lender's Servicing Agent ("Agent"), **Spring7 Loft LLC, 600 S Spring St, Unit Office Los Angeles CA 90014** or to such other address as Lender or Agent may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**15. This Deed of Trust shall be governed by the Laws of the State of California.** In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not effect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust are declared to be severable.

**16. Lender's Right to Require The Loan to be Paid Off Immediately.** If the Borrower shall sell, enter into a contract of sale, lease for a term of more than 6-years (including options to renew), lease with an option to purchase for any term, or transfer all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) or a transfer by devise, descent, or by operation of law upon the death of a joint tenant, the Lender may, at its option declare the Note and any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable, in full. No waiver or the Lender's right to accelerate shall be effective unless it is in writing.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

BORROWER AND LENDER FURTHER COVENANT AND AGREE AS FOLLOWS:

**17. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, and without regard to the adequacy of any security for the indebtedness hereby secured, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 18 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 18 hereof or abandonment of the Property, Lender, in person, by Agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property

including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**18. Default.** Upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder or any other loan document relating to the indebtedness secured hereby, Lender may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written Notice of Default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Trustee shall be entitled to rely upon the correctness of such notice. Lender also shall deposit with Trustee this Deed, said Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as then may be required by law following the recordation of said Notice of Default and Notice of Sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said Notice of Sale, either as a whole or in separate parcels and in such order as it may determine (but subject to any statutory right of Trustor to direct the order in which said property, if consisting of several lots or parcels, shall be sold), at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property to sold, but without any covenant or warranty, expressed or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expended under the terms hereof, not then repaid, with accrued interest at the rate prescribed in the Note; all other sums then secured thereby; and the remainder, if any, to the person or persons legally entitled thereto.

**19. Future Advances.** Upon request of Borrower, Lender, at Lender's option prior to full reconveyance of the Property by Trustee to Borrower, may make Future Advances to Borrower. Such advances with interest thereon shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.

**20. Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Deed and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee may destroy said Note, this Deed or Trust (and any other documents related thereto) upon the first to occur of the following: 5 years after issuance of a full reconveyance; or, recordation of the Note and Deed of Trust in a form or medium which permits their reproduction for 5 years following issuance of a full reconveyance.

**21. Substitution of Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Request for Notices.** Borrower requests that copies of the notice of sale and notice of default be sent to Borrower's address which is the Property Address.

**23. Statement of Obligation.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligations as provided by Section 2943 of the Civil Code of California.

MISCELLANEOUS PROVISIONS

**24. Construction or Home Improvement Loan.** If the loan secured by this Deed of Trust is a construction or home improvement loan, Borrower is required to perform according to the terms and conditions of each agreement contained in any building, home improvement or similar agreement between the Borrower and Lender.

**25. Acceptance by Lender of a Partial Payment After Notice of Default.** By accepting partial payment (payments which do not satisfy a default or delinquency in full) of any sums secured by this Deed of Trust after a Notice of Default has been recorded, or by accepting late performance of any obligation secured by this Deed of Trust, or by adding any payment so made to the loan secured by this Deed of Trust, whether or not such payments are made pursuant to a court order, the Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No exercise of any right or remedy of the Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law

IN WITNESS WHEREOF, BORROWER HAS EXECUTED THIS DEED OF TRUST

[signature] 7/22/14

Borrower Gennady Moshkovich Date Borrower Date

6

State of California
County of Los Angeles

On 7/22/2014 before me, Scott Hacker, Notary Public,
personally appeared Gennady Moshkovich

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SCOTT HACKER
Commission # 1921408
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2015

Signature (Seal)

7

## REQUEST FOR FULL RECONVEYANCE

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all **other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and** this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

| | | | |
|---|---|---|---|
| Signature of Beneficiary (the "LENDER") | Date | Signature of Beneficiary (the "LENDER") | Date |

When recorded, mail to

Att: ____________________________

**This page is part of your document - DO NOT DISCARD**

# 20180665817

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/03/18 AT 12:49PM

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |

LEADSHEET

201807032260006

**00015444055**

009192126

**SEQ:**
**01**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E503741

Case 2:20-ap-01623-BB Doc 18 Filed 12/18/20 Entered 12/18/20 16:30:57 Desc
Main Document Page 120 of 161

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME BOBS LLC

MAILING 600 S. Spring St. #106

CITY, STATE ZIP CODE

Los Angeles, CA 90014

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

TITLE(S)

Loan Modification Agreement

*Borrower: Gennady Moshkovich*

**LOAN MODIFICATION AGREEMENT**

THIS AGREEMENT ("Agreement") is made **06/27/2018**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

**RECITALS**

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

**I) Note for $6,000,000.00 dated 07/22/2014 and recorded as Instrument #20140770548 for the benefit of Spring 7 Loft LLC which has since assigned loan to Lender**

**II) Note for $1,000,000.00 dated 04/06/2016**

**III) Note for $1,000,000.00 dated 08/11/2016**

**IV) Note for $1,500,000.00 dated 04/10/2017**

**V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**

These 4 Notes and 1 Loan Modification represent Borrower's total indebtedness of **$11,000,000.00** to Lender and this debt is secured by a **Second Deed of Trust** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

On 12/5/2017, Borrower signed a Loan Modification consolidating the first four notes and the $1,500,000 principal increase into a New Note for $11,000,000 and bearing an interest rate of 12.25%. Now, Borrower currently wishes to borrow $2,000,000.00 ("Increase") from Lender and amend Note dated 12/5/2017 which will bring Borrower's total principal balance(s) to **$13,000,000.00**. At funding of the additional $2,000,000 as evidenced herein, Lender shall net fund $1,938,750.00 retaining 90 (ninety) days prepaid interest on this new $2,000,000 installment. Per diem interest calculated on the basis of a 360 day year.

Until 10/1/2018, Borrower will not make interest payments for the period of 7/1/2018 – 9/30/2018 as the total interest owed for these 3 months ($398,125.00) will be taken out of Lender proceeds on this $2,000,000 advance. Lender will net fund $1,601,875.00 plus $6,000 early payment credit.

Net funding to Borrower to be $1,607,875.00.

_______ Initial

Case 2:20-ap-01623-BB Doc 18 Filed 12/18/20 Entered 12/18/20 16:30:57 Desc
Main Document Page 122 of 161


1. **Maturity and Balloon Payment** –

Interest will accrue at the rate of 12.25% until maturity on 12/05/2020, at which time all sums (including but not limited to principal, interest, default interest, late fees and any other ancillary fees shall become due and payable).

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable. Borrower warrants that the outstanding debt of $13,000,000 is secured in entirety by a **Second Position Deed of Trust**.

Initial

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:

INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER**:

**GENNADY MOSHKOVICH**

[signature]
**Signature**

GENNADY MOSHKOVICH
**Print Name**

Dated: 7/3/18

**LENDER**:

**BOBS LLC**

[signature]
**Signature**

Rommy Shy / Manager
**Print Name**

Dated: 7/3/18

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On July 3, 2018 before me, Michael Boh, Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared Gennady Moshkovich
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL BOH
Commission # 2091314
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2018

Signature [signature]
*Signature of Notary Public*

*Place Notary Seal Above*

***OPTIONAL***

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Loan Modification Agreement Document Date: ________
Number of Pages: 6 Signer(s) Other Than Named Above: ________

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: ________ | Signer's Name: ________ |
|---|---|
| ☐ Corporate Officer — Title(s): ________ | ☐ Corporate Officer — Title(s): ________ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☑ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: ________ | ☐ Other: ________ |
| Signer Is Representing: ________ | Signer Is Representing: ________ |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

This page is part of your document - DO NOT DISCARD

**20180665818**

Pages: 0009

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

07/03/18 AT 12:49PM

| | |
|---|---|
| FEES: | 41.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 116.00 |

LEADSHEET

201807032260006

**00015444056**

009192126

**SEQ:**
**02**

DAR - Counter (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

E503741

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME BOBS LLC

MAILING 600 S. Spring St. #106

CITY, STATE ZIP CODE

Los Angeles, CA 90014

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

**TITLE(S)**

Loan Modification Agreement

***Borrower: Gennady Moshkovich***

## LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **12/05/2017**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

- **Note for $6,000,000.00 dated 07/22/2014 and recorded as Instrument #20140770548 for the benefit of Spring 7 Loft LLC which has since assigned loan to Lender.**

**I) Note for $1,000,000.00 dated 04/06/2016**

**II) Note for $1,000,000.00 dated 08/11/2016**

**III) Note for $1,500,000.00 dated 04/10/2017**

These 4 Notes represent Borrower's total indebtedness of **$9,500,000.00** to Lender and this debt is secured by a Second Deed of Trust on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

Borrower currently wishes to borrow $1,500,000.00 ("Increase") from Lender which will bring Borrower's total principal balance(s) to $11,000,000.00. Borrower will sign a new Note consolidating existing balance and new increase. This Note shall be in the amount of $11,000,000.00 and bear a 12.25% interest rate with interest payments of $112,291.67 due monthly.

**Interest will accrue at the rate of 12.25% from 12/05/2017 until maturity on 12/05/2020, at which time all sums shall become due and payable.**

1. **Maturity and Balloon Payment** - The loan is hereby extended to **12/05/2020** at which time all amounts of unpaid principal and interest become all due and payable ("Loan Maturity").

2. **Restrictions on Liens and Encumbrances** - Except for the liens currently securing the loan, Borrower shall not further encumber, nor otherwise encumber the Properties securing the loan nor create or suffer to exist any lien, charge or encumbrance on the Properties securing the loan, or any part thereof, whether superior or subordinate to the lien of the Lender and whether recourse or non-recourse. Further encumbrance is an event of default and all sums will become due and payable.

3. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has notoccurred.

4. **Lender Origination Fee**

Borrower agrees to pay to Lender an amount equal to 1.00% of the new loan increase amount ($15,000) which will be taken from Borrower's net funded amount upon funding. Borrower acknowledges that Lender will fund $1,485,000.00 upon mutual execution of this Loan Modification Agreement and new Note secured by Deed of Trust dated 12/04/17.

5. **No Further Commitments**.

Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

6. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

a. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required

herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

b. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waiveall outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his favor at the
> time of executing the release which if known by him
> must have materially affected his settlement with the debtor."

7. **Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

BORROWER:

INITIAL

This Loan Extension Agreement may be signed in counterpart, each of which shall be deemed an original and together shall constitute the same agreement.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

**BORROWER**:

**GENNADY MOSHKOVICH**

[signature]
**Signature**

Gennady Moshkovich
**Print Name**

Dated: 7/3/18

**LENDER**:

**BOBS LLC**

[signature]
**Signature**

Rommy Shy, Manager
**Print Name**

Dated: 7/3/18

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT** **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles )

On July 3, 2018 before me, Michael Boh, Notary Public,
*Date* *Here Insert Name and Title of the Officer*

personally appeared Gennady Moshkovich
*Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL BOH
Commission # 2091314
Notary Public - California
Los Angeles County
My Comm. Expires Nov 25, 2018

Signature [signature]
*Signature of Notary Public*

*Place Notary Seal Above*

**OPTIONAL**

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: LOAN Modification Agreement Document Date: ____________
Number of Pages: 6 Signer(s) Other Than Named Above: ____________

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: | Signer's Name: |
|---|---|
| ☐ Corporate Officer — Title(s): | ☐ Corporate Officer — Title(s): |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☒ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: | ☐ Other: |
| Signer Is Representing: | Signer Is Representing: |

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827) Item #5907

**This page is part of your document - DO NOT DISCARD**

COUNTY OF LOS ANGELES CALIFORNIA

# 20191158906

**Pages: 0006**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**10/29/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 52.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 202.00 |

LEADSHEET

201910291130026

**00017366799**

010243103

**SEQ:**
**01**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E455752

R38

Case 2:20-bk-15473-BB Claim 7-1 Filed 09/16/20 Desc Main Document Page 37 of 51

Recording Requested By
Bobs LLC

When Recorded Mail To:
Bobs LLC
600 S. Spring St. Unit Office
Los Angeles CA 90014

10/29/2019
*20191158906*

SPACE ABOVE THIS LINE IS RESERVED FOR RECORDER'S USE

# ASSIGNMENT OF LOAN DOCUMENTS

**ASSIGNMENT OF LOAN DOCUMENTS**

FOR VALUE RECEIVED, the undersigned, **Spring7 Loft, LLC** ("Assignor"), hereby absolutely and unconditionally transfers, conveys, and assigns to **BOBS LLC** ("Assignee") all of Assignor's right, title and interest in and to (i) all those Loan Documents described in Schedule 1 hereto, (ii) the Loan, and (iii) Assignor's security interests in the collateral securing the Loan. In connection therewith, Assignor hereby grants, sells, transfers, conveys, and assigns to Assignee the Loan Documents.

This Assignment is made pursuant to the terms and conditions of that certain Loan Purchase Agreement between Assignor and Assignee which, among other things, provides for an assignment and transfer to Assignee on as 'AS IS" AND "WITH ALL FAULTS" basis and without recourse or representation or warranty of any kind, express or implied.

Assignor hereby covenants and agrees to execute and deliver to Assignee any and all further documents an instruments reasonably required by Assignee to effectuate and perfect the grant, sale, transfer, conveyance and assignment contained in this Assignment of Loan Documents.

See Exhibit "A"

This Assignment shall be binding upon and shall inure to the benefit of Assignor and Assignee and its successors and assigns. (All capitalized terms not defined herein shall have the meaning ascribed to them in the aforementioned Loan Purchase and Sale Agreement.)

Dated: November 16, 2016

*Assignor:*

Spring7 Loft, LLC

By: [signature]

Name: Yaniv Aviner

Its: G.M

**Schedule 1 to**
**Assignment of Loan Documents**

| | |
|---|---|
| Borrower: | Gennady Moshkovich, an Individual |
| Lender/Assignor: | Spring7 Loft LLC |
| Assignee: | BOBS LLC |
| Property Address: | 911 Loma Vista Dr.<br>Beverly Hills, California 90210 |
| Date: | 11/16/2016 |

---

1. Loan Agreement
2. Promissory Note
3. Deed of Trust and Assignment of Rents (recorded as Instrument 20140770548 on 7/25/2014 in Los Angeles, CA)
4. Affidavit Regarding Business Loan Purpose
5. Arbitration Agreement
6. Balloon Payment Disclosures
7. Borrower's Representations and Warranties
8. Certificate of Business Purpose of Loan
9. Continuing Guaranty
10. Environmental Certificate and Indemnity Agreement
11. Lender's Instructions

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles )

On November 16, 2016 before me, R Shy Notary Public
(insert name and title of the officer)

personally appeared Yaniv Aviner,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

R. SHY
Comm. #2165300
Notary Public - California
Los Angeles County
Comm. expires Sep. 22, 2020

Signature [signature] (Seal)

[redacted]

Exhibit "A" ✓

**LEGAL DESCRIPTION**

Real property in the City of Beverly Hills, County of Los Angeles, State of California, described as follows:

TRACT NUMBER 23782, LOT 2, IN THE CITY OF BEVERLY HILLS, AS PER MAP RECORDED IN BOOK 621, PAGE(S) 33, OF MAPS OF THE OFFICIAL RECORDS OF THE LOS ANGELES COUNTY RECORDER'S OFFICE

APN: 4391-036-020

This is a true and certified copy of the record if it bears the seal, imprinted in purple ink, of the Registrar-Recorder/County Clerk,

OCT 2 9 2019

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

REGISTRAR-RECORDER/COUNTY CLERK
COUNTY OF LOS ANGELES - CALIFORNIA

**This page is part of your document - DO NOT DISCARD**

# 20191104382

**Pages: 0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/16/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |

LEADSHEET

201910163320069

**00017305157**

010207932

**SEQ:**
**01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E497026

E08_191016_7100084

FOR REFERENCE ONLY : 20191104382


RECORDING REQUESTED BY:
LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO:

BEST ALLIANCE FORECLOSURE
AND LIEN SERVICES

16133 Ventura Blvd., Suite 700
Encino, California 91436
(888) 785-9721

APN: 4391-036-020 05940208

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 19-19392
Loan No.: ODL-072214

# SUBSTITUTION OF TRUSTEE

**WHEREAS**, **Gennady Moshkovich** was the original Trustor, **Spring7 Loft LLC** was the original Trustee, and **Spring7 Loft, LLC** was the original Beneficiary under that certain Deed of Trust dated **7/22/2014** and recorded on **7/25/2014** as Instrument No. **20140770548**, of Official Records of **Los Angeles** County, California; and

**WHEREAS**, the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS**, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE**, the undersigned hereby substitutes **Best Alliance Foreclosure and Lien Services Corp.**, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated: **10/15/2019**

**Bobs, LLC, Beneficiary**

**Rommy Shy, authorized signer**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California } ss.
County of Los Angeles
On October 15, 2019 before me, Carlos Mauricio Lemus Notary Public, personally appeared Rommy Shy who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature ______________________ (Seal)

CARLOS MAURICIO LEMUS
Notary Public - California
Los Angeles County
Commission # 2220642
My Comm. Expires Nov 4, 2021

***Borrower: Gennady Moshkovich***

# LOAN MODIFICATION AGREEMENT

THIS AGREEMENT ("Agreement") is made **09/04/2019**, by and between **BOBS, LLC, as to an undivided 100.00% interest,** ("Lender") **and Gennady Moshkovich, an Individual** ("Borrower").

## RECITALS

A. Lender has made a loan (the "Loan") to Borrower evidenced by **FOUR (4)** Promissory Notes in the total amount of $9,500,000.00 comprised of the following individual notes:

**I) Note for $6,000,000.00 dated 07/22/2014 (originally to Spring7 Loft, LLC and later assigned to Lender.**

**II) Note for $1,000,000.00 dated 04/06/2016**

**III) Note for $1,000,000.00 dated 08/11/2016**

**IV) Note for $1,500,000.00 dated 04/10/2017**

**V) Loan Modification and Principal Balance Increase of $1,500,000 dated 12/5/2017**

**VI) Loan Modification and Principal Balance Increase of $2,000,000 dated 6/27/2018 and recorded on 7/3/2018 at the Los Angeles Recorder's Office as Instrument #20180665817**

These 4 Notes and 2 Loan Modifications represent Borrower's total indebtedness of **$13,000,000.00** to Lender and this debt is secured by a **Second Deed of Trust** on 917 Loma Vista Dr. Beverly Hills, CA 90210 (the "Deed of Trust") dated **07/26/2011.**

**NOW THEREFORE**, for valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

As of September 4, 2019, Borrower is delinquent 6 months in his monthly interest payments of $132,708 for a total of $796,248 owed in simple interest, and not including late fees or default interest which Lender is entitled to collect per the Note terms. Borrower has expressed to Lender that they are currently marketing the collateralized property for sale and have expressed that a recorded Notice of Default will hurt their prospects of selling the property. Lender hereby agrees not to file a Notice of Default in consideration of the following:

- Borrower will pay at least 3 months of interest payments ($398,124) on or before October 15, 2019. If this payment is not made, Lender shall have the option to file the Notice of Default without further delay.
- Should Borrower make the above mentioned payment by the specified date, Lender will refrain from filing a Notice of Default until 2/4/2020. If all delinquent interest shall be paid by 2/4/2020 then Lender shall not charge Borrower default interest or late fees as is Lender's

right by the terms of the Loan Documents. If all delinquent interest accrued will not be paid by 2/4/2020, Lender shall have the right to file a Notice of Default and Borrower shall be responsible for all default interest and late fees that have accrued up until that point and going forward from then.

- Further, in consideration of Lender agreeing to this agreement, Borrower shall pay a $500,000 loan exit fee to Lender when this loan is paid off in addition to any accrued interest or fees owed at that time under the terms of the Note and Loan Documents.

E.M.
Initial

1. **Inducement.** As a material inducement to Lender to enter into this Agreement, Borrower hereby ratifies, reaffirms and agrees that (i) the Loan Documents, as modified herein, represent valid, enforceable and collectible obligations of Borrower, and that there are no existing claims, defenses, personal or otherwise, or rights of set off with respect to any of these Loan Documents, (ii) the liens, security interests, assignments and rights created by the Loan Documents, as modified herein, are valid, enforceable and existing liens, security interests, assignments, and rights, of the priority required by lender, (iii) this Agreement shall in no manner, waive, affect or impair the indebtedness, the Note or any liens and security interests, and (iv) any and all rights or remedies of Lender previously limited, waived or diminished are hereby reinstated in full as if such limitation, waiver or diminishment has not occurred. Borrower acknowledges that Lender's complete agreement with regard to modifying the Loan terms is contained herein and that there have been no other promises or commitments made concerning further modifications, advances, forbearances, waivers, extensions or other agreements.

4. **Relief From Stay**. Borrower agrees that in consideration of the recitals and mutual covenants contained herein and other considerations, including Lender's forbearance, in the event Borrower, or any of them, shall file any petition with any Bankruptcy Court of competent jurisdiction under Title 11 of the U.S. Code as amended or be the subject of any order for relief issued under Title 11 of the U.S. Code as amended, Lender shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code as amended or otherwise on or against the exercise of the rights and remedies otherwise available to Lender as provided in the Loan Documents and as otherwise provided by law and Borrower fully, knowingly and irrevocably hereby waives any and all rights to object to such relief from stay sought by Lender.

5. **Miscellaneous.**

(a) **No Waiver**. Any waivers of the rights of Lender occurring on or before the date hereof shall not, and do not, constitute the waiver of any rights of Lender to fully enforce the terms and conditions of any of the Loan Documents hereafter.

(b) **Attorneys' Fees**. In the event of any dispute between the parties regarding this Agreement or the release contained herein, the prevailing party shall be entitled to attorneys' fees, costs and expenses, whether or not litigation is commenced.

(c) **Entire Agreement**. This Agreement constitutes and expresses the entire

understanding between the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, whether expressed or implied, oral or written. This Agreement may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties hereto. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than by an agreement in writing signed by all the parties hereto.

(d) **Severability**. The provisions of this Agreement are independent of and separable from each other. If any provision hereof shall for any reason be held invalid or unenforceable, it is the intent of the parties that such invalidity or unenforceability shall not invalidate any other provision hereof, and that this Agreement shall be construed as if such invalid or unenforceable provision had never been contained herein.

(e) **Further Assurances**. Borrower shall, upon the request of Lender, execute, acknowledge, and deliver such further instruments or documents and take such other action as may be necessary to perfect or continue any security interest and to effect the purposes and comply with the intent of the Agreement.

(f) **Successors**. Except as otherwise provided in the Loan Documents or this Agreement, this Agreement shall be binding upon the heirs, executors, administrators, successors and assignees of the respective parties.

(g) **Document References**. Except as otherwise defined herein or unless the context so requires, the capitalized terms used herein shall have the meanings given to them in the respective Loan Documents. Any reference in any of the Loan Documents to the Loan, or to the other Loan Documents, shall be deemed to refer to the Loan and the Loan Documents, as modified hereby. All the Loan Documents shall be deemed modified so as to be in accordance with the modifications contained herein.

(a) Remaining Terms Unmodified. Except as modified herein, the Note, Deed of Trust and other Loan Documents shall remain unaffected, unchanged and unimpaired by reason of this Agreement.

(b) Applicable Law; Interpretation. To the extent not preempted or controlled by the laws of the United States, this Agreement shall be governed by and construed in accordance with the internal and conflict laws of the State of California.

(c) Effective Date. This Agreement shall become effective after all conditions as required herein have been satisfied.

(h) **Time of the Essence**. Time is of the essence in performing each and all of the terms of this Agreement.

a. **Claims and Release**. Borrower acknowledges that Lender requires that as a condition of Lender entering into this Agreement that Borrower release any claim, action, dispute, or demand, including any claim concerning lender liability which Borrower has or may have against Lender. It is the intention that this Agreement shall resolve or waive all outstanding claims and disputes, if any, between Lender and Borrower.

In consideration of Lender's entering into this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower agrees as follows:

Case 2:20-ap-01623-BB Doc 7-1 Filed 10/16/20 Entered 10/16/20 08:39:27 Desc Main Document Page 150 of 161

(a) Borrower and its agents, employees, attorneys, affiliates, successors and assignees, hereby, effective as of the date of this Agreement, absolutely release and forever discharge Lender and their agents, officers, directors, trustees, employees, successors and assignees, and each of them, of and from any and all claims, demands, damages, liabilities, causes of action, attorney's fees, costs and expenses of every nature, whether known or unknown or holds or at any time has owned or held, by reason of any matter, fact or thing done, omitted or suffered to be done prior to the date of this Agreement, either directly or indirectly, by reason of or arising out of (l) the making of or administration of the Loan; or (2) any other transaction relating to the Loan or the Property.

(b) Borrower warrants and represents that the entire claims which are the subject of the release are owned by Borrower and that no claim or any part thereof, has been assigned to or is owned by anyone other than Borrower and there is no action or litigation pending or instituted involving such claims.

(c) Borrower acknowledges that this release is voluntary and without any duress or undue influence, and is given as part of the consideration for Lender's accommodation of Borrower's request for Loan modification.

(d) Borrower hereby waives and relinquishes all rights and benefits afforded under Section 1542 of the California Civil Code and acknowledges that Borrower may hereafter discover facts different than or in addition to those which Borrower now knows or believes to be true with respect to the claims, demands, damages, liabilities, causes of action, attorneys' fees, costs and expenses above released and agrees that Borrower's release shall be and remain effective in all respects, notwithstanding such different or additional facts. Section 1542 of Civil Code of the State of California reads as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release which if known by him must have materially affected his settlement with the debtor."

**7. Arbitration of Disputes**. If the initials of BORROWER and LENDER appear below, all controversies or claims among or between the parties including BORROWER, LENDER, LENDER, their respective officers, directors, agents, employees and assignees, arising out of or relating to this Agreement shall be determined by binding arbitration in accordance with applicable rules of the American Arbitration Association or Judicial Arbitration and Mediation Services, In. ("JAMS"), at the election of the party initiating arbitration. Judgment on the arbitrator's award may be entered in any court having jurisdiction.

Without waiving a party's right to arbitration, any party may seek judicial relief to: (a) enforce the assignment of rents provision contained in the deed(s) of trust securing the LOAN, including the appointment of a receiver; (b) secure possession of the PROPERTY by an action for unlawful detainer; or (c) commence an action in interpleader for the sole purpose of resolving conflicting claims to funds or DOCUMENTS delivered in escrow. Any proceeding for judicial foreclosure shall not be subject to arbitration. The exercise of the power of sale contained in the deed of trust securing the LOAN, or the exercise of any private default remedies under the California Commercial Code shall not constitute a waiver of the Agreement nor shall they be deemed

inconsistent with arbitration.

NOTICE: IF YOU INITIAL IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY A NEUTRAL ARBITRATOR AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP YOUR RIGHT TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. YOU ARE ALSO GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. NOTWITHSTANDING YOUR ELECTION TO ARBITRATE, YOU HAVE THE RIGHT TO CONTACT APPROPRIATE REGULATORY AGENCIES TO REGISTER A COMPLAINT ABOUT THE COMPANY OR THIS TRANSACTION.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the date above written.

| **BORROWER**: | **LENDER**: |
|---|---|
| **GENNADY MOSHKOVICH** | **BOBS LLC** |
| [signature] | ______________________ |
| **Signature** | **Signature** |
| GENNADY MOSHKOVICH | ______________________ |
| **Print Name** | **Print Name** |
| Dated: 9/6/2019 | Dated:__________________ |

Certificate Attached for
California Notary Wording

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

**(CALIFORNIA CIVIL CODE § 1189)**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA )
COUNTY OF Los Angeles )

On 09/06/2019 before me, Pernetha Julien, Notary Public
(*Date*) (*Here Insert Name and Title of the Officer*)

personally appeared Gennady Moshkovich,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

PERNETHA JULIEN
Notary Public - California
Los Angeles County
Commission # 2271005
My Comm. Expires Dec 15, 2022

Pernetha Julien
*Signature of Notary Public* (Notary Seal)

## ADDITIONAL OPTIONAL INFORMATION

**Description of Attached Document**

Title or Type of Document: ______ Document Date: ______

Number of Pages: ______ Signer(s) Other Than Named Above: ______

Additional Information: ______

revision date 01/01/2015

| In re: Gennady Moskovich Debtor(s). | CHAPTER: **11** CASE NUMBER: **2:20-bk-11547-BB** |
|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**5950 Canoga Ave Suite 400**
**Woodland Hills, California 91367**

A true and correct copy of the foregoing document entitled (*specify*): **Proof of Claim** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 7, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Todd M Arnold (Debtor's Counsel):** tma@lnbyb.com
**David B Golubchik (Debtor's Counsel):** dbg@lnbyb.com, stephanie@lnbyb.com;
**Gregory Grigoryants (Party in Interest):** gregory@grigoryantslaw.com, r40915@notify.bestcase.com
**David Jacob (BOBS Counsel):** david@dpjacob.com
**Kelly M Kaufmann (First Deed of Trust Counsel):** bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
**Kenneth G Lau (United States Trustee Attorney):** kenneth.g.lau@usdoj.gov
**United States Trustee (Los Angeles):** ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On **June 7, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Mr. Gennady Moskovich**
**(Debtor)**
917 Loma Vista Dr
Beverly Hills, California 90210

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **June 7, 2020** | **David P. Jacob** | **/s/ David P. Jacob** |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# EXHIBIT "14"



Amount: $132,708.33
Account: 245403253
Bank Number: 12100035
Sequence Number: 8492047875
Capture Date: 04/02/2019
Check Number: 1016

1016

GENNADY MOSHKOVICH
917 LOMA VISTA DR.
BEVERLY HILLS CA 90210

11 35/1210 CA 90692

April 1st/2019 Date

Pay to the Order of Bob's LLC $ 132,708.33

One hundre thirty two thousand seven hundreds eight dollars 33 cents Dollars

Photo Safe Deposit® Details on back

Bank of America

ACH R/T 121000358

For

⑆121000358⑆ 000245403253⑈ 1016

BLUE SHEFFIELD™

For Deposit Only - JPMC

Electronic Endorsements:

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|---|
| 04/02/2019 | 6090341751 | 111900057 | Rtn Loc/BOFD | Y | | JPMORGAN CHASE BANK, |
| 04/02/2019 | 008492047875 | 121103886 | Pay Bank | N | | BANK OF AMERICA, NA |

# EXHIBIT "15"

# PAYMENT

PAYMENT

# Moskovich payments in 2019

From: Rommy Shy (rshy.realty@gmail.com)

To: david@dpjacob.com

Date: Thursday, March 19, 2020, 04:37 PM PDT

David,

As we discussed today, please see the following payments that were made by the Debtor in 2019:

3/4 - $132,706.33
5/3 - $132,708
6/4 - $132,708
7/8 - $132,708

The 7/8 payment was the last payment received. Please let's complete the motion as soon as possible. Thank you

Best Regards,

Rommy Shy
Royalty Realty
President
Broker/ BRE #01874848
600 S. Spring St. Suite 106
Los Angeles, CA 90014

Tel: (818) 274-2655
Fax: (213) 891-1953
Email: rshy@royaltyrealty.co
http://www.royaltyrealty.co/

The information contained in this e-mail message and any attachment is privileged, confidential and intended only for the use of the individual or entity to whom it was directed. If this e-mail is received by any other individual or entity, you are hereby notified that any unauthorized dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and destroy the original message.

Thank you.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled

**First Amended Complaint:**

**(1) For Declaratory Relief Regarding Entirety of Alleged Lien And Secured Claim;**

**(2) For Declaratory Relief Regarding A Portion of Alleged Lien And Secured Claim;**

**(3) For Declaratory Relief Regarding Applicable Interest Rate;**

**(4) For Declaratory Relief Regarding Claim Reduction For Payments Made;**

**(5) For Usury;**

**(6) To Avoid Fraudulent Transfer;**

**(7) Violation of California Business and Professions Code Section 17200 et seq.;**

**(8) Objecting To Claim; and**

**Injunctive Relief (with proof of service)**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 18, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Todd M Arnold on behalf of Plaintiff Gennady Moshkovich
tma@lnbyb.com

David B Golubchik on behalf of Plaintiff Gennady Moshkovich
dbg@lnbyb.com, stephanie@lnbyb.com

David Jacob on behalf of Defendant Bobs, LLC
david@dpjacob.com

David Jacob on behalf of Defendant Barry Shy
david@dpjacob.com

David Jacob on behalf of Defendant Rommy Shy
david@dpjacob.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On **December 18, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 18, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 18, 2020 | John Berwick | */s/ John Berwick* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |